# EXHIBIT E



Mimi K. Rupp
Direct.650.384.4673
mrupp@kenyon.com
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304
650.384.4700
Fax 650.384.4701

August 1, 2012

**VIA FEDERAL EXPRESS**

Dr. Joern Meissner
Manhattan Admissions LLC
521 5th Avenue, 17th Floor
New York, New York 10175

Ms. Tracy Yun
Manhattan Review LLC
90 La Salle Street
Apt. 13G
New York, New York 10027

Ms. Tracy Yun
Manhattan Elite Prep
521 5th Avenue, 17th Floor
New York, New York 10175

Dr. Joern Meissner
Manhattan Review LLC
280 Madison Avenue, Suite 912
New York, New York 10016

> Re:   **Infringement of Kaplan, Inc.'s**
>       **Intellectual Property Rights**
>       **Our Ref: 15481/9**

Dear Dr. Meissner and Ms. Yun:

We are intellectual property counsel to Kaplan, Inc. ("Kaplan"). MG Prep, Inc. d/b/a Manhattan Prep ("Manhattan Prep"), a wholly owned subsidiary of Kaplan, is well recognized as a leading provider in test preparation for the GMAT®, GRE®, and the LSAT®. For over 12

Dr. Joern Meissner and Ms. Tracy Yun
Manhattan Admissions LLC *et al.*
August 1, 2012
Page 2



years, Manhattan Prep has helped students and professionals achieve GMAT®, GRE®, and LSAT® success.

As you are undoubtedly aware, for many years, since at least 2000, Manhattan Prep has been a highly successful provider of test preparation goods and services. *See, e.g.,* www.manhattanprep.com. Manhattan Prep's ownership of its rights in the MANHATTAN PREP trademark, service mark, and trade name (collectively, the "Mark") is a matter of public record, as partially evidenced by U.S. Trademark App. No. 85/374,330[1] covering "educational services, namely, providing online and classroom courses, private tutoring, and study materials for standardized graduate school exams and professional school entrance exams."

Manhattan Prep has invested substantial time, effort and resources in connection with the creation, marketing and promotion of goods and services under the Mark. Manhattan Prep has also received extensive media attention regarding its overwhelming success as a leading provider of test preparation services. As a result of such efforts, and of Manhattan Prep's extensive sales and fame in the marketplace, the public has come to associate goods and services sold in connection with the Mark as originating with Manhattan Prep. Manhattan Prep has acquired a substantial amount of goodwill in and to the Mark and, therefore, considers violations of its intellectual property rights to be serious matters. Manhattan Prep will vigorously defend its intellectual property rights to the fullest extent permissible under the law.

Against this background, Manhattan Prep has recently learned that you have registered and are using the domain name <manhattaneliteprep.com> and the designation MANHATTAN ELITE PREP (the "Infringing Domain Name and Mark") in connection with test preparation services for the GMAT®, GRE®, and LSAT®. *See* Exhibit A.

It appears that your company once again is using our client's trademark and trade name in attempt to wrongfully capitalize on its invaluable goodwill and reputation. As you know, in 2006, your company wrongfully registered and used the confusingly similar domain names <manhattengmat.com> and <manhattan-gmat.com>, blatantly and willfully infringing upon our client's MANHATTAN GMAT trademark and trademark.[2] There can be no question that you are using the Mark to intentionally attract students to your knock-off offering and away from the *bona fide* MANHATTAN PREP courses and materials.

In addition, it has come to our client's attention that your company's representatives answer telephone inquiries from prospective students in such a purposefully confusing and deceptive manner that callers have the false impression that they have contacted the *bona fide* Manhattan Prep. It is our belief that your company representatives are intentionally cultivating consumer confusion to deceive students into believing that your company is Manhattan Prep. Moreover, it is our understanding that shortly after Manhattan Prep ran a Groupon promotion in

---

[1]   The owner of record is Kaplan, Inc.

[2]   As a result of your company's wrongful acts, MG Prep, Inc. d/b/a Manhattan GMAT was forced to bring a federal action against Manhattan Review LLC. Pursuant to a 2006 settlement agreement, Manhattan Review agreed to transfer the infringing domain names to MG Prep, Inc.

Dr. Joern Meissner and Ms. Tracy Yun
Manhattan Admissions LLC *et al.*
August 1, 2012
Page 3



Atlanta, your company ran a Groupon promotion using the Infringing Mark. Earlier this month, we understand that your company ran a Groupon promotion in the Washington, D.C. area. Accordingly, it is not surprising that your willful infringement of the Mark in connection with Groupon promotions has already caused documented instances of actual confusion. *See* Exhibit B.

Your improper use of the Infringing Mark is obviously done with the intent to deceive students into believing that they are purchasing a review course from Manhattan Prep, or one of its licensees, subsidiaries, or affiliates. Your unlawful activities and conduct are likely to cause – and have caused already – confusion and deception among the trade and purchasing public as to the source of origin of your goods and services and/or as to a possible association or sponsorship of your goods and services with our client and its goods and services.

This potential association is a clear violation of our client's rights and an attempt by you to improperly tread upon and/or reap the benefits of Manhattan Prep's hard-earned reputation and goodwill. These activities constitute, among other things, trademark infringement, unfair competition, a false description and designation of origin and passing off, for which you could be subject to severe monetary damages, in addition to injunctive relief.

Manhattan Prep will not tolerate such violations of its proprietary rights. These improper activities are precisely the types of actions against which the trademark, unfair competition and consumer protection laws were designed to protect, and our client intends to safeguard its rights to the fullest extent available under the law.

Please be aware that your registration and use of the Infringing Domain Name and Mark are in violation of the Anticybersquatting Consumer Protection Act ("ACPA"). which expressly prohibits the registration and use of domain names which are confusingly similar to trademark owned by another party. Under the ACPA, you could be subject to fines up to $100,000. Additionally, such use and registration provides grounds for Manhattan Prep to obtain the Infringing Domain Name under the Uniform Domain Name Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers.

Your unlawful activities also constitute, among other things, trademark infringement and false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) as well as trademark infringement, dilution, misappropriation, and unfair competition under related state statutory and common law doctrines, state statutory and common law doctrines, including, without limitation, N.Y. Gen. Bus. § 360-l.

Thus, in order to resolve this matter amicably, Manhattan Prep demands that you (i) permanently cease and desist from using the Mark in any domain name or mark, either alone or as a compound name, for example, using MANHATTAN PREP with an additional word such as "elite"; (ii) immediately transfer the Infringing Domain Name to Manhattan Prep; (iii) permanently cease and desist from using the Mark and/or Unlawful Designation in any commercial communication, *e.g.*, from telephone calls with consumers to any marketing materials; (iv) permanently cease and desist any other act which is likely to infringe upon our

Dr. Joern Meissner and Ms. Tracy Yun
Manhattan Admissions LLC *et al.*
August 1, 2012
Page 4



client's Mark, or create the impression that your website, goods and/or services are sponsored, authorized by, or are associated or affiliated with Manhattan Prep; and (v) provide written assurances of your compliance with our demands.

Unless we receive a prompt and satisfactory response to this letter, together with the requested assurances, within five (5) business days, we will assume that you intend to continue its infringing activities and the willful and blatant disregard of our client's rights, and we shall advise our client to pursue whatever actions and remedies that may be necessary or appropriate to protect Manhattan Prep's rights, including, without limitation, damages, profits from past sales, injunctive relief and attorneys' fees.

This letter is sent without prejudice to any and all other rights Manhattan Prep may have in this matter, all of which are hereby expressly reserved.

Very truly yours,

Mimi K. Rupp

Enclosures

cc:    MG Prep, Inc.

# Exhibit A

PROGRAM | REGISTER | LOCATIONS | DOWNLOAD    +1(888) 662-0738 | Skype Us!
>> HOME                                                      info@manhattaneliteprep.com | About

## Get into your dream school







### Get Admissions Advice
Free consultation with MBA, graduate school, law school and college admissions advisors

### Find a Course
Take GMAT, GRE, TOEFL, SAT, ACT, LSAT, MCAT, computer, language and career courses

### Choose a Tutor
Get tutored in GMAT, GRE, TOEFL, SAT, ACT, LSAT, MCAT and all academic subjects

## GMAT   GRE   TOEFL   SAT/ACT   LSAT   MCAT

 



"Manhattan Elite Prep's help in my preparation for the GMAT exam was nothing short of priceless. I would suggest to anybody sitting the GMAT exam that taking classes are not just advisable, they are an absolute necessity. Although the GMAT exam is very tough, there is a knack to it and my tutor's help was excellent. I have since sat the GMAT and I have been accepted into Harvard Business School. There is no doubt that I would not be in this situation if it was not for the help of my teacher and tutors at Manhattan Elite Prep."  - Rachel

### Access Denied

In accordance with firm policy, access to this website has been denied.

 **Manhattan Elite Prep**
Follow @ManhattanEliteP

503 followers

### GMAT Cities

GMAT MANHATTAN      GMAT NYC
GMAT ATLANTA         GMAT ORLANDO
GMAT AUSTIN          GMAT PHILADELPHIA
GMAT BALTIMORE       GMAT PORTLAND
GMAT BOSTON          GMAT PROVIDENCE
GMAT CHARLOTTE       GMAT SALT LAKE CITY
GMAT CHICAGO         GMAT SAN DIEGO
GMAT CINCINNATTI     GMAT SAN FRANCISCO
GMAT COLLEGE PARK    GMAT SAN JOSE
GMAT COLUMBUS        GMAT SEATTLE
GMAT DALLAS          GMAT ST. LOUIS
GMAT DENVER          GMAT TAMPA
GMAT HOUSTON         GMAT WASHINGTON DC
GMAT INDIANAPOLIS    GMAT WEST PALM BEACH
GMAT IRVINE
GMAT JACKSONVILLE    INTERNATIONAL CITIES
GMAT KANSAS CITY     GMAT AMSTERDAM
GMAT LAS VEGAS       GMAT BERLIN
GMAT LOS ANGELES     GMAT FRANKFURT

### GRE Cities

GRE MANHATTAN (NYC)
GRE ATLANTA          GRE ORLANDO
GRE AUSTIN           GRE PHILADELPHIA
GRE BALTIMORE        GRE PORTLAND
GRE BOSTON           GRE PROVIDENCE
GRE CHARLOTTE        GRE SALT LAKE CITY
GRE CHICAGO          GRE SAN DIEGO
GRE CINCINNATTI      GRE SAN FRANCISCO
GRE COLLEGE PARK     GRE SAN JOSE
GRE COLUMBUS         GRE SEATTLE
GRE DALLAS           GRE ST. LOUIS
GRE DENVER           GRE TAMPA
GRE HOUSTON          GRE WASHINGTON DC
GRE INDIANAPOLIS     GRE WEST PALM BEACH
GRE IRVINE
GRE JACKSONVILLE     INTERNATIONAL CITIES
GRE KANSAS CITY      GRE AMSTERDAM
GRE LAS VEGAS        GRE BERLIN
GRE LOS ANGELES      GRE FRANKFURT



Headquarters: 821 Fifth Ave, 17th Floor (enter on 43rd St.)
New York, NY 10125 +1 (646) 873-6656 info@manhattaneliteprep.com
Mon-Fri: 8:30 AM-10 PM Sat/Sun: 9:30 am - 5:00 pm
Site Map | Trademarks

| | | | |
|---|---|---|---|
| GMAT LOUISVILLE | GMAT HONG KONG | GRE LOUISVILLE | GRE HONG KONG |
| GMAT MIAMI | GMAT LONDON | GRE MIAMI | GRE LONDON |
| GMAT MINNEAPOLIS | GMAT MUNICH | GRE MINNEAPOLIS | GRE MUNICH |
| GMAT NEW BRUNSWICK | GMAT PARIS | GRE NEW BRUNSWICK | GRE PARIS |
| GMAT NEW HAVEN | GMAT ROME | GRE NEW HAVEN | GRE ROME |
| GMAT NEW ORLEANS | GMAT TORONTO | GRE NEW ORLEANS | GRE TORONTO |
| GMAT OKLAHOMA CITY | GMAT ZURICH | GRE OKLAHOMA CITY | GRE ZURICH |

# Exhibit B

Forum Index   GMAT Strategy

## Manhattan GMAT is now Manhattan Elite Prep

Manhattan GMAT is now Manhattan Elite Prep

I got an email from Manhattan Prep, but it looked like the company I know as Manhattan GMAT. Then I ended up on the site of a company saying "You're now Manhattan Elite Prep."

So MGMAT is now Manhattan Elite Prep?

Be the first of see friends to like this.

Forum Index   GMAT Strategy

BEST CONVERSATION STARTERS                MOST ACTIVE TOPICS

You are logged in as mrupp_73

 **DomainTools**

manhatta

Overview    Whois Lookup    Reverse Whois    Whois History    Domain Report    Hosting History    Screenshots    !

## Whois History for Manhattaneliteprep.com on 2011-12-25

Enter a domain name to get its history

manhattaneliteprep.com                                                    Get Hist

| | |
|---|---|
| **Domain:** | **manhattaneliteprep.com** - Whois History |
| **Cache Date:** | 2011-12-25 |
| **Registrar:** | **GODADDY.COM, INC.** |
| **Server:** | whois.godaddy.com |
| **Created:** | 2011-12-24 |
| **Updated:** | 2011-12-24 |
| **Expires:** | 2012-12-24 |

**Reverse Whois:** Click on an email address we found in this whois record
to see which other domains the registrant is associated
tracyyun@yahoo.com

```
Registrant:
    Tracy Yun
    90 La Salle Street, Room 13G
    New York, New York 10027
    United States

    Registered through: Godaddy.com, LLC (http://www.godaddy.co
    Domain Name: MANHATTANELITEPREP.COM
        Created on: 24-Dec-11
        Expires on: 24-Dec-12
        Last Updated on: 24-Dec-11

    Administrative Contact:
        Yun, Tracy   tracyyun@yahoo.com
        90 La Salle Street, Room 13G
        New York, New York 10027
        United States
        (646) 338-3908       Fax --

    Technical Contact:
        Yun, Tracy   tracyyun@yahoo.com
```

90 La Salle Street, Room 13G
New York, New York 10027
United States
(646) 338-3908        Fax --

Domain servers in listed order:
    NS65.DOMAINCONTROL.COM
    NS66.DOMAINCONTROL.COM

Memberships | Developer API | About Us | Blog | Desktop Tools | Terms of Service | Privacy | Support |

© 2013 DomainTools, LLC All rights reserved.



# EXHIBIT F



**Winslett Studnicky**
**McCormick & Bomser LLP**
6 East 39th Street, 6th Floor, New York, NY 10016-0112
www.wsmblaw.com

Lerner Winslett
t (646) 398 5424
t (707) 549 4617
e: lwinslett@wsmblaw.com

August 8, 2012

**By Email: mrupp@kenyon.com**
Mimi K. Rupp
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304

Dear Ms. Rupp:

This firm represents Manhattan Enterprise Group LLC d/b/a Manhattan Elite Prep ("MEP"). Please address all future correspondence regarding MEP to me. This is to reply to your letter to our client dated August 1, 2012 and to demand that MG Prep, Inc. ("MG Prep") and Kaplan, Inc. (collectively, "Kaplan") immediately and permanently cease and desist from using the name/mark "Manhattan Prep" (the "Infringing Mark") in any way in connection with any test preparation services, including without limitation services related to the GMAT®, GRE®, or LSAT®.

MEP began using the name Manhattan Elite Prep (the "Mark") in commerce as its trademark, service mark, and trade name at least as early as February, 2012. We do not know exactly when MG Prep began using the Infringing Mark, but we know for certain that it was no earlier than May 4, 2012, as that is when Kaplan filed its "intent to use" application with the USPTO. Thus, MEP is the senior user and has prior rights to the Mark.

Based on publicly available information, it seems clear that MG Prep is intentionally infringing on our client's Mark in an attempt to capitalize on our client's goodwill and favorable reputation as a quality provider of standardized test preparation services. Prior to March 2012, MG Prep was marketing its services under three separate names: "Manhattan GMAT", "Manhattan GRE", and "Manhattan LSAT". It was not until after MEP established itself and began extensively marketing its services under the Mark that MG Prep suddenly consolidated its services under the single Infringing Mark. This was a transparent attempt by MG Prep to confuse consumers and to pass itself off as an affiliate of MEP.

Mimi K. Rupp
August 8, 2012
Page 2

MG Prep's actions constitute, among other things, trademark infringement under
Section 43(a) of the Lanham Act, common law trademark infringement and unfair
competition, and dilution under New York law, N.Y.G.B.L. § 360-L.

In addition to your incorrect statements regarding priority, your letter is replete with other
inaccuracies and misinformation:

- Regarding your reference to a prior dispute between MG Prep and Manhattan
  Review LLC, first, MEP is a completely separate legal entity from Manhattan
  Review LLC. But in any event, your characterization of the settlement between
  MG Prep and Manhattan Review is wholly inaccurate. You state that "Pursuant
  to a 2006 Settlement Agreement, Manhattan Review agreed to transfer the
  *infringing domain names* to MG Prep." (Emphasis added.) That is simply false.
  In fact there were no such "infringing domain names". (*See* Settlement
  Agreement dated July 11, 2006, attached here as Ex. A.) Per the explicit terms
  of that agreement, both sides denied any wrongdoing or liability (¶ 4), and
  Manhattan Review retained ownership of the domain names that were in dispute
  (¶¶ 2 and 3). Moreover, MG Prep made a settlement payment to Manhattan
  Review (¶ 1).

- Contrary to your baseless accusations, MEP's representatives do not
  misrepresent themselves in any way. All MEP phone representatives identify
  themselves as representatives of Manhattan Elite Prep upon answering the
  phone.

- Your allegations regarding Groupon® are confusing and unfounded at best.
  MEP's contract with Groupon® was finalized on February 23, 2012 – while MG
  Prep was still marketing its services under the three separate names, "Manhattan
  GMAT", "Manhattan GRE", and "Manhattan LSAT". We have no way of knowing
  when your clients contracted with Groupon®, but if they did so to promote the
  name Manhattan Prep, the date was certainly after MEP began working with that
  company. In any event, as you should know, Groupon® generally schedules
  their promotions – not the client. So to accuse MEP of trying to piggyback on
  your clients' promotions is contrary to all the facts.

- Your ostensible evidence of actual confusion is inaccurate and seems
  manufactured. As Exhibit B to your letter, you have attached a screenshot of a
  page from the website beatthegmat.com. That page refers to "the site of a
  company saying 'We're now Manhattan Elite Prep.'" But MEP has never posted
  that statement or anything similar on its website. Also, as of today, the web page

Mimi K. Rupp
August 8, 2012
Page 3

referenced in your letter seems to no longer exist. Moreover, if any actual
confusion has occurred, it is due solely to the confusing rebranding effort of
Manhattan GMAT under the Infringing Mark.

- Your reference to the Anticybersquatting Consumer Protection Act ("ACPA) is
misplaced. As you note, the ACPA prohibits the registration and use of a domain
name that is confusingly similar to a trademark owned by another party. In this
case, the domain www.manhattaneliteprep.com was registered on December 24,
2011 on godaddy.com. It was not until more than four months later that Kaplan
filed its "intent to use" application for the Infringing Mark. So the Infringing Mark
was not owned by your clients when www.manhattaneliteprep.com was
registered and MEP began to use it. Moreover, your accusation that the
Infringing Mark is confusingly similar to www.manhattaneliteprep.com simply
proves our point – that your clients are infringing on the Mark, which was used in
commerce by MEP before your clients expressed even an "intent to use" the
Infringing Mark.

Even if MEP did not have priority to the Mark – which it does – the Infringing Mark is a
weak mark that is not entitled to protection. The strength of a mark and the degree of
protection it deserves are analyzed under five categories of increasing distinctiveness
and protectability: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5)
fanciful – with fanciful being the strongest category of marks. *Gameologist Group,
L.L.C. v. Scientific Games Int'l. Inc.*, 838 F.Supp. 2d 141, 154 (S.D.N.Y. 2011) (*citing
Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997) and *Two
Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615
(1992)). In that classification scheme, the Infringing Mark is generic or descriptive at
best.

The words "Manhattan" and "Prep" are both common words in the public domain – i.e.,
generic. Consequently, Kaplan has no right to appropriate them for its exclusive use.
*See American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306, 308 (2d
Cir. 1986). Even if Kaplan were able to show that the Infringing Mark were descriptive
rather than generic, it would still have to shoulder a heavy burden of demonstrating
secondary meaning to have any protection. *See Saratoga Vichy Spring Co. v. Lehman*,
491 F. Supp. 141, 150 (N.D.N.Y. 1979) *aff'd.*, 625 F.2d 1037 (2d Cir. 1980). Secondary
meaning is a term of art meaning that consumers have come to associate the mark with
a particular manufacturer or source. *Thompson Medical Co. v. Pfizer*, 753 F.2d 208,
217 (2d Cir. 1985). In determining whether a mark has acquired secondary meaning
courts have examined "advertising expenditures,...consumer studies linking the name

Mimi K. Rupp
August 8, 2012
Page 4

to a source,...sales success,...unsolicited media coverage of the product,...attempts to
plagiarize the mark,...and length and exclusivity of the mark's use..." *Id.* at 217-218.
Courts require consumer surveys or at least affidavits from consumers that show an
association between the product/service and the claimed mark. *Saratoga*, 491 F. Supp.
at 151. Kaplan could not come close to meeting that heavy burden.

In sum, MEP denies the allegations in your August 1, 2012 letter (as set forth above and
otherwise) and demands that Kaplan immediately and permanently cease and desist
from using the Infringing Mark in any way in connection with any test preparation
services, including without limitation services related to the GMAT®, GRE®, or LSAT®.
MEP reserves all rights under state and federal laws, under principles of equity, and
otherwise, including without limitation the right to seek damages, injunctive relief,
attorneys' fees and costs from Kaplan.

Please contact me if you would like to discuss this matter.

Sincerely,

Usher Winslett

# EXHIBIT A

# AGREEMENT

This Agreement is made this 11th day of July, 2006, by and between MG Prep, Inc. d/b/a Manhattan GMAT, a New York corporation having offices at 138 W. 25th Street, New York, NY 10001(hereinafter "MG") and Manhattan Review LLC, a Delaware limited liability company having offices at 420 Lexington Avenue, New York, NY 10170 (hereinafter "MR").

WHEREAS MG has been using the domain name www.manhattangmat.com since June, 2000 and

WHEREAS MR has registered and began using the domain names www.manhattengmat.com and www.manhattan-gmat.com (the "Disputed Domain Names") in May 2005; and

WHEREAS MG commenced a civil action in the U.S. District Court for the Southern District of New York on January 23, 2006 entitled MG Prep, Inc. d/b/a Manhattan GMAT v. Manhattan Review LLC, No. 06 CV 0462 (SAS) (the "Lawsuit"); and

WHEREAS MR filed an Answer in response to the Complaint in the Lawsuit; and

WHEREAS the parties wish to resolve their differences and settle all disputes between them and terminate the Lawsuit.

NOW THEREFORE, the parties agree as follows:

1.  Upon execution in full of this Agreement, MG will pay MR ▇▇▇ in two equal installment checks in defrayment of MR's costs in terminating use of the Disputed Domain Names (the "Settlement Amount"). MG will pay MR the first ▇▇▇ installment check upon execution in full of the Agreement and will pay MR the second ▇▇▇ installment check within three (3) business days thereafter.

2.  Upon execution in full of this Agreement and receipt of the first ▇▇▇ installment of Settlement Amount, MR will cease use of the Disputed Domain Names and will cause users to be taken instead to a "server not found" or

equivalent page, provided that both installments of the Settlement Amount are successfully negotiated upon first submissions of the checks. MR will retain ownership/registration of these domain names. Should MG cease doing business, sell its operations to a third-party that does not do business under MG's current name or if MG decides to otherwise do business under a different name other than MG's current business name, or decides to do business utilizing a domain name that is different from www.manhattangmat.com ("Resumption of Use Circumstances"), MR will have the right to resume use of the domain names. Manhattan Review will have the right to renew its registration of these domain names. However, should MR choose not to renew its registration of these domain names it will provide MG with reasonable notice and give MG the first right over others to obtain these registrations, on the same terms offered by others, as long as none of the Resumption of Use Circumstances has occurred. MG agrees to respond to such notice within seven (7) business days or a mutually agreed upon reasonable amount of time.

3.   MR may use www.gmatmanhatten.com and www.gmat-manhattan.com and MG Prep agrees that it will not contest and covenants not to sue MR in connection with such use.

4.   The parties understand and agree that entry into this Agreement is for the sole purpose of compromising and settling a disputed claim and to prevent further expense and inconvenience and is not deemed to be or considered as an admission of liability, noncompliance with the law, or other wrongdoing by any party.

5.   The Court will retain jurisdiction to enforce the terms of this Agreement. The parties agree that in the event judicial intervention is sought to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of its reasonable costs and attorney fees in connection therewith, subject to the Court's final decision and judgment. Neither party shall seek judicial intervention without first providing the other party with five (5) business days written notice of the breach, via fax and/or email delivery to the breaching party's counsel of record in the Lawsuit, and the same amount of time to cure the breach.

6.   (a)  Contingent upon receipt and negotiation of checks for the Settlement Amount, MR hereby releases any and all claims against MG and any affiliated and/or related entity (and each of its respective members, officers, directors, shareholders, insurers, indemnitors, attorneys, employees, guardians, heirs,

2

executors, personal representatives, trustees, successors in trust, trustees in bankruptcy and receivers (the "MG Releasees")), whether presently known or unknown, which MR and/or its successors or assigns ever had, now have or hereafter may have, in connection with, arising out of, or in any way connected to, whether directly or indirectly, the facts, events, transactions or occurrences alleged in the Lawsuit prior to the date of this Agreement.

(b)  Contingent upon receipt of a fully executed copy of this Agreement, MG hereby releases any and all claims against MR and any affiliated and/or related entity (and each of its respective members, officers, directors, shareholders, insurers, indemnitors, attorneys, employees, guardians, heirs, executors, personal representatives, trustees, successors in trust, trustees in bankruptcy and receivers (the "MR Releasees")), whether presently known or unknown, which MG and/or its successors or assigns ever had, now have or hereafter may have, in connection with, arising out of, or in any way connected to, whether directly or indirectly, the facts, events, transactions or occurrences alleged in the Lawsuit prior to the date of this Agreement.

7.    The parties hereby agree that this Agreement shall be designated Confidential, and its respective terms and conditions will not be disclosed to any third party without prior written consent of all the parties, or unless so ordered by a court of competent jurisdiction, provided, however, that the parties shall be permitted to disclose the following statement to all third parties, "Manhattan GMAT and Manhattan Review have settled their differences in the litigation commenced in the U.S. District Court for the Southern District of New York."

8.    This Agreement constitutes the entire agreement of the parties with respect to the transactions contemplated hereby and supersedes all prior agreements, understandings and representations (oral, written, implied or expressed), if any, between any of the parties relating hereto.

9.    Except as expressly set forth in this Agreement, none of the parties made any representations or warranties and no party is relying upon any statement or representation not expressed in this Agreement, and no party shall be liable for or bound by any oral or written statement, representation or warranty furnished by any agent, employee, attorney or any other person other than the statements, representations and warranties specifically expressed herein.

3

10.    If any one or more paragraphs, clauses, provisions or portions of this Agreement should ever be determined to be illegal, invalid, or otherwise unenforceable by a court of competent jurisdiction or other tribunal, or be invalid, invalidated or unenforceable by reason of any law or statute, then such paragraph, clause, provision or portion shall be limited or deleted herefrom, and the remaining portions of this Agreement shall survive in full force and effect, shall continue to be binding upon the parties, shall not be affected thereby except as may be necessary to make sense thereof, and shall be interpreted so as to give effect to the intention of the parties insofar as that is possible.

11.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors, attorneys and assigns.

12.    No modification or waiver of any provision of this Agreement, and no consent by any party to any departure herefrom, shall be effective unless in a writing signed by the party to be bound thereby.

13.    This Agreement has been entered into after negotiation and review of its terms and conditions by parties with substantially equal bargaining power, each of whom has consulted with counsel and is under no compulsion to execute and deliver a disadvantageous agreement. This Agreement incorporates provisions, comments and suggestions proposed by both parties. No ambiguity or omission in this Agreement shall be construed or resolved against any party on the ground that this Agreement or any of its provisions was drafted or proposed by the party.

14.    The signatories to this Agreement represent and warrant that they have full power and authority to execute it on behalf of their respective principals.

15.    This Agreement may be executed in counterparts, each of which shall be deemed to be an original and which together shall constitute one and the same instrument.

WHEREFORE the parties hereunto have duly executed this Agreement as of the day and year first given above.

MG PREP, INC.                          MANHATTAN REVIEW LLC

By: _____                  By: _____
Name: _____                  Name: _____
Title: _____                  Title: _____

C:\Documents and Settings\Tracy Yun\Local Settings\Temporary Internet Files\OLK1\S4149 AGTaso16-26.wpd





# EXHIBIT G



**KENYON & KENYON LLP**

Intellectual Property Law

Mimi K. Rupp
Direct 650.384.4673
mrupp@kenyon.com
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304
650.384.4700
Fax 650.384.4701

August 29, 2012

**VIA E-MAIL TO: UWINSLETT@WSMBLAW.COM**

Usher Winslett, Esq.
Winslett Studnicky McCormick & Bomser LLP
6 East 39th Street, 6th Floor
New York, New York 10016

> Re:   **Infringement of Kaplan, Inc.'s**
>        **Intellectual Property Rights**
>        **Our Ref: 15481/9**

Dear Mr. Winslett:

We write further to our August 1, 2012 letter and in response to your August 7, 2012 letter. We strongly disagree with your assertion that your client's use of the Manhattan Elite Prep designation (the "Infringing Mark") does not violate our client's rights in and to the MANHATTAN PREP mark (the "Mark").

As we understand, you allege that your client has superior rights to the Mark because it began using the Infringing Mark in February, 2012. In the alternative, you claim that the Mark is not entitled to protection because it is a "weak mark." Both assertions are without merit.

First and foremost, Kaplan's[1] first use of the Mark in commerce dates back to at least as early as July, 2011. Accordingly, your baseless claim that "we know for certain that [Kaplan's first use date] was no earlier than May 4, 2012" is simply untrue. Kaplan, not your client, has superior rights in and to the Mark. In view of Kaplan's prior rights in the Mark, your client's claims of infringement are misplaced.

Second, to support your assertion that Kaplan's Mark is not entitled to protection, you cite *American Cyanamid Corporation v. Connaught Laboratories, Inc.*, 800 F.2d 306 (2d Cir. 1986). Your reliance on *American Cyanamid* is misplaced. This decision is easily distinguishable because, *inter alia*, the court did not find that HibVAX and HIB-IMUNE were

---

[1] Capitalized terms defined in the August 1, 2012 letter shall have the same meaning herein.

Usher Winslett, Esq.
Winslett Studnicky McCormick & Bomser LLP
August 29, 2012
Page 2



likely to cause confusion. 800 F.2d at 309. Moreover, unlike your client's intentionally deceptive use of the Infringing Mark, there was no evidence that the junior user was deceptive. *Id.*

Indeed, the intent to confuse consumers gives rise to an inference of likely confusion because "a defendant who purposely chooses a particular mark because it is similar to that of a senior use is saying, in effect, that he thinks that there is at least a possibility that he can divert some business from the senior user – and the defendant ought to know at least as much about the likelihood of confusion as the trier of fact." *Little Caesar Enters. v. Pizza Caesar, Inc.*, 834 F.2d 568 (6th Cir. 1987); *accord Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997).

Your client's blatant attempt to get a free ride on our client's reputation by confusing consumers dovetails with its alleged attempt to divert business from Manhattan Review to MEP. As Ms. Yun's former business partner claims, "Yun has taken a number of other steps to divert business to her new company. First, she took Manhattan Review's written course and marketing materials and recast them as MEP brochures." A true and correct copy of Dr. Joern Meisser's March 7, 2012 Complaint as filed with the Supreme Court of the State of New York is attached.

Third, as you know, any evidence of actual confusion is substantial proof of the likelihood of confusion. *See, e.g., Virgin Enters. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion.") It speaks volumes that you resort to accusing Kaplan of manufacturing such evidence.

We also disagree with your assessment of the strength of our ACPA claim. As your client adopted a confusingly similar mark in bad faith, we believe that we would be able to show that it did so in violation of the ACPA. At the very least, the injunction we would expect to receive as a result of any litigation would prohibit the use of the <manhattaneliteprep.com> domain name by your client.

Notwithstanding the above, our client is willing to discuss an amicable resolution to avoid costly litigation.

This letter is sent without prejudice to any rights and remedies that our client may have, all of which are expressly reserved herein.

Very truly yours,

Mimi K. Rupp

Enclosures

cc:     MG Prep, Inc.
        Craig S. Hilliard, Esq.

FILED: NEW YORK COUNTY CLERK 03/23/2012
NYSCEF DOC. NO. 1

INDEX NO. 650913/2012
RECEIVED NYSCEF: 03/23/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| JOERN MEISSNER,<br><br>                           Plaintiff,<br><br>vs.<br><br>TRACY YUN and MANHATTAN<br>ENTERPRISE GROUP LLC,<br><br>                           Defendants. | Index No.:<br>Date Purchased:<br><br>Plaintiff designates New York County as the<br>place of trial.<br><br>**Summons**<br>The basis of venue is the county of residence of<br>the individual defendant and the county in which<br>the corporate defendant's principal office is<br>located. |

To the above named Defendants:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York), and in case of your failure to appear to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Lawrenceville, NJ
         March 7, 2012

By: _____
         CRAIG S. HILLIARD
         Stark & Stark, P.C.
         993 Lenox Drive, Bldg. Two
         Lawrenceville, NJ 08648
         chilliard@stark-stark.com
         Phone: 609-895-7324
         Facsimile: 609-895-7395
         *Counsel for Plaintiff*

Defendants' Addresses:

Tracy Yun
90 LaSalle Street, Apt. 13G
New York, NY 10027-4722

Manhattan Enterprise Group, LLC
521 5th Avenue, 17th Floor
New York, NY 10175

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOERN MEISSNER,

                    Plaintiff,

vs.

TRACY YUN and MANHATTAN
ENTERPRISE GROUP LLC,

                    Defendants.

INDEX NO.

COMPLAINT

    Plaintiff, Joern Meissner, by and through his attorneys, as and for his Complaint

against defendants, Tracy Yun and Manhattan Enterprise Group LLC, states and alleges:

## NATURE OF THE ACTION

    1.    This is an action by the majority owner of a limited liability company seeking

damages, injunctive relief and an accounting against the minority owner of that same

company arising out of the latter's malfeasance and numerous breaches of fiduciary duty.

The majority owner, Joern Meissner, founded Manhattan Review abroad many years ago for

the purpose of teaching courses to applicants to business schools who were preparing to take

the standardized GMAT exam and who were in need of help with their application strategy

to competitive graduate schools. In the beginning, the focus of Manhattan Review was to

teach and advise applicants in Europe. In 2005, Meissner agreed to found an entity in the

United States with defendant, Tracy Yun, to penetrate the U.S. market using Meissner's

established teaching and consulting concept. Meissner agreed to give Yun a minority stake

in the new U.S.-based company – Manhattan Review LLC– in exchange for her agreement

to operate and grow the business on a day-to-day basis and for some capital investment she provided. A series of personal disagreements between the owners led Yun to improperly shut Meissner out of the affairs and profits of the business. Among other things, Yun: 1) refused to share with Meissner the most basic information about the financial affairs of the company; 2) drew "compensation" without Meissner's knowledge or consent; and 3) transferred funds from the company's accounts without Meissner's knowledge or consent. Most recently, in a surreptitious coup, Yun withdrew approximately $390,000 from the company's accounts, dissolved Manhattan Review LLC, transferred all of the company's tangible and intangible assets to a "new" company she formed (without Meissner), and intentionally began to divert students to the "new" company. In so doing, Yun literally stole the entire business from Meissner and is treating it now as her own. She should be held accountable for this theft.

## THE PARTIES

2.      Plaintiff, Joern Meissner ("Meissner"), is a German citizen who holds a permanent resident visa – more commonly known as a "green card" – issued by the United States. Meissner received his Ph.D. in Management Science from the Graduate School of Business at Columbia University in New York City, and has taught undergraduate and graduate business programs at business schools in New York and abroad during the last 20 years.

3.      Defendant, Tracy Yun ("Yun"), is a citizen and resident of the State of New York. She maintains her residence at 90 LaSalle Street, Apt. 13G, New York, NY 10027.

4.     Defendant, Manhattan Enterprise Group LLC d/b/a "Manhattan Elite Prep" ("MEP"), is a Delaware limited liability company which was formed on or about January 3, 2012. Upon information and belief, the sole member of MEP is Yun.

## FACTS

5.     Meissner has two decades of teaching experience in both undergraduate and graduate business programs, at prestigious business schools in the United States and abroad. He created a series of original lectures used to prepare students to take the standardized GMAT test.

6.     In March 2005, Meissner and Yun formed Manhattan Review LLC ("Manhattan Review") as a Delaware limited liability company, for the purpose of engaging in the business of teaching courses for students preparing to take standardized tests. Manhattan Review registered to do business in New York in May 2005.

7.     When Manhattan Review was formed, Meissner and Yun were the only owners. In accordance with their agreement, Meissner originally owned 80% of the company, and Yun owned 20%. However, Meissner later agreed to reduce his ownership to 70%, with Yun's percentage raised to 30%, to compensate Yun for her agreement to run the day-to-day affairs of the business. The 70/30 division of ownership has not changed to this day.

8.     In exchange for Yun's agreement to manage the day-to-day affairs of the business, Meissner and Yun also agreed to divide the profits of the business 50/50, even though Meissner was the majority owner.

9.     Because Yun was a U.S. citizen living in New York City, and Meissner was a German national who traveled extensively between the United States and Germany for his academic career, Meissner and Yun agreed that Yun would be the managing member of the

-3-

company, with authority to run all day-to-day operations of the business. However, it was also understood that Yun would provide Meissner with regular reports on the income and expenses of the company, and consult with him on all significant matters affecting the business. Despite her commitment to do so, Yun has failed to provide Meissner with even the most basic information about the operations of the company.

10.     Over the last several years, Yun became dissatisfied with her role in the company, and repeatedly pressed Meissner for his agreement to either purchase her interest or improve her equity position and terms of compensation. Meissner refused, and Yun became increasingly disenchanted. The personal relationship between Meissner and Yun also deteriorated, and led to several threats by Yun that she would "ruin" Meissner and "destroy" the company.

11.     More specifically, Yun told Meissner, in late 2011, that she intended to "close" Manhattan Review immediately, vacate the leased offices at 521 Fifth Avenue, and leave all of the indebtedness to Meissner. In fact, in an e-mail to Meissner, Yun threatened to disconnect Manhattan Review's phone lines, terminate the business accounts and "destroy" Manhattan Review.

12.     Yun made good on her threats. Without advising Meissner or securing his consent, Yun formally dissolved Manhattan Review through filings made with the Secretary of State of Delaware on or about January 3, 2012. At the same time, Yun formed MEP as a Delaware limited liability company. Yun's evident purpose in forming MEP was to take over and transfer all assets of Manhattan Review, and exclude Meissner from the new entity.

-4-

13.    In that connection, Yun recently registered a new website, www.manhattaneliteprep.com, and is seeking to divert all existing and new customers of the business to register for educational programs through the new company.

14.    Yun has taken a number of other steps to divert business to her new company. First, she took Manhattan Review's written course and marketing materials and recast them as MEP brochures. As an example, Manhattan Review's "Admissions, Test Prep & Training" brochure, a marketing tool for the company's services, was changed to become an MEP brochure. Apart from the name of the company, however, the brochure is identical, or virtually identical, to Manhattan Review's brochure. However, the revisions made by Yun were not thorough, and the MEP brochure confusingly refers to "Manhattan Review's MBA Admissions Consulting staff".

15.    Yun changed Manhattan Review's Facebook page to incorporate the "Manhattan Elite Prep" logo, yet the page itself still refers to "Manhattan Review" and all of Manhattan Review's test preparation course materials.

16.    Yun has taken all of Manhattan Review's employees and made them MEP employees. In an e-mail dated February 2, 2012, one of those employees, Heather Simon, wrote to all of Manhattan Review's lecturers and instructors, claiming to represent the "Manhattan Review team". Ms. Simon advised the lecturers that Manhattan Review had experienced "technical difficulties" with its emails, and implored the teachers to send any e-mails to the "new address" of info@manhattaneliteprep.com. In so doing, Yun directed the intentional diversion of business from Manhattan Review to her new company.

17.   Yun also changed all Manhattan Review profiles on the www.yelp.com user-generated review website to link to her new company, but initially neglected to change the references to Manhattan Review and Meissner. She later changed the profiles to eliminate all references to Manhattan Review and Meissner in the company description, while all user reviews associated with the profiles still refer to Manhattan Review. In an obvious effort to continue to trade on the business built by Meissner, Yun falsely stated that MEP was "established" in 2005 and had been an "industry leader" for the last 7 years. Yun also instructed Manhattan Review employee Anthony Brian Smith to post a testimonial to elicit the understanding of suspicious customers for the name change. Yun has initiated similar actions to redirect the goodwill established by Manhattan Review by changing the information on other Manhattan Review profiles on sites such as Google Maps, YellowPages and Twitter.

18.   The website created by Yun for her new company, www.manhattaneliteprep.com, continues to refer to Manhattan Review's course materials, lecturers and customers. For example, the website uses a customer testimonial from a student named Gordon, who lauds "Manhattan Review" for helping him to prepare for the GMAT examination. In addition, the website features the biographies of two lecturers, Louis Lana and Lucy Struever, both of whom were long-standing Manhattan Review course instructors.

19.   Yun also filed documents with the U.S. Patent & Trademark Office, on or about December 24, 2011, recording an assignment of trademarks owned by Manhattan Review, including the marks "Manhattan Review" and "Turbocharge Your Career". The documents filed by Yun purported to assign the entire interest and goodwill in the trademarks to Yun personally. These filings were unauthorized by Meissner or by any valid, lawful action of Manhattan

Review, and accordingly are void. Yun took these steps as part of her plan to unlawfully take the assets of Manhattan Review and convert them to her new business, MEP.

20.   As if all of these actions were not enough to destroy a business in which she held only a minority interest, Yun also withdrew $200,000 from Manhattan Review's operating account on December 19, 2011 and has failed to account for that money to Meissner.

## COUNT I - BREACH OF FIDUCIARY DUTY
### (Meissner v. Yun)

21.   Plaintiff repeats and realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

22.   As a 30% shareholder, employee and managing member of Manhattan Review LLC, Yun owed fiduciary duties to Meissner, including a duty of loyalty, a duty of care, and a duty of good faith and fair dealing.

23.   By her actions described above in this Complaint, Yun breached these fiduciary duties.

24.   As a direct and proximate result of Yun's breach of her fiduciary duties, Plaintiff has been damaged.

## COUNT II - USURPATION OF CORPORATE OPPORTUNITY
### (Meissner v. Yun)

25.   Plaintiff repeats and realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

26.   As a 30% shareholder, employee and managing member of Manhattan Review LLC, Yun owed fiduciary duties to Meissner, including a duty of loyalty to subordinate her self-interests to the well-being of Meissner and Manhattan Review.

-7-

27.    Yun was prohibited from taking, for her personal benefit and/or for the benefit of any other company in which she was an owner or employee, an opportunity or advantage that belonged to Manhattan Review.

28.    Yun breached her fiduciary duties by usurping the corporate opportunities of Manhattan Review.

29.    Yun further breached her fiduciary duty of loyalty to Meissner by failing to disclose material details of her diversion of Manhattan Review's corporate opportunities, failing to seek and secure the consent of Meissner, and/or otherwise demonstrating that her decisions to divert such corporate opportunities were fair to Manhattan Review.

30.    As a direct and proximate result of Yun's diversion of Manhattan Review's corporate opportunities, Meissner, as majority owner, has been damaged.

## COUNT III - SELF-DEALING
### (Meissner v. Yun)

31.    Plaintiff repeats and realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

32.    As a 30% shareholder, employee and managing member of Manhattan Review LLC, Yun was charged with the fiduciary duty of the "utmost good faith and loyalty" to Meissner and the company and was prohibited from engaging in self-dealing.

33.    Yun breached this fiduciary duty of "utmost good faith and loyalty" owed to Meissner and the company by, among other things, using Manhattan Review's tangible and intangible property to attract students to her new company, diverting Manhattan Review's employees to her new company, taking money from Manhattan Review, and redirecting Manhattan Review's lecturers and instructors to her new company.

-8-

34.    Yun did not disclose to or obtain approval from Meissner for these actions, and the burden rests on Yun to prove that her course of self-dealing was intrinsically fair and did not result in harm to Meissner and Manhattan Review.

35.    As a direct and proximate result of Yun's self-dealing, Yun damaged Manhattan Review's business and, consequently, Meissner's interest as a majority owner of Manhattan Review.

## COUNT IV - TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE
### (Meissner v. Yun & MEP)

36.    Plaintiff repeats and realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

37.    Yun and/or MEP knew or should have known of Manhattan Review's business relationships with its employees, instructors and student-customers.

38.    Yun and/or MEP, by re-routing Manhattan Review business prospects to MEP, diverting Manhattan Review employees to work for MEP, using Manhattan Review funds for MEP expenses, and by otherwise engaging in wrongful conduct to the disadvantage of Manhattan Review and Meissner, intentionally interfered with the business prospects and relationships of Manhattan Review and Meissner for an improper purpose or by improper means.

39.    As a direct and proximate result of the defendants' wrongful conduct, Meissner has been damaged.

WHEREFORE, plaintiff, Joern Meissner, demands judgment against defendants for the following relief on all counts of this Complaint:

a)    For compensatory damages, including but not limited to disgorgement of all payments improperly taken by Yun out of Manhattan Review accounts and assets;

-9-

b)     For punitive damages;

c)     For attorneys' fees and costs of suit;

d)     For preliminary and permanent injunctive relief, restraining and enjoining Yun

       and, through her, MEP from continuing the wrongful and inequitable conduct

       alleged in this Complaint;

e)     For an Order compelling Yun to account for all revenues and profits of Manhattan

       Review since the formation of the company through the date of judgment;

f)     For an Order directing that Yun disgorge and return to Manhattan Review any and

       all monies received from the diversion of corporate opportunities to herself and to

       MEP;

g)     For an Order directing Yun to dissolve MEP in accordance with applicable state

       law;

h)     For such other and further relief that this Court may deem equitable and just.


                                        STARK & STARK
                                        A Professional Corporation


                                        By:
                                            CRAIG S. HILLIARD        2/29/12
                                            Stark & Stark, P.C.
                                            993 Lenox Drive, Bldg. Two
                                            Lawrenceville, NJ 08648
                                            chilliard@stark-stark.com
                                            Phone: 609-895-7324
                                            Facsimile: 609-895-7395
                                            *Counsel for Plaintiff*

# EXHIBIT H

FILED: NEW YORK COUNTY CLERK 08/17/2012

NYSCEF DOC. NO. 10

INDEX NO. 650913/2012

RECEIVED NYSCEF: 08/17/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOERN MEISSNER,

                     Plaintiff,

    - against-

TRACY YUN and MANHATTAN
ENTERPRISE GROUP LLC,

                   Defendants.

Index No. 650913-2012

**DEFENDANTS TRACY YUN AND
MANHATTAN ENTERPRISE
GROUP LLC'S AMENDED
COUNTERCLAIMS**

      Defendants Tracy Yun ("Yun") and Manhattan Enterprise Group LLC d/b/a Manhattan

Elite Prep ("Enterprise LLC"), (collectively, "Defendants"), by and through their undersigned

attorneys, Winslett Studnicky McCormick & Bomser LLP, as for their amended counterclaims

against Plaintiff Joern Meissner ("Meissner" or "Plaintiff"), allege as follows:

## SUMMARY OF BACKGROUND

    1. Yun and Meissner were romantically involved from 2004 through 2011.

    2. On March 10, 2005 – a time when Meissner was employed full-time overseas – Yun

formed a Delaware Limited Liability Company known as Manhattan Review LLC ("Review

LLC") to provide products and services for students preparing to take certain standardized tests.

Throughout its entire existence, Yun was solely responsible for financing and managing Review

LLC.

    3. As a part of a secret scheme to shut out Yun and form a competing company, in

November 2010 Meissner secretly formed Manhattan Admissions LLC ("Admissions LLC").

Then, in December 2011, without Yun's knowledge or permission, Meissner emptied Review

LLC's main bank account, taking more than $210,000.

4. Yun was able to recover most of the money improperly withdrawn by Meissner, but Meissner has made other attempts to destroy the business and Yun's business reputation, such as blocking Yun from accessing Review LLC's website and email administration tools, causing Review LLC's WebEx (video conferencing) account to be locked, blocking Yun from accessing Review LLC's Gmail, various Google, and YouTube accounts, creating a confusingly-similar website to that of Enterprise LLC and using that website and others to make public, false, defamatory statements about Enterprise LLC. To protect herself from potential liability resulting from similar actions by Meissner, Yun dissolved Review LLC in December 2011 and now seeks, among other things, a declaratory judgment that all of Review LLC's former assets now belong to Yun.

## FACTS

5. Meissner and Yun met and started dating in New York City in July 2004. Their relationship became serious in December 2004, but in January 2005, Meissner accepted a full-time teaching position in England, so they began a long-distance relationship.

6. Before leaving for England, Meissner told Yun that he owned and ran an existing business in the UK and Germany called Manhattan Review, which he claimed trained students for the GMAT exam for admission to graduate business schools. He supported his claims by showing Yun a rudimentary website and URLs including www.manhattanreview.com, www.review.de, www.gmat-review.co.uk, www.gmattutor.com, a Manhattan Review logo, and some loosely prepared teaching notes and questions containing numerous grammatical and logical errors.

7. Meissner suggested that Yun form and run Manhattan Review in the United States, which would keep them connected in a business sense in addition to their long-distance romance. At the time, Yun was a founding partner of Cypress Associates LLC, a boutique investment banking

2

firm established in 2001 specializing in mergers and acquisitions, capital raising and financial litigation support, and was not interested in a career change. But Meissner told Yun that if she would manage the business in New York City on a part-time basis while still keeping her investment banking position, he would contribute: (i) the ownership of all of the Manhattan-Review-related Web domains he had registered, (ii) the existing European business along with associated proper documentation, including its incorporation documents, bank statements, financial statements, tax returns, credit card statements, etc., (iii) a capital contribution, (iv) his time to teach on weekends in Europe without requiring payment, (v) his personal guarantee on leases and bank loans when required, and (vi) other normal contributions of an LLC member.

8. Yun was hesitant because, among other reasons, she did not want to disrupt her investment banking career, which she had developed for all eight years since graduating from Columbia Business School, averaging annual compensation of about $300,000 per year. But after Meissner and Yun began discussing marriage, Yun ultimately agreed to form Review LLC in March 2005.

9. Yun formed Review LLC with no help from Meissner. In fact, at the time she formed the company, Meissner was employed by Lancaster University in England in a full-time teaching position and kept very busy with significant teaching assignments, PhD student programs, local and international academic conferences, and publishing research papers.

10. Yun paid all fees associated with Review LLC's formation out of her personal bank account.

11. When Yun formed Review LLC, Meissner understood that Yun would have full control of everything related to the business, including all profits, losses, financing, financial reporting, and operations.

3

12. Yun and Meissner also discussed that Yun, as an Asian-American woman and sole owner of the business, could apply for government programs designed to benefit those groups.

13. In March 2005, Yun signed a lease for an office space for Review LLC in midtown Manhattan (44th Street and 6th Ave.) with her being the sole guarantor on the lease. In October 2005, Yun signed a new five-year lease for an office space located near Grand Central Terminal in Manhattan for Review LLC, again with her being the sole guarantor on the lease. At that time, Yun had to quit her full-time investment banking job to focus solely on Review LLC. Yun was the only person running the firm, paying all expenses and signing all documents.

14. To get Review LLC up and running, Yun paid all expenses from her personal bank account, totaling more than $300,000 from 2005 through 2007.

15. In 2007, Yun applied for and obtained a $150,000 line of credit for Review LLC from Citibank. The loan application reflected that Yun was the sole owner of the business.

16. From 2007 to 2011, Yun secured American Express cards for Review LLC, with her full guarantee as the sole owner of the business.

17. Yun made all decisions pertaining to the books and other materials offered by Review LLC. She edited and prepared nine test-preparation books, which represented a significant source of revenue for Review LLC. Additionally, she was solely responsible for the books' marketing and dissemination. Furthermore, she alone carried out the work necessary to retain their International Standard Book Numbers ("ISBNs"). The books described above are:

    a. *Manhattan Review Turbocharge Your GMAT Series: Math Study Guide*

    b. *Manhattan Review Turbocharge Your GMAT Series: Math Study Companion*

    c. *Manhattan Review Turbocharge Your GMAT Series: Verbal Study Guide*

    d. *Manhattan Review Turbocharge Your GMAT Series: Verbal Study Companion*

 e. *Sentence Correction Guide*

 f. *Smart Business Talk*

 g. *Negotiation & Decision Making*

 h. *Turbocharge Your TOEFL Integrated Study Guide*

 i. *The Official MBA MiniGuide*

18. From 2005 through 2011, Yun and Meissner had several discussions regarding the possibility of Yun sharing ownership in Review LLC with Meissner. Meissner told Yun that it would be beneficial for his academic career to appear to be the majority owner of Review LLC and to show his name as founder and chairman on all Review LLC websites and list him as an author on all Review LLC publications. According to Meissner, that credit would increase the chance that he could obtain a good teaching position in the US so he could move back to marry Yun.

19. Although Yun discussed the possibility of sharing ownership in Review LLC with Meissner at various ownership percentages, they never reached a final agreement and never entered into an LLC operating agreement or membership agreement. Moreover, the ownership percentages they discussed were always against the backdrop of (i) all the contributions Meissner had agreed to make listed above and (ii) future marriage plans, which would have rendered largely meaningless the separation between their ownership interests.

20. In contrast to Yun's extensive financial and managerial contributions to Review LLC outlined above, Meissner made neither financial nor managerial contributions. And considering that any stake Meissner might have in the company was contingent on such contributions, he never performed the minimum obligations to establish an ownership interest in Review LLC.

21. After Yun formed Review LLC, she learned that Meissner had lied about his business in the UK and Germany. Meissner was never able to produce to Yun any evidence that he had formed or registered a business entity in Europe called Manhattan Review – no bank statements, no financial statements, no tax returns.

22. When Yun received access to the domains pertaining to Review LLC from Meissner, their corresponding websites were not developed in terms of search engine optimization – the primary method for e-commerce sites to attract customers. In March of 2005, there were merely 20 pages in the site map of www.manhattanreview.com, and there was no method in place to attract customers. By December of 2011, when Review LLC was dissolved, there were 2,577 pages on www.manhattanreview.com. The original pages proved useless and the site was completely reorganized to reflect the needs of a functioning business. Yun was responsible for managing and creating all content available on the domains at the time Review LLC was dissolved.

23. Yun also learned that Meissner was always in financial trouble. He had a significant amount of credit card debt and low to negative personal bank account balances during the entire period from 2005 to 2011 as a result of a serious over-spending habit.

24. In addition, Yun learned that Meissner had practically no training, experience or practical knowledge in business management. He never worked in any non-academic, non-internship positions. Instead, he was trained in his PhD program for a purely academic career with an emphasis on abstract academic research. Hence, he was not fit for running any business due to his lack of financial discipline and managerial capabilities.

25. Moreover, Meissner could not create high-quality teaching materials or publications without significant editing to correct his English grammar errors.

6

26. Yun also learned that Meissner had been engaged in questionable business practices, including cyber-squatting – which can be punishable by prison time in Europe – and using an offshore entity to collect money and pay expenses to avoid taxes.  In addition, Meissner had owed American Express a significant balance for a prolonged period and schemed to avoid the liability and interest charges by providing false wire transfer records and therefore making American Express's accounting department spend months in reconciling payment records.

27. In addition, Yun learned that while at Lancaster University, Meissner received complaints from one of his PhD students alleging unprofessional conduct.

28. Yun also realized that from 2005 to 2011, Meissner at one time supervised eight PhD students and was a visiting professor at various universities other than Lancaster University.  He was also actively seeking a new academic position and was interviewing and traveling extensively each month.  In early 2011 Meissner started a new position with Kuhne Logistics University in Hamburg while continuing to travel back to Lancaster University for unfinished assignments.  Hence, Meissner's academic positions left him absolutely no time to be involved in Review LLC in any effective way.

29. Although Meissner did, and does, hold several Manhattan-Review-related domains in his own name, contrary to his explicit promises, he never transferred those domains to Review LLC – even though Review LLC paid all associated expenses from 2005 through 2011.

30. Despite his commitments to the contrary, Meissner:

    a.   never made a capital contribution to Review LLC;

    b.   never signed a lease, loan application, credit card application, or any other agreement on behalf of Review LLC; and

    c.   never provided any meaningful services to Review LLC.

7

31. Meissner never had a management role in Review LLC. In fact, he was never involved in the day-to-day operations of Review LLC.

32. From 2005 through 2011, Meissner never received a K-1 tax form from Review LLC. The only K-1s issued during that period were issued to Yun.

33. Although Meissner contributed nothing of value to Review LLC, he used his personal relationship with Yun to make sure he had access to the company's bank account. With that access, Meissner continued to use his romantic and professional relationship with Yun in a scheme to defraud her.

34. From 2005 through 2011, Meissner consistently made false promises to Yun regarding his personal commitment to her and his professional commitment to Review LLC. Yet unbeknownst to Yun, in November 2010 Meissner formed a competing business, Admissions LLC, with the intent to divert Review LLC's business to Admissions LLC. Then on December 16, 2011, without Yun's knowledge or permission, Meissner emptied Review LLC's main bank account, taking more than $210,000.

35. Yun discovered Meissner's diversion of company funds almost immediately, and upon Yun's demands and threats of legal action, Meissner returned $196,000 three days later, in effect acknowledging his lack of any right to the money.

36. But Meissner improperly retained more than $14,000, claiming that Review LLC owed him that amount as reimbursement for expenses – although he has never produced any receipts or other evidence of such expenses.

37. On or about December 15, 2011, Meissner changed all passwords pertaining to Review LLC's domains, preventing Yun and the administrative staff of Review LLC from accessing time-sensitive emails from existing and prospective clients. Moreover, new clients were unable

8

to purchase any products from the new website, bringing Review LLC's sources of revenue to a standstill. Access was not restored until December 20th, 2011, at which point Yun and Review LLC discovered dozens of angry emails from clients who believed Review LLC had deliberately abandoned them and the services they had purchased. During this time, Review LLC was averaging more than $5,000 in daily revenue, so Meissner's actions, caused a loss of at least $25,000. Due to Meissner's unauthorized disruption of Review LLC's business, Yun and Review LLC's staff were forced to spend dozens of hours calming angry clients, attempting to repair the damage to Review LLC's reputation, and restoring clients' confidence in Review LLC. Numerous refund requests were received, totaling thousands of dollars.

38. After Meissner's improper diversion of company funds, Yun realized she needed to act quickly to protect herself from Meissner's scheme. At that time, she was the sole personal guarantor of Review LLC's lease and credit cards. She had also signed for Review LLC's $150,000 line of credit with Citibank as the sole owner of the business. Yet Meissner had access to Review LLC's bank account and was holding himself out as an authorized representative of the company. Accordingly, on December 30, 2011, Yun dissolved Review LLC and soon thereafter formed Enterprise LLC to continue her business.

39. But Meissner's attempts to destroy Yun's business did not stop there. On or around April 10, 2012, Meissner contacted WebEx, an online teaching technology provider, apparently claiming to have authority over Review LLC, and instructed WebEx to lock the account, thus cutting off Yun's access to about 1,000 hours of recordings consisting of more than 500 different online class sessions from May 2005 to March 2012 which are essential to her business.

40. Meissner sent numerous emails to individuals employed by Yun after the dissolution of Review LLC, disparaging Yun and claiming that the legal position of Yun and Enterprise LLC

was precarious.  Yun's employees had never had any professional interaction with Meissner.  Nevertheless, his threats damaged the productivity of Yun's new business venture because they lowered the morale of employees.  Some employees became so distraught by the toxic environment caused by Meissner's threats that they chose to quit, causing financial damage to Yun as she incurred significant training costs for new employees, and creating additional lost productivity for Yun during their training.  Similarly, many freelance instructors received threatening emails as well.  Though none were under any obligation to Meissner or to Yun, some chose to cease collaborations with Yun out of fear of Meissner's threats.

41.  On information and belief, on or about June 19, 2012 and June 22, 2012, Meissner, or someone acting on Meissner's behalf, began making public, false statements about Enterprise LLC on a third-party website, www.wallstreetoasis.com/forums/manhattan-elite-prep.  Using two illegitimate profile names, "George14" and "GMATStud", Meissner (or someone acting on Meissner's behalf) made false statements about both the quality and status of Enterprise LLC.

42.  The June 19, 2012 post by "George14" states in part, "These are simply some former employees who stole the material and a few other things," and "this illegal outfit may close at any time, leaving you with your lost payment."

43.  The June 22, 2012 post by "GMATStud" states in part, "If you take a class from Manhattan at this point, the odds are low you will be taught by a competent instructor."

44.  The GMATStud post was ultimately deleted, but it was publically available on the internet for at least 27 days.  As of the date of this amended counterclaim, the post under the name "George14" is still accessible, despite multiple demands by Yun that Meissner delete it.

45.  In addition, on or around July 12, 2012, Yun discovered that Meissner had created a confusingly-similar website to that of Enterprise LLC, which operates under the name Manhattan

Elite Prep and uses the URL www.manhattaneliteprep.com for its website.  In an attempt to intentionally confuse consumers, Meissner created a website with the URL www.manhattan-elite-prep.com, on which Meissner posted public, false statements about Enterprise LLC, including *inter alia* the following: "[Manhattan Elite Prep] has based its curriculum purely on the stolen material from Manhattan Review….  Anyone seriously considering taking a class with Manhattan Elite Prep should consider that the company might be closed soon and study fees will be lost.  Please also take into account that Manhattan Elite Prep uses Groupon as their primary distribution channel, which should be warning and is a testimonial itself of the substandard quality this fraudulent outfit delivers."

46. In addition to the falsity of the information Meissner provided on his website, Meissner used the website's address itself to confuse consumers who were intending to visit Enterprise LLC's actual website.

47. After multiple demands by Yun, Meissner finally removed the defamatory statements from www.manhattan-elite-prep.com, but those statements were publicly posted on the internet for at least 20 days.

48. Moreover, Meissner, or someone acting on Meissner's behalf, posted the text, "Read about this scam…Manhattan Elite Prep," on Manhattan Review's www.manhattanreview.com website, including a link which re-directed viewers to the false statements posted at www.manhattan-elite-prep.com.

49. After multiple demands by Yun, Meissner finally removed the defamatory statements from www.manhattanreview.com, but those statements were publicly posted on the internet for at least 20 days.

11

**FIRST COUNTERCLAIM**
**(Yun v. Meissner)**
**Declaratory Judgment**

50. Yun repeats and realleges each preceding paragraph as if fully set forth here.

51. As set forth in detail above, Yun provided all of the capital, business know-how, and work that was necessary to form and operate Review LLC. Meissner, on the other hand, contributed nothing of any real value to the business.

52. Now that Review LLC is dissolved, Yun has the right to all assets that were held or used by Review LLC (the "Former Review LLC Assets"), including without limitation all cash, property (including intellectual property), leases, contracts, vendor relationships, client relationships, Review LLC email accounts, Review LLC Gmail, Google, and YouTube accounts, and all other assets of any kind, including the following URLs and websites:

manhattanreview.be

review.ch

manhattanreview.cn

review.cz

review.de

review.com.es

review.fi

review.fr

mba-gate.de

mba-gate.com

gmattutor.com

review.com.gr

12

review.hk

review.co.hu

gmat.ie

manhattanreview.in

manhattanreview.it

manhattanreview.jp

manhattanreview.co.kr

manhattanreview.nl

review.ph

review.pl

review.pt

manhattanreview.ru

gmat.se

gmat.sg

review.com.tr

gmat.tw

gmat-review.co.uk

manhattanreview.com

manedit.com

gmatofficialguide.com

gmattutor.com

53. Through this lawsuit and other actions, Meissner has contested Yun's claim to the Former

Review LLC Assets.

13

54. Yun's and Meissner's conflicting interests are real and adverse.

55. This issue is ripe for judicial determination. Through his false claims of a right to the Former Review LLC Assets, Meissner is disrupting Yun's business. Accordingly, Yun is entitled to a judgment declaring that she is the sole owner of all Former Review LLC Assets.

### SECOND COUNTERCLAIM
### (Yun v. Meissner)
### Quantum Meruit

56. Yun repeats and realleges each preceding paragraph as if fully set forth here.

57. Yun made the capital contributions and performed all of the services outlined above with the reasonable expectation that she would be fully and fairly compensated for her contributions.

58. Meissner knew that Yun expected such compensation.

59. Yun and Meissner agreed that the value of Yun's services was all of the value that could be generated by the Former Review LLC Assets, as evidenced by the fact, among other things, that only Yun was issued K-1 tax forms from Review LLC from 2005 through 2011.

60. Accordingly, under the principles of quantum meruit, Yun is entitled to receive all Former Review LLC Assets as compensation for her contributions to Review LLC.

### THIRD COUNTERCLAIM
### (Yun and Enterprise LLC v. Meissner)
### Tortious Interference with Business Relations

61. Yun and Enterprise LLC repeat and reallege each preceding paragraph as if fully set forth here.

62. Yun and Enterprise LLC have a valuable business relationship with WebEx.

63. Yun and Enterprise LLC also have valuable business relationships with multiple customers.

64. Meissner intentionally interfered with those and other business relations.

14

65. As a direct result of Meissner's interference with those relationships, both Yun and Enterprise LLC have been damaged.

## FOURTH COUNTERCLAIM
### (Yun v. Meissner)
### Conversion

66. Yun repeats and realleges each preceding paragraph as if fully set forth here.

67. By improperly retaining more than $14,000, improperly instructing WebEx to deny Yun access to about 1,000 hours of recordings consisting of more than 500 different online class sessions which are essential to her business, improperly disallowing Yun from accessing Review LLC's website and email accounts, improperly disallowing Yun from accessing Review LLC's Gmail, Google, and YouTube accounts, and improperly failing to turn over to Yun certain Former Review LLC Assets, Meissner has wrongfully exerted dominion over Yun's property, in denial of Yun's right, or inconsistent with those rights.

68. As a direct result of Meissner's conversion of Yun's property, Yun has been damaged.

## FIFTH COUNTERCLAIM
### (Yun v. Meissner)
### In the Alternative – Judicial Dissolution under 6 Del. C. § 18-802

69. Yun repeats and realleges each preceding paragraph as if fully set forth here.

70. If the court were to find for any reason that Review LLC has not been effectively dissolved, it would nonetheless be reasonably impractical to continue the business.

71. Accordingly, Yun would be entitled to a judicial dissolution of Review LLC under 6 Del. C. § 18-802 and an award of all Former Review LLC Assets.

## SIXTH COUNTERCLAIM
### (Yun and Enterprise LLC v. Meissner)
### Defamation Per Se

72.  Yun and Enterprise LLC repeat and reallege each preceding paragraph as if fully set forth here.

73.  Meissner intentionally, without privilege or authorization, published false statements that would tend to injure Enterprise LLC's in its business to the general public, via the Internet.

74.  In addition to publishing those false and defamatory statements about Enterprise LLC, Meissner published such statements about a small, easily identifiable group of individuals that includes Yun. Thus, he also intentionally, without privilege or authorization, published false statements that would tend to injure Yun in her business and profession to the general public, via the Internet.

75.  These false statements caused injury to Enterprise LLC's and Yun's business reputations.

## SEVENTH COUNTERCLAIM
### (Enterprise LLC v. Meissner)
### Cybersquatting under 15 U.S.C. § 1125(d)

76.  Enterprise LLC repeats and realleges each preceding paragraph as if fully set forth here.

77.  The mark "Manhattan Elite Prep" is distinctive and entitled to protection.

78.  On information and belief, Meissner registered and used the domain name www.manhattan-elite-prep.com with the bad faith intent to profit from that mark by driving business away from Enterprise LLC, with the hope of enhancing his own competing business.

79.  On information and belief, Meissner registered and used the domain name "www.manhattan-elite-prep.com" in bad faith, specifically because it is confusingly-similar to Manhattan Elite Prep's website www.manhattaneliteprep.com.

16

WHEREFORE, Defendants seek judgment:

A.      dismissing with prejudice all claims asserted against Defendants;

B.      declaring all Former Review LLC Assets to be the property of Yun, including without limitation granting Yun access to all electronic accounts and partnerships that existed to further Review LLC's business;

C.      granting compensatory damages to Yun and Enterprise LLC in an amount to be determined by the trier of fact;

D.      awarding Yun and Enterprise LLC the costs related to this action, including reasonable attorneys' fees, costs and disbursements;

F.      granting Yun and Enterprise LLC such other and further relief as this Court may deem just and proper.

Dated: August 17, 2012                    WINSLETT STUDNICKY MCCORMICK
       New York, New York                 & BOMSER LLP


By: _____
    Usher Winslett
    *Attorneys for Defendants Tracy Yun*
    *and Manhattan Enterprise Group, LLC*
    6 East 39th Street, 6th Floor
    New York, New York 10016
    (646) 688-5424
    uwinslett@wsmblaw.com

17