
**RIVKIN RADLER**
ATTORNEYS AT LAW

CELESTE M. BUTERA
PARTNER
(516) 357-3356
celeste.butera@rivkin.com

WWW.RIVKINRADLER.COM

*Handwritten note:* The conference is now scheduled for 4/23/13 at 10:00 A.M. The time to move or answer is extended to a time to be set at the conference. So ordered. [signature] J.G. Koeltl U.S.D.J. 4/16/13

**RECEIVED APR 15 2013 CHAMBERS OF JOHN G. KOELTL USDC SDNY**

DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 4/17/13

April 15, 2013

*Via Facsimile*
Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

RE: *Kaplan, Inc., et al. v. Tracy Yun, et al.*, Case No.: 13 CV 1147 (JGK)

Dear Judge Koeltl:

We represent Tracy Yun and Manhattan Enterprise Group LLC d/b/a Manhattan Elite Prep ("MEP") (collectively "Defendants") in the above-referenced action brought by Kaplan, Inc. and MG Prep, Inc. d/b/a Manhattan Prep ("MG") (collectively "Plaintiffs"). MEP is a small business with a size of less than 5% of MG's and a small fraction of Kaplan's[1]. We have set forth the relevant background in our pre-motion to strike letter dated April 10, 2013. We write pursuant to the procedures of the Pilot Project and the Court's Individual Rules to seek a pre-motion conference so that Defendants may proceed with a motion to dismiss the claims in Plaintiffs' complaint ("Complaint"), based on F. R. C. P. 12(b)(6).

MEP commenced use of its trademark "Manhattan Elite Prep" as early as Feb 2012 in connection with its business. About 3 months later, Plaintiffs filed a trademark application (85616663) for the phrase "Manhattan Prep" with the Patent and Trademark Office ("PTO") and stated that, as of May 2012, it was not using "Manhattan Prep" in commerce, but only that it had an intent to use such mark in the future with a signed declaration from their Assistant General Counsel. In Aug 2012, Plaintiffs and Defendants exchanged correspondence. Plaintiffs did not provide any evidence of their purported first use of the phrase as of July 2011 and Defendants cited Plaintiffs' intent to use application and asked Plaintiffs to stop infringing on Defendants' rights. In Sept 2012, the PTO issued an office action informing Plaintiffs that the phrase "Manhattan Prep" was not entitled to be protected as a trademark absent proof of secondary meaning because (i) the word "Manhattan" was geographically descriptive and (ii) the word "Prep" was generic (an abbreviation for the generic word "preparation") and required to be disclaimed as having any protection at all by Plaintiffs[2]. On March 4, 2013, Plaintiffs submitted a response to the PTO claiming the phrase had acquired secondary meaning and continued the same Intent to Use filing basis. The PTO reiterated its initial determination in its second office action on March 14, 2013, and further found that the phrase

---

[1] Based on its 2012 annual report, Kaplan's parent company, Washington Post recorded $4 billion in total revenue. Of it, Kaplan Inc.'s total revenue was $2.2 billion. Of it, Kaplan Test Prep's was $284 million.

[2] See Exhibit A. Plaintiffs failed to include any of the PTO determinations when it filed its Complaint in this action 6 months after receiving the first determination by the PTO.



Honorable John G. Koeltl
April 15, 2013
Page 2

"Manhattan Prep" was not distinctive and had not acquired secondary meaning[3]. The findings of the PTO are to be accorded great weight by the courts in this Circuit. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 392-93 (2d Cir. 1995) ("accord[ing] weight to . . . the USPTO's decision not to register the mark without evidence of secondary meaning."); *Chum Ltd. v. Lisowski*, 2001 U.S. Dist. LEXIS 2462 at *23 (S.D.N.Y. 2001) ("The Court [] gives weight to the PTO examiner's determination that [the mark] is generic.").

The law is well established that such a geographically descriptive and generic phrase as "Manhattan Prep" is not protectable, without acquired secondary meaning which has not been obtained here. As a result, none of Plaintiffs' claims state a cause of action for which relief can be granted. *See Morgans Group LLC v. John Doe Co.*, 2012 U.S. Dist. LEXIS 46525 at *17-18 (S.D.N.Y. 2012) ("Hudson Sky Terrace" does not receive trademark protection as it is of geographic origin and does not have a secondary meaning). *See also In re Big Steaks, Inc.*, 2002 TTAB LEXIS 137 at *4-5 (TTAB 2002) (refusing to register "Manhattan Steak House" as "[t]he addition of the generic words 'steak house' to the geographical term 'Manhattan' does not take away from or otherwise alter the primary geographical significance of the mark."); *In re The Cookie Kitchen, Inc.*, 1986 TTAB LEXIS 160 at *1 (TTAB 1986) (refusing to register "Manhattan" as it is "primarily geographically deceptively misdescriptive."). And "significant third party usage also undermines Plaintiff's claim of secondary meaning." *GreenPoint Financial Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 410 (S.D.N.Y. 2000) (finding no secondary meaning where "the Brooklyn phone directory establishes that more than fifty other establishments conduct business under the 'Greenpoint' name."). It goes without saying that there are hundreds, if not thousands, of companies that conduct business under the name "Manhattan".[4] Further, and more importantly, "even when a generic term has developed a secondary meaning, it is unprotectable as a trademark." *Air Cargo News, Inc. v. Tabmag Publishing, LTD.*, 2007 U.S. Dist. LEXIS 26873 at *14 (E.D.N.Y. 2007) (finding "Air Cargo News" to be generic and ineligible for trademark protection as a matter of law). *See also CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 15 (2d Cir. 1975) (defendant's motion to dismiss granted as a matter of law as plaintiff's "Consumer Electronics Monthly" is not protected as "consumer electronics" is a generic term). The word "Prep" is clearly generic and the use of the word "Prep" can never be entitled to protection as a trademark. Generic words belong to the public at large and cannot be appropriated as a trademark. *Dial A Mattress v. Mattress Madness*, 841 F. Supp. 1339, 1347 (E.D.N.Y. 1994).

In addition, several of Plaintiffs' claims fail to state a cause of action for other reasons. Plaintiffs' second cause of action is repetitive of their first cause of action and therefore should be dismissed. Both Plaintiffs' first and second causes of action assert a claim of unfair competition under federal law. Also, Plaintiffs' third cause of action for cybersquatting does not set forth the requisite elements for such a claim. Under 15 U.S.C. § 1125(d) of the Lanham Act, "plaintiff must

---

[3] From the PTO: "...high sales figures and/or advertising expenditures are not dispositive of whether the proposed mark has acquired distinctiveness." "The ultimate test...under Trademark Act Section 2(f) is not applicant's efforts, but applicant's success in educating the public to associate the claimed mark with a single source." See Exhibit B hereto.

[4] Defendants recently discovered other businesses with similar names in the same industry and also in Manhattan such as Manhattan Global Prep which was started in May 2011, a year before Plaintiffs' PTO application.



Honorable John G. Koeltl
April 15, 2013
Page 3

be the owner of a 'famous mark' and show: (1) that a domain name 'is identical and confusingly similar to, or dilutive of' the owner's mark; and (2) that the defendant registered the domain name with a 'bad faith intent to profit' from the name." *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 580 (S.D.N.Y. 2009), *affirmed*, 2009 U.S. App. LEXIS 26629 (2d Cir. 2009) (granting motion to dismiss cybersquatting claim as plaintiff's allegations were insufficient to establish that defendants' use was for profit). Here, Plaintiffs do not allege, nor can they allege, that the phrase "Manhattan Prep" is famous. Furthermore, Plaintiffs set forth only conclusory allegations that Defendants registered their "manhattaneliteprep.com" domain name with a bad faith intent to profit. *See* Complaint at ¶¶ 84-92, Docket No. 8. Further, Plaintiffs' fourth cause of action for trademark dilution fails as a matter of law. "New York State dilution requires (1) a distinctive mark and (2) a likelihood of dilution." *GreenPoint Financial Corp.*, 116 F. Supp. 2d at 413. A mark must be extremely strong or truly distinctive to merit protection under this claim. *Id.* (the distinctiveness of the "Greenpoint" mark was not strong enough to merit protection). Here, "Manhattan Prep" is not distinctive and the PTO has already found that it is not distinctive as recent as March 14, 2013. Lastly, Plaintiffs' sixth cause of action for deceptive acts and practices fails to state a valid claim. Under New York General Business Law § 349, the focus of the complaint must be consumer injury or harm to the public interest. "Consumer confusion as to the source of the product does not create a cause of action under this statute." *Gross v. Bare Escentuals Beauty, Inc.*, 632 F. Supp. 2d 293, 299 (S.D.N.Y. 2008) (dismissing claim as conduct alleged relating to trademarks for skincare products did not affect the public interest). For this claim, Plaintiffs state only that "Defendants' willful and deliberate acts described above have caused irreparable injury to Manhattan Prep . . . ." Complaint at ¶ 104, Docket No. 8. There is no allegation, nor can there be, that there has been harm to the public.

We thank the Court for its consideration of this request. Defendants' current response to the Complaint is due on April 19, 2013. The initial conference in this matter is scheduled for May 13, 2013. Pursuant to Federal Rule 12(g) Defendants' Rule 12 motion to dismiss and motion to strike are required to be combined in one motion. Defendants respectfully request that the Court schedule the requested pre-motion conference on Defendants' requested combined motion for May 13, 2013 and set a briefing schedule for same at the conference. Defendants therefore also respectfully request that the Court extend Defendants' time to respond to the Plaintiff's complaint until such time as the Court sets a briefing schedule or if the Court determines that a pre-motion conference is not necessary, for 2 weeks after the Court's decision concerning defendants' letters dated April 10 and April 15, 2013. This is Defendants' first request for an extension of the April 19 date. Defendants requested Plaintiffs' consent and Plaintiffs' have advised they do not consent to the requested extension. [5] Should the Court require any additional information, please do not hesitate to contact us.

Respectfully submitted,
RIVKIN RADLER LLP
/s/ Celeste M. Butera
Celeste M. Butera

cc: Kenyon & Kenyon LLP
2777222 v1

---

[5] See Exhibit "C"

# EXHIBIT A

| | |
|---|---|
| To: | Kaplan, Inc. (tmdocketny@kenyon.com) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 85616663 - MANHATTAN PREP - 15258/3 |
| Sent: | 9/3/2012 8:43:08 PM |
| Sent As: | ECOM108@USPTO.GOV |
| Attachments: | Attachment - 1<br>Attachment - 2<br>Attachment - 3 |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.** 85616663

**MARK:** MANHATTAN PREP

**\*85616663\***

**CORRESPONDENT ADDRESS:**
MICHELLE MANCINO MARSH
KENYON & KENYON LLP
1 BROADWAY
NEW YORK, NY 10004-1007

CLICK HERE TO RESPOND TO THIS LETTER:
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**APPLICANT:** Kaplan, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
15258/3
**CORRESPONDENT E-MAIL ADDRESS:**
tmdocketny@kenyon.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 9/3/2012**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**Office Records Searched**
The trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see*

15 U.S.C. §1052(d).

### Section 2(e)(2) Refusal – Mark is Primarily Geographically Descriptive

Registration is refused because the applied-for mark, MANHATTAN PREP, is primarily geographically descriptive of the origin of applicant's services. Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

The Trademark Trial and Appeal Board has stated that the purpose of Trademark Act Section 2(e)(2) is "to leave geographic names free for all businesses operating in the same area to inform customers where their goods or services originate." *In re Spirits of New Merced*, 85 USPQ2d at 1621 (citing *In re MCO Props. Inc.*, 38 USPQ2d 1154, 1156 (TTAB 1995)).

A mark is primarily geographically descriptive when the following is demonstrated:

(1) The primary significance of the mark is a generally known geographic place or location;

(2) The services for which applicant seeks registration originate in the geographic place identified in the mark; and

(3) Purchasers would be likely to make a services-place association; that is, purchasers would be likely to believe that the services originate in the geographic place identified in the mark.

TMEP §1210.01(a); *see In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re Joint-Stock Co. "Baik,"* 80 USPQ2d 1305, 1309 (TTAB 2006).

### (1) Primary Significance of the Mark is Generally Known Geographic Location

If the most prominent meaning or significance of a mark is geographic for the services in the application, the fact that the mark may have other meanings in other contexts does not alter its geographic significance in the context of the application. *See In re Opryland USA Inc.*, 1 USPQ2d 1409, 1412-13 (TTAB 1986) (holding the mark THE NASHVILLE NETWORK primarily geographically descriptive of television program production and distribution services when finding that the primary significance of the term referred to Nashville, Tennessee and not that of a style of music); *In re Cookie Kitchen, Inc.*, 228 USPQ 873, 874 (TTAB 1986) (noting that where MANHATTAN refers to a type of cocktail and to a geographic location that having an alternative meaning does not alter the mark's primary geographic significance in the context of the goods in the application); *In re Jack's Hi-Grade Foods, Inc.*, 226 USPQ 1028, 1029 (TTAB 1985) (noting that where NEAPOLITAN refers to a type of ice cream and also means "pertaining to Naples, Italy" that having an alternative meaning does not alter the mark's primary geographic significance in the context of the goods in the application); TMEP §1210.02(b)(i).

In this case, the most prominent meaning or significance of the mark is geographic. See attached webpages from www.columbiagazetteer.com and www.macmillandictionary.com indicating that MANHATTAN is a geographic location.

The addition of generic or highly descriptive wording to a geographic word or term does not diminish that geographic word or term's primary geographic significance. TMEP §1210.02(c)(ii); *see, e.g., In re JT Tobacconists*, 59 USPQ2d 1080 (TTAB 2001) (holding MINNESOTA CIGAR COMPANY primarily geographically descriptive of cigars); *In re Carolina Apparel*, 48 USPQ2d 1542 (TTAB 1998) (holding CAROLINA APPAREL primarily geographically descriptive of retail clothing store services); *In re Chalk's Int'l Airlines Inc.*, 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of the transportation of passengers and goods by air). Therefore, in this case, the

addition of "PREP" does not alter the primarily geographic significance of the mark. See attached dictionary definition from www.dictionary.com indicating that "PREP" means "preparatory school".

## (2) Applicant's Good Will Originate In The Geographic Place Identified In The Mark

For services to originate in a geographic place, the record must show that they are rendered at least in part in the geographic place. *See In re Chalk's Int'l Airline Inc.*, 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of air transportation services of passengers and/or goods that are performed at least in part on Paradise Island); *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California and outside the state as well); *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (holding THE NASHVILLE NETWORK primarily geographically descriptive of television production and distribution services provided in Nashville); TMEP §1210.03.

A service that is provided near the geographic place named in the applied-for mark is sufficient to support a finding that the services originate in that geographic location. *See, e.g., Warwood v. Hubbard*, 228 USPQ 702, 702-03 (Mont. 1985) (holding YELLOWSTONE OUTFITTERS primarily geographically descriptive of outfitting services offered "near Yellowstone Park").

In this case, applicant's address, as stated in the application, is located in New York, New York, and, as evidenced by the attached webpages from www.columbiagazetteer.com and www.macmillandictionary.com, MANHATTAN is contained within that city. Therefore, it appears that applicant's services originate in the geographic location named in its mark.

### Additional Information Required

If applicant responds to this office action, then applicant must provide a written statement specifying where the services will come from or will originate. *See* 37 C.F.R. §2.61(b); TMEP §1210.03.

Please note that failure to respond to a request for information can be grounds for refusing registration. TMEP §814; *see In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003). Merely stating that information about the services is available on applicant's website is an inappropriate response to a request for additional information, and is insufficient to make the relevant information of record. *See In re Planalytics, Inc.*, 70 USPQ2d 1453, 1457-58 (TTAB 2004).

## (3) Purchasers Would Be Likely to Make a Services-Place Association

When there is no genuine issue that the geographical significance of a term is its primary significance, and the geographical place is neither obscure nor remote, a public association of the services with the place is presumed if an applicant's services originate in the place named in the mark. TMEP §1210.04; *see, e.g., In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1706 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 849-50 (TTAB 1982) (holding DENVER WESTERNS primarily geographically descriptive of western-style shirts originating in Denver). In this case, such a presumption exists.

### Supplemental Register - Advisory
Although an amendment to the Supplemental Register can overcome the above refusal, please note that a mark in an application under Trademark Act Section 1(b), such as applicant's, is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. §2.76 has been filed. 37 C.F.R. §§2.47(d), 2.75(b); TMEP §§815.02, 1102.03. When a Section 1(b) application is successfully amended

to the Supplemental Register, the effective filing date of the application will be the date on which applicant met the minimum filing requirements of 37 C.F.R. §2.76(e) for the amendment to allege use. 37 C.F.R. §2.75(b); TMEP §§816.02, 1102.03.

*Disclaimer – Advisory*

Applicant is advised that, if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on the Supplemental Register, applicant must disclaim "PREP" because such wording appears to be generic in the context of applicant's goods. *See* 15 U.S.C. §1056(a); *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (C.C.P.A. 1977); *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766 (TTAB 1986); TMEP §1213.03(b).

The following is the standardized format for a disclaimer:

**No claim is made to the exclusive right to use "PREP" apart from the mark as shown.**

TMEP §1213.08(a)(i).

Although the examining attorney has refused registration, the applicant has the option to respond to the refusal to register by submitting evidence and legal arguments in support of registration.

## Responding to this Office Action

For this application to proceed toward registration, applicant must explicitly address each refusal and/or requirement raised in this Office action. If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register. Applicant may also have other options for responding to a refusal and should consider such options carefully. To respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end, the trademark will fail to register, and the application fee will not be refunded. *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a), 2.209(a); TMEP §§405.04, 718.01, 718.02. Where the application has been abandoned for failure to respond to an Office action, applicant's only option would be to file a timely petition to revive the application, which, if granted, would allow the application to return to live status. *See* 37 C.F.R. §2.66; TMEP §1714. There is a $100 fee for such petitions. *See* 37 C.F.R. §§2.6, 2.66(b)(1).

If applicant has an amendment that does not require the payment of a fee, submission of a specimen, response to a statutory refusal or declaration signature, applicant is encouraged to telephone the examining attorney to expedite the processing of the application.

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

/Meghan Reinhart/
Examining Attorney
Law Office 108
(571) 272-2943
meghan.reinhart@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

# EXHIBIT B

| To: | Kaplan, Inc. (tmdocketny@kenyon.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 85616663 - MANHATTAN PREP - 15258/3 |
| Sent: | 3/14/2013 10:05:40 PM |
| Sent As: | ECOM108@USPTO.GOV |
| Attachments: | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION SERIAL NO.** 85616663

**MARK:** MANHATTAN PREP

**\*85616663\***

**CORRESPONDENT ADDRESS:**
MICHELLE MANCINO MARSH

KENYON & KENYON LLP

1 BROADWAY

NEW YORK, NY 10004-1007

CLICK HERE TO RESPOND TO THIS

http://www.uspto.gov/trademarks/teas/respon

**APPLICANT:** Kaplan, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**

15258/3

**CORRESPONDENT E-MAIL ADDRESS:**

tmdocketny@kenyon.com

## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

ISSUE/MAILING DATE: 3/14/2013

This Office action is in response to applicant's communication filed on March 4, 2013.

In that response, applicant amended its application to include a Section 2(f) claim of acquired distinctiveness. However, for the reasons set forth below, that claim cannot be accepted and, as a result, the Section 2(e)(2) refusal is continued and maintained.

### Section 2(f) Claim of Acquired Distinctiveness Not Accepted

Applicant's claim of acquired distinctiveness is not accepted for the reasons set forth below.

Applicant states in its response that it has high sales figures and significant advertising expenditures for the services at issue; however, such these statement were not supported by any evidence. In addition, even if this evidence was submitted, please note that high sales figures and/or advertising expenditures are not dispositive of whether the proposed mark has acquired distinctiveness. Such extensive sales and promotion may demonstrate the commercial success of applicant's services, but not that relevant consumers view the matter as a mark for such services. *See In re Boston Beer Co.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999); *In re Busch Entm't Corp.*, 60 USPQ2d 1130, 1134 (TTAB 2000).

Similarly, applicant's advertising expenditures are merely indicative of its efforts to develop distinctiveness; not evidence that the mark has acquired distinctiveness. *See In re Pennzoil Prods. Co.*, 20 USPQ2d 1753 (TTAB 1991).

Applicant also states that it provided evidence of unsolicited media coverage. However, that coverage is not sufficient to demonstrate that the relevant consumers view the mark as identifying the source of the services. Most of the unsolicited media coverage consisted of blogs and/or web articles that have no demonstrated readership/audience numbers to indicate that a significant portion of the consuming public would encounter these references.

The burden of proving that a mark has acquired distinctiveness is on the applicant. *Yamaha Int'l Corp. v. Yoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1004 (Fed. Cir. 1988); *In re Meyer & Wenthe, Inc.*, 267 F.2d 945, 122 USPQ 372 (C.C.P.A. 1959); TMEP §1212.01. An applicant must establish that the purchasing public has come to view the proposed mark as an indicator of origin.

Allegations of sales and advertising expenditures do not per se establish that a term has acquired significance as a mark. An applicant must also provide the actual advertising material so that the examining attorney can determine how the term is used, the commercial impression created by such use, and the significance the term would have to prospective purchasers. TMEP §1212.06(b); *see In re Boston Beer Co.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999); *In re Packaging Specialists, Inc.*, 221 USPQ 917, 920 (TTAB 1984).

The ultimate test in determining acquisition of distinctiveness under Trademark Act Section 2(f) is not applicant's efforts, but applicant's success in educating the public to associate the claimed mark with a single source. TMEP §1212.06(b); *see In re Packaging Specialists*, 221 USPQ at 920; *In re Redken Labs., Inc.*, 170 USPQ 526 (TTAB 1971).

### Section 2(e)(2) Refusal – Mark is Primarily Geographically Descriptive

Registration is refused because the applied-for mark, MANHATTAN PREP, is primarily geographically descriptive of the origin of applicant's services. Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

The Trademark Trial and Appeal Board has stated that the purpose of Trademark Act Section 2(e)(2) is "to leave geographic names free for all businesses operating in the same area to inform customers where their goods or services originate." *In re Spirits of New Merced*, 85 USPQ2d at 1621 (citing *In re MCO Props. Inc.*, 38 USPQ2d 1154, 1156 (TTAB 1995)).

A mark is primarily geographically descriptive when the following is demonstrated:

(1) The primary significance of the mark is a generally known geographic place or location;

(2) The services for which applicant seeks registration originate in the geographic place identified in the mark; and

(3) Purchasers would be likely to make a services-place association; that is, purchasers would be likely to believe that the services originate in the geographic place identified in the mark.

TMEP §1210.01(a); *see In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re Joint-Stock Co. "Baik,"* 80 USPQ2d 1305, 1309 (TTAB 2006).

*(1) Primary Significance of the Mark is Generally Known Geographic Location*

If the most prominent meaning or significance of a mark is geographic for the services in the application, the fact that the mark may have other meanings in other contexts does not alter its geographic significance in the context of the application. *See In re Opryland USA Inc.*, 1 USPQ2d 1409, 1412-13 (TTAB 1986) (holding the mark THE NASHVILLE NETWORK primarily geographically descriptive of television program production and distribution services when finding that the primary significance of the term referred to Nashville, Tennessee and not that of a style of music); *In re Cookie Kitchen, Inc.*, 228 USPQ 873, 874 (TTAB 1986) (noting that where MANHATTAN refers to a type of cocktail and to a geographic location that having an alternative meaning does not alter the mark's primary geographic significance in the context of the goods in the application); *In re Jack's Hi-Grade Foods, Inc.*, 226 USPQ 1028, 1029 (TTAB 1985) (noting that where NEAPOLITAN refers to a type of ice cream and also means "pertaining to Naples, Italy" that having an alternative meaning does not alter the mark's primary geographic significance in the context of the goods in the application); TMEP §1210.02(b)(i).

In this case, the most prominent meaning or significance of the mark is geographic. See previously attached webpages from www.columbiagazetteer.com and www.macmillandictionary.com indicating that MANHATTAN is a geographic location.

The addition of generic or highly descriptive wording to a geographic word or term does not diminish that geographic word or term's primary geographic significance. TMEP §1210.02(c)(ii); *see, e.g., In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1920 (TTAB 2008) (holding NORMANDIE CAMEMBERT primarily geographically descriptive of cheese); *In re Carolina Apparel*, 48 USPQ2d 1542, 1543 (TTAB 1998) (holding CAROLINA APPAREL primarily geographically descriptive of retail clothing store services). Therefore, in this case, the addition of "PREP" does not alter the primarily geographic significance of the mark. See previously attached dictionary definition from www.dictionary.com indicating that "PREP" means "preparatory school".

## (2) Applicant's Good Will Originate In The Geographic Place Identified In The Mark

For services to originate in a geographic place, the record must show that they are rendered at least in part in the geographic place. *See In re Chalk's Int'l Airline Inc.*, 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of air transportation services of passengers and/or goods that are performed at least in part on Paradise Island); *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California and outside the state as well); *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (holding THE NASHVILLE NETWORK primarily geographically descriptive of television production and distribution services provided in Nashville); TMEP §1210.03.

A service that is provided near the geographic place named in the applied-for mark is sufficient to support a finding that the services originate in that geographic location. *See, e.g., Warwood v. Hubbard*, 228 USPQ 702, 702-03 (Mont. 1985) (holding YELLOWSTONE OUTFITTERS primarily geographically descriptive of outfitting services offered "near Yellowstone Park").

In this case, applicant's address, as stated in the application, is located in New York, New York, and, as evidenced by the previously attached webpages from www.columbiagazetteer.com and www.macmillandictionary.com, MANHATTAN is contained within that city. Therefore, it appears that applicant's services originate in the geographic location named in its mark.

*Additional Information Required*

If applicant responds to this office action, then applicant must provide a written statement specifying where the services will come from or will originate. *See* 37 C.F.R. §2.61(b); TMEP §1210.03.

Please note that failure to respond to a request for information can be grounds for refusing registration. TMEP §814; *see In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003). Merely stating that information about the services is available on applicant's website is an inappropriate response to a request for additional information, and is insufficient to make the relevant information of record. *See In re Planalytics, Inc.*, 70 USPQ2d 1453, 1457-58 (TTAB 2004).

*(3) Purchasers Would Be Likely to Make a Services-Place Association*

When there is no genuine issue that the geographical significance of a term is its primary significance, and the geographical place is neither obscure nor remote, a public association of the services with the place is presumed if an applicant's services originate in the place named in the mark. TMEP §1210.04; *see, e.g., In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1706 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 849-50 (TTAB 1982) (holding DENVER WESTERNS primarily geographically descriptive of western-style shirts originating in Denver). In this case, such a presumption exists.

*Supplemental Register - Advisory*

Although an amendment to the Supplemental Register can overcome the above refusal, please note that a mark in an application under Trademark Act Section 1(b), such as applicant's, is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. §2.76 has been filed. 37 C.F.R. §§2.47(d), 2.75(b); TMEP §§815.02, 1102.03. When a Section 1(b) application is successfully amended to the Supplemental Register, the effective filing date of the application will be the date on which applicant met the minimum filing requirements of 37 C.F.R. §2.76(e) for the amendment to allege use. 37 C.F.R. §2.75(b); TMEP §§816.02, 1102.03.

*Disclaimer – Advisory*

Applicant is advised that, if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on the Supplemental Register, applicant must disclaim "PREP" because such wording appears to be generic in the context of applicant's goods. *See* 15 U.S.C. §1056(a); *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (C.C.P.A. 1977); *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766 (TTAB 1986); TMEP §1213.03(b).

The following is the standardized format for a disclaimer:

**No claim is made to the exclusive right to use "PREP" apart from the mark as shown.**

TMEP §1213.08(a)(i).

Although the examining attorney has refused registration, the applicant has the option to respond to the refusal to register by submitting evidence and legal arguments in support of registration.

## Responding to this Office Action

For this application to proceed toward registration, applicant must explicitly address each refusal and/or requirement raised in this Office action. If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register. Applicant may also have other options for responding to a refusal and should consider such options carefully. To respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end, the trademark will fail to register, and the application fee will not be refunded. *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a), 2.209(a); TMEP §§405.04, 718.01, 718.02. Where the application has been abandoned for failure to respond to an Office action, applicant's only option would be to file a timely petition to revive the application, which, if granted, would

allow the application to return to live status. *See* 37 C.F.R. §2.66; TMEP §1714. There is a $100 fee for such petitions. *See* 37 C.F.R. §§2.6, 2.66(b)(1).

*Telephone/Email Suggested for Questions*

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

/Meghan Reinhart/

Examining Attorney

Law Office 108

(571) 272-2943

meghan.reinhart@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

# EXHIBIT C

## Celeste Butera

| | |
|---|---|
| **From:** | Celeste Butera |
| **Sent:** | Friday, April 12, 2013 4:58 PM |
| **To:** | Rupp, Mimi (MRupp@kenyon.com) |
| **Cc:** | 'mmarsh@kenyon.com' |
| **Subject:** | Kaplan v. Yun |

Dear Mimi,

Thank you for your email dated April 11, 2013. We will respond shortly.

After careful consideration, Defendants have decided to proceed with requesting the Court's permission to file a Motion to Dismiss the claims in the complaint. We are preparing our pre-motion conference letter required by the Court requesting a pre-motion conference and permission to file the motion.

As we informed you in our letter to the Court dated April 10, 2013, the Rules require that a motion to Strike and motion to dismiss be combined pursuant to Rule 12(g). Thus, defendants will be requesting a pre-motion conference and permission from the Court to file one combined motion under Rule 12(g). Because the Court requires a pre-motion conference before these motions are actually filed, we are requesting your consent to adjourn defendants' date to respond to the Complaint until after the initial conference on May 13, 2013.

We are diligently working on our pre-motion conference letter regarding the motion to dismiss and our goal is to have it filed no later than Wednesday April 17. In that letter we will request that the Court hold the pre-motion conference on the two motions (to strike and to dismiss) on May 13 at the initial conference and at that conference set a filing and briefing schedule for the combined motion to dismiss/strike. This will permit the Court the necessary time to deal with the content of the pre-motion conference letters in a streamlined manner.

We will also request that should the Court decide that Defendants are permitted to file the combined motion before or without any pre-motion conference, we would respectfully request that the Court allow us two weeks from the day of the decision for us to prepare and file such a combined motion. The reasons include the following: (i) we, as Counsel for Defendants, need a short amount of additional time to draft and prepare the papers in support of the motion and (ii) Defendants' current business, travel and work commitments are such that an extension is necessary to permit participation in the preparation and approval of the filings.

We are required to advise the Court of your position on the adjournment in the letter to the Court, so please let me know your client's position by Monday April 15 at 4 EST. If we do not hear from you by the time our letter is ready to be submitted to the Court, we will advise the Court of same. Thank you, Celeste.



**RIVKIN RADLER**
ATTORNEYS AT LAW

Celeste Butera
Partner
926 RXR Plaza, Uniondale, NY 11556-0926
D 516.357.3356   T 516.357.3000   F 516.357.3333
celeste.butera@rivkin.com

1