UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KAPLAN, INC. and MG PREP, INC. d/b/a
MANHATTAN PREP,                                                    Civil Action No. 13 CV 1147
                                                                   (JGK) (HP)
                              Plaintiffs,

                  v.

TRACY YUN and MANHATTAN ENTERPRISE
GROUP LLC d/b/a MANHATTAN ELITE PREP,

                              Defendants.
-------------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS

**RIVKIN RADLER LLP**
*Attorneys for Defendants*
TRACY YUN and
MANHATTAN ENTERPRISE GROUP LLC
d/b/a MANHATTAN ELITE PREP
Celeste M. Butera
Jason B. Gurdus
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

I.  THE STANDARD FOR DISMISSAL SUPPORTS THE GRANTING OF
    DEFENDANTS' MOTION ......................................................................................... 5

II. PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIMS MUST BE
    DISMISSED AS A MATTER OF LAW AS THE GEOGRAPHICALLY DESCRIPTIVE
    AND GENERIC PHRASE "MANHATTAN PREP" IS NOT PROTECTABLE ............ 6

    A.  The PTO Has Already Ruled That The Phrase MANHATTAN PREP
        Is Not Entitled To Protection ................................................................... 6

    B.  The Phrase MANHATTAN PREP Did Not Acquire Secondary Meaning
        Prior To MEP's Use Of Its MANHATTAN ELITE PREP Mark ......................... 7

    C.  Plaintiffs' Trademark Infringement and Unfair Competition Claim Under
        New York Common Law Must Likewise Be Dismissed ..................................... 11

    D.  Plaintiffs Have No Basis To Allege That MEP Infringed Upon A So-Called
        "Manhattan GMAT" Mark ................................................................................. 13

III. PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIMS MUST BE
     DISMISSED AS A MATTER OF LAW AS MEP'S TRADEMARK USE OF
     MANHATTAN ELITE PREP IN COMMERCE PRECEDED PLAINTIFFS' USE
     OF MANHATTAN PREP IN COMMERCE .................................................................. 15

IV.  PLAINTIFFS' FALSE ADVERTISING CLAIM SHOULD BE DISMISSED AS
     PLAINTIFFS HAVE NOT ALLEGED THAT DEFENDANTS MADE MATERIAL
     MISREPRESENTATIONS ABOUT THE TEST PREPARATION SERVICES OF
     EITHER PLAINTIFFS OR DEFENDANTS .................................................................. 19

V.   PLAINTIFFS' CYBERSQUATTING CLAIM SHOULD BE DISMISSED ................. 20

VI.  PLAINTIFFS' TRADEMARK DILUTION CLAIM SHOULD BE DISMISSED ........ 22

VII. PLAINTIFFS' DECEPTIVE ACTS AND PRACTICES CLAIM SHOULD BE
     DISMISSED ................................................................................................................ 23

VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS TO ALLEGE
      PLAINTIFFS CONFERRED A BENEFIT TO DEFENDANTS THAT
      DEFENDANTS UNJUSTLY RETAINED .................................................................. 24

IX.  PLAINTIFFS' SECOND CAUSE OF ACTION SHOULD BE DISMISSED AS
     IT IS REPETITIVE OF PLAINTIFFS' FIRST CAUSE OF ACTION ......................... 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC,*
    447 F. Supp. 2d 266 (S.D.N.Y. 2006)......................................................................20

*Agence France Presse v. Morel,*
    769 F. Supp. 2d 295 (S.D.N.Y. 2011)......................................................................20

*Air Cargo News, Inc. v. Tabmag Publishing, LTD.,*
    2007 U.S. Dist. LEXIS 26873 (E.D.N.Y. 2007)..........................................................9

*Allied Interstate LLC v. Kimmel & Silverman P.C.,*
    2013 U.S. Dist. LEXIS 113465 (S.D.N.Y. 2013)......................................................11

*American Express v. Goetz,*
    515 F.3d 156 (2d. Cir. 2008)....................................................................................16

*Arrow Fastener Co. v. Stanley Works,*
    59 F.3d 384 (2d Cir. 1995)........................................................................................7

*Black & Decker Corp. v. Dunsford,*
    944 F.Supp. 220 (S.D.N.Y. 1996) ............................................................................9

*Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.,*
    2009 U.S. Dist. LEXIS 15486 (S.D.N.Y. 2009)........................................................5

*Braun Inc. v. Dynamics Corp. of America,*
    975 F.2d 815 (Fed. Cir. 1992)..................................................................................9

*Brockmeyer v. Hearst Corp.,*
    248 F. Supp. 2d 281 (S.D.N.Y. 2003)....................................................................22

*Burkina Wear, Inc. v. Campagnolo, S.R.L.,*
    2011 U.S. Dist. LEXIS 1556 (S.D.N.Y. 2011)........................................................18

*CES Publishing Corp. v. St. Regis Publications, Inc.,*
    531 F.2d 11 (2d Cir. 1975)........................................................................................9

*Chance v. Pac-Tel Teletrac Inc.,*
    242 F.3d 1151 (9th Cir. 2001) ................................................................................16

*Cherie Amie v. Windstar Apparel, Corp.,*
    2002 U.S. Dist. Lexis 4950 (S.D.N.Y. 2002) ........................................................15

*Christopher D. Smithers Foundation, Inc. v. St. Lukes-Roosevelt Hosp. Ctr.,*
    2001 U.S. Dist. LEXIS 9293 (S.D.N.Y. 2001)......................................................13

*Chum Ltd. v. Lisowski,*
  2001 U.S. Dist. LEXIS 2462 (S.D.N.Y. 2001)..........................................................................7

*Cintas Corp. v. Unite Here,*
  601 F. Supp. 2d 571 (S.D.N.Y. 2009), *affirmed,* 2009 U.S. App. LEXIS 26629
  (2d Cir. 2009)............................................................................................................................20

*Courtenay Communications Corp. v. Hall,*
  334 F.3d 210 (2d Cir. 2003)........................................................................................................7

*Dial A Mattress v. Mattress Madness,*
  841 F. Supp. 1339 (E.D.N.Y. 1994) ..........................................................................................9

*Diamond Glass Cos. v. Twin City Fire Ins. Co.,*
  2008 U.S. Dist. LEXIS 86752 (S.D.N.Y. 2008)........................................................................5

*Fraga v. Smithaven MRI,*
  1996 U.S. Dist. LEXIS 22016 (E.D.N.Y. 1996).......................................................................9

*General Cigar Co. v. GDM Inc.,*
  988 F. Supp. 647 (S.D.N.Y. 1997) ...........................................................................................19

*GreenPoint Financial Corp. v. Sperry & Hutchinson Co.,*
  116 F. Supp. 2d 405 (S.D.N.Y. 2000)...................................................................................8, 22

*Gross v. Bare Escentuals Beauty, Inc.,*
  632 F. Supp. 2d 293 (S.D.N.Y. 2008).......................................................................................23

*Harleysville Worcester Ins. Co. v. Hurwitz,*
  2005 U.S. Dist. LEXIS 5721 (S.D.N.Y. 2005)........................................................................25

*Heller Inc. v. Design Within Reach, Inc.,*
  2009 U.S. Dist. LEXIS 71991 (S.D.N.Y. 2009)......................................................................21

*Icebox-Scoops, Inc. v. Disney Enters.,*
  2013 U.S. App. LEXIS 5704 (2d Cir. 2013) ............................................................................24

*Karam Prasad, LLC v. Cache, Inc.,*
  2007 U.S. Dist. LEXIS 63052 (S.D.N.Y. 2007)......................................................................23

*Karmilowicz v. Hartford Financial Services Group,*
  2011 U.S. Dist. LEXIS 77481 (S.D.N.Y. 2011)......................................................................21

*Kaye v. Grossman,*
  202 F.3d 611 (2d Cir. 2000)......................................................................................................24

*Kitty Walk Systems, Inc. v. Midnight Pass Inc.,*
  431 F. Supp. 2d 306 (E.D.N.Y. 2006) ......................................................................................21

iii

*La Societe Anonyme v. Jean Patou, Inc.*,
    495 F.2d 1265 (2d. Cir. 1974)..................................................................................................16

*Market Corner Realty Assocs., LLC v. CGM-GH LLC*,
    317 F. Supp. 2d 485 (S.D.N.Y. 2004)......................................................................................18

*Morgans Group LLC v. John Doe Co.*,
    2012 U.S. Dist. LEXIS 46525 (S.D.N.Y. 2012)..................................................................7, 10

*Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*,
    2009 U.S. Dist. LEXIS 117368 (S.D.N.Y. 2009)..................................................................5, 6

*Nordco v. Ledes*,
    1997 U.S. Dist. LEXIS 13904 (S.D.N.Y. 1997)........................................................................13

*Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*,
    2010 U.S. Dist. LEXIS 52795 (E.D.N.Y. 2010)........................................................................23

*Prime Mover Capital Ptnrs L.P. v. Elixir Gaming Techs., Inc.*,
    898 F. Supp. 2d 673 (S.D.N.Y. 2012)......................................................................................24

*QVC Inc. v. Your Vitamins Inc.*,
    2011 U.S. App. LEXIS 15454 (3d Cir. 2011) ..........................................................................16

*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers*
    *of New Jersey*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012) .....................................................8, 12, 17

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
    521 F. Supp. 2d 188 (E.D.N.Y. 2007) .....................................................................................19

*Saratoga Vichy Spring Co. v. Lehman*,
    625 F.2d 1037 (2d Cir. 1980)......................................................................................................8

*Schober v. Department of Labor*,
    1999 U.S. Dist. LEXIS 6844 (S.D.N.Y. 1999).......................................................................5, 6

*Sly Magazine, L.L.C. v. Weider Publs. L.L.C.*,
    529 F. Supp. 2d 425 (S.D.N.Y. 2007)..................................................................................22, 23

*Sony Computer Entertainment, Inc. v. Sony Computer Entertainment America, Inc.*,
    203 F.3d 596 (9th Cir. 2000) ...................................................................................................16

*Sports Traveler v. Advance Magazine Publishers Inc.*,
    25 F. Supp. 2d 154 (S.D.N.Y. 1998)...........................................................................................9

*Stoner v. Walsh*,
    772 F. Supp. 790 (S.D.N.Y. 1991) ...........................................................................................21

*Streetwise Maps v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998)..................................................................................15

*Telebrands Corp. v. Del Laboratories, Inc.*,
    719 F. Supp. 2d 283 (S.D.N.Y. 2010).................................................................17

**STATUTES**

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) .....................................3, 11, 13

Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d))..........................................3, 20

New York General Business Law § 349.................................................................3, 23

New York General Business Law § 350......................................................................3

New York General Business Law § 360-1 ............................................................3, 22

Federal Rule of Evidence 201(b)(2) .......................................................................17

Rule 12(b) of the Federal Rules of Civil Procedure .......................................1, 2, 5, 25

Rules 56 of the Federal Rules of Civil Procedure...................................................2, 25

## **PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted in support of the motion of Defendants Tracy Yun ("Yun") and Manhattan Enterprise Group LLC d/b/a Manhattan Elite Prep ("MEP") (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of the claims in the amended complaint of Plaintiffs Kaplan, Inc. and MG Prep, Inc. d/b/a Manhattan Prep (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted.

As a matter of law, the phrase MANHATTAN PREP is not protectable as a trademark because it has not acquired secondary meaning. It is undisputed that Defendants commenced use of their trademark and logo MANHATTAN ELITE PREP by the latest February 2012 and registered the associated domain in December 2011. Plaintiffs allege in their amended complaint that they first used their phrase MANHATTAN PREP in commerce in July 2011, a mere 7 months prior to Defendants' use of their mark in commerce. The law is clear that secondary meaning cannot be acquired during such a short duration of prior use (7 months). Further, the United States Patent and Trademark Office ("PTO") has already repeatedly refused trademark protection to Plaintiffs on this very basis--because the phrase MANHATTAN PREP has not acquired secondary meaning and, thus, is not protectable. Defendants believe that this case is a prime example of misusing judicial resources to attempt to quash MEP, a senior user of the mark MANHATTAN ELITE PREP, by Plaintiffs that have neither an exclusive right nor acquired secondary meaning in the descriptive and generic phrase MANHATTAN PREP. Expensive litigation such as this action has a profound negative impact on Defendants' small business.

Accordingly, Defendants respectfully request that the Court dismiss all of Plaintiffs' claims in this action for failure to state a claim upon which relief can be granted. In the alternative, should this Court decide that this motion should be treated as one for summary

judgment, Defendants respectfully request that the Court convert this motion pursuant to Rules 12(b)(d) and 56 of the Federal Rules of Civil Procedure, and grant summary judgment to Defendants on Plaintiffs' claims.

## STATEMENT OF FACTS

Plaintiffs commenced this action against Defendants on or about February 19, 2013 alleging that Defendants were "unlawfully misappropriating Plaintiffs' well-known and distinctive MANHATTAN PREP trade name and trademark". Complaint at ¶ 1, Docket No. 8. Plaintiffs have since amended their complaint and now allege that MEP was "unlawfully misappropriating Plaintiffs' well-known and distinctive MANHATTAN GMAT and MANHATTAN PREP trade name and trademark . . . ." Amended Complaint at ¶ 1, Docket No. 30. Both Plaintiffs and MEP provide test preparation courses and materials for the Graduate Management Admission Test (the "GMAT"), the Graduate Record Examinations (the "GRE") and the Law School Admission Test (the "LSAT"). *Id.* at ¶¶ 1, 5.[1] Plaintiffs allege that they began use of the MANHATTAN PREP mark in commerce in connection with test preparation services and materials in July 2011. *Id.* at ¶¶ 34, 88. It is undisputed that MEP commenced use of its trademark MANHATTAN ELITE PREP by February 2012, at the latest, in connection with its business. *Id.* at ¶ 88.

Plaintiffs have attempted to set forth several causes of action against Defendants in the amended complaint, all based on their claim that MANHATTAN PREP is a protectable trademark: (1) trademark infringement, unfair competition and false designation of origin under

---

[1] However, Plaintiffs and MEP differ in several respects. MEP is a small business with revenues being less than 3% of MG Prep's, 0.3% of Kaplan Test Prep's, and 0.04% of Kaplan Inc's (based on its 2012 annual report, Kaplan's parent company, the Washington Post, recorded $4 billion in total revenue. Of it, Kaplan Inc.'s total revenue was $2.2 billion. Of it, Kaplan Test Prep's was $284 million). In addition, MEP offers its services globally while MG Prep's main market is in the U.S. Also, MEP offers many services not provided by MG Prep such as services related to Test of English as a Second Language to foreign students who visit the U.S. and related admissions consulting.

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (2) a second repetitive claim of false

representation and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. §

1125(a)); (3) false advertising under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (4)

cybersquatting under Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)); (5) trademark

dilution under New York General Business Law § 360-l; (6) trademark infringement and unfair

competition under New York common law; (7) deceptive acts and practices under New York

General Business Law §§ 349 and 350; and (8) unjust enrichment. *Id.* at ¶¶ 94 – 147.

Importantly, nine (9) months prior to commencing this action, Plaintiffs filed an

application with the PTO on May 4, 2012 seeking to register MANHATTAN PREP as a

trademark. *See* Plaintiffs' PTO Application, Ex. A.[2]  Plaintiffs make only a passing mention of

the trademark application in their original and amended complaint, providing few details, as well

as failing to provide the current status of Plaintiffs' application. *See* Amended Complaint at ¶

40, Docket No. 30.  In contrast to the conclusory allegations in the amended complaint, in

Plaintiffs' May 4, 2012 trademark application filed with the PTO, Plaintiffs expressly state that

they had *not yet started to use their MANHATTAN PREP mark as of the date of the filing of their*

*May 4, 2012 trademark application. See* Plaintiffs' PTO Application, Ex. A. Consequently,

Plaintiffs filed their application on a section 1(b) filing basis (*intent-to-use*) and when

specifically asked in the application whether the phrase MANHATTAN PREP was currently

being used by Applicant at the time of filing and whether it is currently in use, Plaintiffs

responded *"no"* each time. *Id.*  The application also states that "[t]he applicant has a bona fide

intention to use or use through the applicant's related company . . . ." *Id.*  Plaintiffs' application

included a declaration by Kaplan's Vice President and Associate General Counsel swearing to

---

[2] All exhibits cited to in this brief, other than those documents already located on the Court's docket, are attached to
the declaration of Celeste M. Butera in support of Defendants' motion.

3

the truthfulness of each of these responses and statements contained in it. *Id.* To date, Plaintiffs also have yet to file any statement of use of their alleged mark with the PTO or provide the PTO with any specimens of use of their mark. *See* PTO's Allegation of Use page, Ex. G. Indeed, as late as September 16, 2013, Plaintiffs responded to the latest office action from the PTO and still did not convert their trademark application to an in use application but rather retained it as an intent to use application only. *See* September 16, 2013 Response to March 14, 2013 Office Action, Ex. I.

Plaintiffs' conclusory assertions in this action relating to their claimed first use of their MANHATTAN PREP phrase clearly contradict their prior admissions to the PTO. Plaintiffs have also neither identified nor attached any documentary evidence or support, such as course materials, for the allegations of bona-fide and consistent trademark use in 2011 as claimed in their amended complaint.

Defendants have applied for trademark registration for their MANHATTAN ELITE PREP mark (*see* Exhibit J), and the PTO has found that Defendants have "sought registration of the applied-for mark on the Supplemental Register. However, applicant's mark is eligible for registration on the Principal Register because it comprises or includes inherently distinctive matter." Ex. K. In addition, the PTO reiterated that both the words "Manhattan" and "Prep" cannot be protected and need to be disclaimed from the MANHATTAN ELITE PREP mark. *Id.*

In September 2012, six months before Plaintiffs filed their original complaint in this action, the PTO issued an office action informing Plaintiffs that the PTO had preliminarily determined that the phrase MANHATTAN PREP was not distinctive and, thus, was not entitled to be protected as a trademark absent proof that the phrase had acquired secondary meaning, which was not established by Plaintiffs. *See* September 3, 2012 Office Action, Ex. B. The PTO

4

reiterated its determination in a second office action on March 14, 2013. *See* Ex. C. The March 14, 2013 office action by the PTO[3] determined that "[r]egistration is refused because the applied-for mark, MANHATTAN PREP, is primarily geographically descriptive of the origin of applicant's services." *Id.* The office action further found that "the most prominent meaning or significance of the mark [MANHATTAN] is geographic" and "the addition of 'PREP' does not alter the primarily geographic significance of the mark, and further required that applicant disclaim all rights to the generic word 'Prep'." *Id.*

**ARGUMENT**

## I. THE STANDARD FOR DISMISSAL SUPPORTS THE GRANTING OF DEFENDANTS' MOTION

A complaint should be dismissed for failure to state a claim, under Rule 12(b)(6), when the court is satisfied that the complaint does not state facts in support of its claim that would entitle the plaintiff to relief. *See Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 2009 U.S. Dist. LEXIS 15486 at *8-9 (S.D.N.Y. 2009); *Schober v. Department of Labor*, 1999 U.S. Dist. LEXIS 6844 at *4 (S.D.N.Y. 1999). *See also Diamond Glass Cos. v. Twin City Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 86752 at *8 (S.D.N.Y. 2008) (ruling that the complaint must include allegations concerning the material elements necessary to sustain recovery under a viable legal theory). On a 12(b)(6) motion, a court may consider the complaint as well as any exhibits attached to the complaint and any statements or documents incorporated by reference. *See Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, 2009 U.S. Dist. LEXIS 117368 at *8 (S.D.N.Y. 2009).

---

[3] From the PTO: "...high sales figures and/or advertising expenditures are not dispositive of whether the proposed mark has acquired distinctiveness." "The ultimate test...under Trademark Act Section 2(f) is not applicant's efforts, but applicant's success in educating the public to associate the claimed mark with a single source." Ex. C.

Dismissal is warranted "if, assuming all facts alleged to be true, plaintiff still fails to plead the basic elements of a cause of action." *Schober*, 1999 U.S. Dist. LEXIS 6844 at *4. Moreover, allegations amounting to no more than conclusions, as opposed to well-pleaded factual allegations, are not entitled to the assumption of truth. *See Nomination Di Antonio E Paolo Gensini S.N.C.*, 2009 U.S. Dist. LEXIS 117368 at *7-8.

As set forth below, Plaintiffs are not entitled to relief as a matter of law. Further, the amended complaint fails to sufficiently plead the elements of a claim upon which relief can be granted. Plaintiffs were provided with an opportunity by this Court to amend their complaint and still have not and cannot set forth allegations that sufficiently plead a claim for relief. *See* Docket No. 30. Accordingly, this Court should dismiss the claims in the amended complaint.

## II.   PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIMS MUST BE DISMISSED AS A MATTER OF LAW AS THE GEOGRAPHICALLY DESCRIPTIVE AND GENERIC PHRASE "MANHATTAN PREP" IS NOT PROTECTABLE

The law is well established that such a geographically descriptive and generic phrase as MANHATTAN PREP is not protectable, without acquired secondary meaning, which has not been obtained here. As a result, none of Plaintiffs' claims state a cause of action for which relief can be granted.

### A.   The PTO Has Already Ruled That The Phrase MANHATTAN PREP Is Not Entitled To Protection

In September 2012 (six months prior to the filing of the original complaint in this matter), the PTO issued an office action informing Kaplan that the PTO initially determined that the phrase MANHATTAN PREP was not entitled to be protected as a trademark because the word "Manhattan" was geographically descriptive and the word "Prep" was generic and required to be disclaimed as having any protection at all. *See* September 3, 2012 Office Action, Ex. B. "Registration is refused because the applied-for mark, MANHATTAN PREP, is primarily

6

geographically descriptive of the origin of applicant's services." *Id.* at p. 2. The PTO reiterated this determination in an office action on March 14, 2013, and further found that the phrase had not acquired secondary meaning based on the very short time of use and that conclusory assertions of "high sales figures and significant advertising expenditures for the services at issue" are not the standard. *See* March 14, 2013 Office Action at p. 2, Ex. C.

The findings of the PTO are to be accorded great weight by the courts in this Circuit. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 392-93 (2d Cir. 1995) ("accord[ing] weight to . . . the USPTO's decision not to register the mark without evidence of secondary meaning."); *Chum Ltd. v. Lisowski*, 2001 U.S. Dist. LEXIS 2462 at *23 (S.D.N.Y. 2001) ("The Court [] gives weight to the PTO examiner's determination that [the mark] is generic."). Accordingly, Defendants respectfully requests that the Court consider the PTO's opinions and find that the phrase MANHATTAN PREP is not protected.

### B. The Phrase MANHATTAN PREP Did Not Acquire Secondary Meaning Prior To MEP's Use Of Its MANHATTAN ELITE PREP Mark

It is incontrovertible that "Manhattan" is a geographical term and the addition of generic words, such as "Prep", does not alter the geographical significance of the mark. *See In re Big Steaks, Inc.*, 2002 TTAB LEXIS 137 at *4-5 (TTAB 2002) (refusing to register "Manhattan Steak House" as "[t]he addition of the generic words 'steak house' to the geographical term 'Manhattan' does not take away from or otherwise alter the primary geographical significance of the mark."); *In re The Cookie Kitchen*, 1986 TTAB LEXIS 160 at *1 (TTAB 1986) (refusing to register "Manhattan" as it is "primarily geographically deceptively misdescriptive.").[4]

Terms that are geographically descriptive must have acquired secondary meaning in order to be entitled to protection. *See Morgans Group LLC v. John Doe Co.*, 2012 U.S. Dist.

---

[4] Decisions of the TTAB are to be accorded great weight. *See Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 216 (2d Cir. 2003).

LEXIS 46525 at \*17-18 (S.D.N.Y. 2012) ("Hudson Sky Terrace" does not receive trademark protection as it is of geographic origin and does not have a secondary meaning); *GreenPoint Financial Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 409 (S.D.N.Y. 2000) (Plaintiff's "Greenpoint" mark is descriptive of the geographic origin of the product and will not receive protection absent secondary meaning). Moreover, "significant third party usage also undermines Plaintiff's claim of secondary meaning." *GreenPoint Financial Corp.*, 116 F. Supp. 2d at 410 (finding no secondary meaning where "the Brooklyn phone directory establishes that more than fifty other establishments conduct business under the 'Greenpoint' name."). Here, it goes without saying that there are hundreds, if not thousands, of companies that conduct business under the name "Manhattan".

As a matter of law, Plaintiffs cannot establish that secondary meaning existed in MANHATTAN PREP by the time that MEP began its use of MANHATTAN ELITE PREP. Where the geographic term has not acquired secondary meaning before defendant commenced the use of its mark, there cannot be any infringement and the infringement claim must be dismissed as a matter of law. In *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980), the use of the name "Saratoga" by plaintiff ("Saratoga Vichy") could not acquire secondary meaning in the few months before defendants began use of the same name ("Saratoga Geyser"). The Second Circuit found that that there was no infringement as a matter of law as "[e]ven if Saratoga Vichy has rights in the name 'Saratoga' because its use of the name has acquired a secondary meaning, it could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired." *Id. See also Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012) (plaintiff's trademark infringement claim failed as a matter of law where its use of the

geographic term "Northeast" did not result in acquired secondary meaning prior to defendants'

use of "Northeast", which began two years later); *Black & Decker Corp. v. Dunsford*, 944

F.Supp. 220, 227-228 (S.D.N.Y. 1996) (3 years and 5 years are both insufficient periods of use,

as a matter of law, to show that secondary meaning had been established *before* plaintiff began

its use of the mark); *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 826 (Fed. Cir.

1992) (18 months of exclusive use prior to defendants' use is insufficient to establish secondary

meaning); *Sports Traveler v. Advance Magazine Publishers Inc.*, 25 F. Supp. 2d 154, 166

(S.D.N.Y. 1998) (9 months prior use by plaintiff before defendant's use is not sufficient as a

matter of law to establish secondary meaning *before* defendant commenced its use); *Fraga v.

Smithaven MRI*, 1996 U.S. Dist. LEXIS 22016 at *4 (E.D.N.Y. 1996) ("The issue is not whether

plaintiff has acquired secondary meaning for the term "Open MRI" today but whether plaintiff's

term had attained that status before defendants commenced their use of the term.").[5]

Plaintiffs allege (without any support) that they began their first trademark use of their

MANHATTAN PREP phrase in July 2011, a mere five months before MEP registered its

domain in December 2011, and about seven months before MEP's undisputed commercial use of

its MANHATTAN ELITE PREP mark in February 2012. Based on the above decisional

authority, such a short period of time is insufficient to establish secondary meaning as a matter of

---

[5] "Prep" in the phrase MANHATTAN PREP is a generic term that cannot be protected. "[E]ven when a generic term has developed a secondary meaning, it is unprotectable as a trademark." *Air Cargo News, Inc. v. Tabmag Publishing, LTD.*, 2007 U.S. Dist. LEXIS 26873 at *14 (E.D.N.Y. 2007) (finding "Air Cargo News" to be generic and ineligible for trademark protection as a matter of law). *See also CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 15 (2d Cir. 1975) (defendant's motion to dismiss granted as a matter of law as plaintiff's "Consumer Electronics Monthly" is not protected as "consumer electronics" is a generic term). The word "Prep" is clearly generic as it is an abbreviation for the generic word "preparation" and the use of the word "Prep" can never be entitled to protection. Generic words belong to the public at large and cannot be appropriated as a trademark. *See Dial A Mattress v. Mattress Madness*, 841 F. Supp. 1339, 1347 (E.D.N.Y. 1994). Indeed, in both office actions, the PTO has determined that the abbreviation "prep" is a generic abbreviation for the word "Preparation" and is not protectable, requiring that the applicant, Kaplan, disclaim any exclusive rights in this abbreviation. *See* Exhibits B and C.

9

law. Furthermore, the PTO has determined that, in fact, Plaintiffs' mark is not protectable as it is geographically descriptive and has not acquired secondary meaning.

Moreover, Plaintiffs have wholly failed to sufficiently allege in their amended complaint the factors used to determine secondary meaning prior to MEP's use of MANHATTAN ELITE PREP. The six factors used to determine secondary meaning are: "(1) advertising and promotional efforts; (2) consumer surveys linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product or service; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Morgans Group LLC*, 2012 U.S. Dist. LEXIS 46525 at *20-21.

Plaintiffs' amended complaint does not include any allegations of sales success and figures specifically attributed to its geographically descriptive phrase MANHATTAN PREP, as well as consumer surveys or other alleged attempts to plagiarize the phrase. *See* Amended Complaint, Docket No. 30. The amended complaint includes only conclusory allegations regarding Plaintiffs' advertising and sales and it does not include any allegations that such advertising and sales took place prior to MEP's use of MANHATTAN ELITE PREP. *Id.* Plaintiffs' references to blogs, only one of which is dated July 2011, do not sufficiently allege unsolicited media coverage of their services. *Id.* at Ex. B. In finding that MANHATTAN PREP did not acquire distinctiveness, the PTO ruled that "[m]ost of the unsolicited media coverage [submitted to the PTO by Kaplan] consisted of blogs and/or web articles that have no demonstrated readership/audience numbers to indicate that a significant portion of the consuming public would encounter these references." March 14, 2013 Office Action, Ex. C. The news articles referenced by Plaintiffs are all dated *after* MEP began its use of

MANHATTAN ELITE PREP. *See* Amended Complaint at ¶ 37 and Exhibit B to Amended Complaint, Docket No. 30.

Likewise, Plaintiffs' allegations of advertising and sales figures in their amended complaint merely state that, since July 2011, Manhattan Prep has spent certain amounts on advertising and has generated certain revenue. *Id.* at ¶ 4. However, Plaintiffs fail to assert how much was spent on advertising and how much was generated in sales prior to February 2012. More importantly, Plaintiffs do not allege that *any* of the advertising spent or revenue generated was specifically spent and generated with respect to the phrase MANHATTAN PREP. *Id.* at ¶36.

Plaintiffs have failed to sufficiently allege the factors necessary to establish secondary meaning for MANHATTAN PREP. In any event, based on what is alleged, it is clear that secondary meaning was not acquired as a matter of law by the time that Defendants commenced use of their trademark and, thus, Plaintiffs do not have a protectable mark. As such, as a matter of law, Plaintiffs' infringement claims must be dismissed in their entirety.

## C. Plaintiffs' Trademark Infringement and Unfair Competition Claim Under New York Common Law Must Likewise Be Dismissed

"'It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims.'"[6] *Allied Interstate LLC v. Kimmel & Silverman P.C.*, 2013 U.S. Dist. LEXIS 113465 at *15-16 (S.D.N.Y. 2013). "Under New York law, as under § 43(a) of the Lanham Act, to prevail on a claim for trademark infringement of an unregistered mark, a

---

[6] Although count I references unfair competition and false designation of origin under the Lanham Act, it really asserts only a claim for trademark infringement. To the extent Plaintiffs assert claims of unfair competition and false designation of origin under the Lanham Act separate from their trademark infringement claim, such claims are addressed with respect to Plaintiffs' common law unfair competition claim. Not only does an unfair competition claim under common law mirror the same claim under the Lanham Act, but unfair competition and false designation of origin "are in fact the same cause of action under Section 43(a), and plaintiff's conclusory assertions in support of both claims are materially identical." *Allied Interstate LLC*, 2013 U.S. Dist. LEXIS 113465 at *15. Accordingly, just as Plaintiffs' common law unfair competition claim should be dismissed, any claims of unfair competition and false designation of origin under the Lanham Act should be dismissed.

plaintiff must establish secondary meaning." *Rockland Exposition, Inc.*, 894 F. Supp. 2d at 325 (dismissing common law trademark infringement claim because no evidence of secondary meaning). As set forth in section B above, Plaintiffs have failed to establish a protectable mark. As such, Plaintiffs' trademark infringement claim under New York common law must be dismissed.

For the same reasons, Plaintiffs' unfair competition claim under New York common law also fails. Plaintiffs must allege a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing service, bad faith by MEP and a protectable property interest. *See Rockland Exposition*, 894 F. Supp. 2d at 326-28. In *Rockland Exposition*, the court dismissed plaintiff's unfair competition claim and found that plaintiff could not demonstrate that it had any protectable interest in the term "Northeast" because of an absence of secondary meaning. *Id.* at 328. The court also concluded that the claim separately failed because there was no evidence that defendants acted in bad faith. *Id.* An inference of bad faith exists only when a defendant appropriates an identical mark that is well-known and has acquired a secondary meaning. *Id.* at 329.

Here, the allegations demonstrate: (1) no secondary meaning for MANHATTAN PREP in order to establish any protectable interest (as established in section B above) and (2) no bad faith on the part of Defendants. The amended complaint does not contain any allegation of bad faith on the part of Defendants in connection with this claim. *See* Amended Complaint at ¶¶ 125-133, Docket No. 30. Moreover, as there are inadequate allegations of secondary meaning and it is undisputed that the marks at issue are not identical, there cannot be any inference of bad faith on the part of Defendants. In addition, Defendants have clearly demonstrated that they had a reasonable belief that they had the right to use MANHATTAN ELITE PREP. MEP commenced

12

its use of the MANHATTAN ELITE PREP mark at least 3 months before Plaintiffs filed their "intent to use" application with the PTO, in May 2012, at which time Plaintiffs informed the PTO that it was not in fact using the phrase MANHATTAN PREP. For the above reasons, Plaintiffs' common law unfair competition claim must be dismissed.

**D.    Plaintiffs Have No Basis To Allege That MEP Infringed Upon A So-Called "Manhattan GMAT" Mark**

In the amended complaint, in contrast to the original complaint, Plaintiffs have alleged that MEP has infringed upon a so-called "Manhattan GMAT" mark (in addition to the name MANHATTAN PREP). In fact, Plaintiffs have added their alleged "Manhattan GMAT" mark to their claims for trademark infringement (federal and state), trademark dilution, deceptive acts and practices, and unjust enrichment. However, Plaintiffs have set forth no basis in their amended complaint to assert that MEP has infringed on a so-called "Manhattan GMAT" mark.

Initially, "GMAT" is a registered trademark of the GMAC, the Graduate Management Admission Council, which has never issued any permission to Plaintiffs to allow them to use "GMAT" or "Manhattan GMAT" as a trademark. Instead, the GMAC only allowed Plaintiffs to use "GMAT" as part of their DBA and requested Plaintiffs to add "Prep" after "GMAT" to stem confusion between Manhattan GMAT Prep, a test prep company, from the test maker of GMAT, which is the GMAC. *See* October 22, 2004 letter, Ex. "H". Thus, Plaintiffs do not have any trademark rights in "Manhattan GMAT", and have no standing to assert any claims against MEP. *See Christopher D. Smithers Foundation, Inc. v. St. Lukes-Roosevelt Hosp. Ctr.*, 2001 U.S. Dist. LEXIS 9293 at *14 (S.D.N.Y. 2001) ("[B]ecause plaintiffs have not demonstrated ownership of the mark or any evidence of commercial or competitive injury, they do not have standing to sue defendants for infringement under section 43(a) of the Lanham Act."); *Nordco v. Ledes*, 1997

13

U.S. Dist. LEXIS 13904 at *9 (S.D.N.Y. 1997) (infringement and unfair competition claims failed as plaintiff had no ownership interest in trademark).

Moreover, Plaintiffs have failed to include any allegations or any evidence within the amended complaint that supports their claims relating to the "Manhattan GMAT" name. Plaintiffs have failed to sufficiently allege that they are the owner of the mark or that the mark is even protectable, and have failed to allege how MEP's use of the MANHATTAN ELITE PREP mark infringes on "Manhattan GMAT". In fact, as set forth by Plaintiffs in ¶¶ 15 and 63 of their amended complaint, the name "Manhattan GMAT" was the subject of a 2006 lawsuit, which has long been resolved by settlement. In Exhibit J to Plaintiffs' amended complaint (an August 1, 2012 letter by Plaintiffs' counsel to Ms. Yun), Plaintiffs admit that any issues with the name "Manhattan GMAT" were settled pursuant to a 2006 settlement agreement. *See* August 1, 2012 letter at p. 2, fn. 2, Exhibit J to Amended Complaint, Docket No. 30.[7]

Instead, it appears that Plaintiffs are erroneously attempting to use facts associated with "Manhattan GMAT" to falsely support their claims relating to MANHATTAN PREP. For example, Plaintiffs allege in their amended complaint, in ¶ 31, that "Since 2000, Manhattan Prep has promoted its MANHATTAN GMAT course and materials, including its website at manhattangmat.com, to advertise its MANHATTAN GMAT goods and services and to provide information about its GMAT courses and materials." This allegation, and others similar to it, has no relevance to Plaintiffs' claims against MEP relating to the MANHATTAN PREP name and does not establish secondary meaning for MANHATTAN PREP. Plaintiffs' use of Manhattan GMAT as a name and mark is not only irrelevant to the current issues in this lawsuit, they underscore that Plaintiffs had been using Manhattan GMAT in their business, and not Manhattan

---

[7] The settlement agreement admitted no wrongdoing or liability on the part of either party and also resulted in a payment being made to Ms. Yun's prior company, Manhattan Review LLC. *See* 2006 Settlement Agreement, Exhibit K to Amended Complaint, Docket No. 30.

Prep. Indeed, as Plaintiffs informed the PTO in May 2012, they had only an intent to use the phrase MANHATTAN PREP in the future. Meanwhile, Defendants had already been using their trademark MANHATTAN ELITE PREP in commerce in connection with their business for at least 3 months (since at least February 2012).

Accordingly, Plaintiffs' inclusion of a so-called "Manhattan GMAT" mark to their claims for trademark infringement (Claims I and VI), trademark dilution (Claim V), deceptive acts and practices (Claim VII) and unjust enrichment (Claim VIII) should be dismissed.

## III.   PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIMS MUST BE DISMISSED AS A MATTER OF LAW AS MEP'S TRADEMARK USE OF MANHATTAN ELITE PREP IN COMMERCE PRECEDED PLAINTIFFS' USE OF MANHATTAN PREP IN COMMERCE

All of Plaintiffs' claims should also be dismissed as Plaintiffs did not commence use of their MANHATTAN PREP name prior to MEP's use of its trademark MANHATTAN ELITE PREP. "The Lanham Act protects the rights of the first user of a trademark . . . ." *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 742 (2d Cir. 1998). As a result, Defendants cannot be held liable for the infringement of Plaintiffs' phrase MANHATTAN PREP.

It is undisputed that MEP commenced use of its trademark MANHATTAN ELITE PREP by February 2012, at the latest, in connection with its business. *See* Amended Complaint at ¶ 88, Docket No. 30. Plaintiffs have not submitted any evidence to the PTO or in connection with this lawsuit that can establish the bonafide public, open, deliberate, continuous, and notorious use of their mark between July 2011 and May 2012 that is necessary to succeed in this action. "A bonafide 'use in commerce' does not include a token use whose only purpose is to support an application for trademark registration." *Cherie Amie v. Windstar Apparel, Corp.*, 2002 U.S. Dist. Lexis 4950 at *14 (S.D.N.Y. 2002) (use must be ". . . sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the

15

mark."). *See also Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157-1160 (9th Cir. 2001); *La Societe Anonyme v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d. Cir. 1974) (Use is not sufficient for trademark purposes where use is "...sporadic, casual, or transitory."); *accord, American Express v. Goetz*, 515 F.3d 156 (2d. Cir. 2008).

Plaintiffs did not begin use of their MANHATTAN PREP name until after MEP began use of its mark. Plaintiffs only purported evidence that it commenced use of their mark in July 2011 is a single blog by an unnamed individual. *See* Last Page of Ex. B to Amended Complaint, Docket No. 30. In fact, the only alleged evidence that Plaintiffs began using their mark prior to their May 4, 2012 application with the PTO are blogs, which could be written by anyone, including Plaintiffs' employees or other individuals paid or influenced by Plaintiffs. *Id.* at Ex. B.

The blogs submitted by Plaintiffs certainly do not constitute a bonafide public, open, deliberate, continuous, and notorious use. *See QVC Inc. v. Your Vitamins Inc.*, 2011 U.S. App. LEXIS 15454 at *9 (3d Cir. 2011) (finding blog posts to be of limited value as "[c]omments left on blog posts can be very difficult to authenticate. The use of false identities in Internet forums is now a well-known tactic for attacking corporate rivals. . . . Even if a poster is 'legitimate,' doubts will often remain as to the sincerity of the comment."); *Sony Computer Entertainment, Inc. v. Sony Computer Entertainment America, Inc.*, 203 F.3d 596, 609 (9th Cir. 2000) (reversing district court's finding of tarnishment of mark as semi-anonymous reviews posted on internet were neither authenticated nor identified). The MANHATTAN PREP name is only referred to in online news articles, such as The Wall Street Journal and Fast Company (as alleged in paragraph 37 of the amended complaint), *more than one year after* Plaintiffs allege that they began using their mark, which is well after Plaintiffs' May 4, 2012 application and Defendants' February 2012 first use of their MANHATTAN ELITE PREP mark.

More importantly, Plaintiffs' admissions in their own documents establish that they did not commence use of their MANHATTAN PREP name until after MEP's use of its mark. In May 2012, at least 3 months *after* MEP commenced its use of its MANHATTAN ELITE PREP mark, Kaplan filed it trademark application for MANHATTAN PREP as an "intent to use" application with the PTO and admitted that, as of May 2012, it was not using MANHATTAN PREP in commerce, but only that it had an intent to use such mark in the future. *See* Plaintiffs' PTO Application, Ex. A.[8] Kaplan's "intent to use" application is accompanied by a signed declaration from their Assistant General Counsel, in which Kaplan undeniably declared that as of May 2012 it had not yet started to use the MANHATTAN PREP name. *Id.*

The significance of Plaintiffs filing their application on an intent-to-use basis is confirmed by the PTO website and decisional authority – it clearly means that Plaintiffs have not yet begun using their mark in commerce. The PTO's website provides that a section 1(b) filing basis "applies when you have not yet started using your trademark." Trademark Application Timelines page, Ex. D. Further, the PTO website states that a "bona fide intention to use" means that "the applicant has not actually used the mark yet in commerce, but can claim in good faith that it plans to do so later". Intent to Use Forms page, Ex. E. Also, in a question and answer segment on the PTO website relating to the Trademark Law Revision Act of 1988, which first permitted intent-to-use applications, the PTO responds to the question "Can an application be based upon both use and intent-to-use?" by answering "No. Section 1(a) of the Trademark provides for the filing of applications based upon actual use in commerce, while Section 1(b)

---

[8] Defendants request that the Court take judicial notice of the documents filed on the PTO website, including the trademark applications and office actions. "The Court may properly take judicial notice of official records of the United States Patent and Trademark Office . . . ." *Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283, 287 fn. 3 (S.D.N.Y. 2010). *See also Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 894 F. Supp. 2d 288, fn. 37 (S.D.N.Y. 2012) (pursuant to Federal Rule of Evidence 201(b)(2), taking judicial notice of live trademark registrations and applications on the PTO website).

provides for the filing of applications based upon intent-to-use. . . . [A]n applicant may not file under both Sections 1(a) and 1(b) of the Act in a single application . . . ." November 27, 1989 PTO Questions and Answers, Ex. F.

The Southern District of New York, the venue where Plaintiffs filed this lawsuit, in conformity with the PTO has held that:

> Section1(b) of the Trademark Act requires that a person filing an intent to use application must be one "who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce." The requirement of a bona fide intention is meant to eliminate "token use" and to require, based on an objective view of the circumstances, a good faith intention to use the mark in a real and legitimate commercial sense.

*Burkina Wear, Inc. v. Campagnolo, S.R.L.*, 2011 U.S. Dist. LEXIS 1556 at *9 (S.D.N.Y. 2011) (the applicant's failure to provide documentary support for its claimed intent casts doubt on the applicant's good faith). Just as important, Plaintiffs' filing of an intent-to-use application "cannot invoke the Lanham Act right of priority as a basis for an injunction." *Market Corner Realty Assocs., LLC v. CGM-GH LLC*, 317 F. Supp. 2d 485, 486 (S.D.N.Y. 2004) (denying plaintiffs' motion to enjoin defendants from using name where plaintiffs' filed an intent-to-use application soon after defendants announced their intention to use the same name).

Furthermore, Plaintiffs have still yet to file any allegations of use with the PTO. Just recently, on September 16, 2013, Plaintiffs made an additional filing in connection with their trademark application, but neither asserted that they are changing the designation of "intent-to-use" to an "in use" basis nor included any allegations or support of use. *See* September 16, 2013 Response to March 14, 2013 Office Action, Ex. I. Had Plaintiffs really begun using the MANHATTAN PREP name in July 2011, they would not have waited until May 2012, nearly three months after MEP began its use of the MANHATTAN ELITE PREP mark, to file an

application with the PTO, and they would have filed under section 1(a) for *in use* applications as opposed to section 1(b), which only applies to *intent-to-use* applications. Indeed, there is no evidence of any bona fide (non-token), public, open, deliberate, continuous, and notorious trademark use of the MANHATTAN PREP name within the marketplace in July 2011 or at any time before MEP's first use of its mark in February 2012. Likewise, there are no allegations or evidence that Plaintiffs used the MANHATTAN PREP name in connection with the publishing of any of their books and materials prior MEP's first use of its mark in February 2012. Rather, Plaintiffs' admissions in their May 2012 trademark application that they were not yet at that time using the phrase MANHATTAN PREP are uncontroverted.

Accordingly, it is evident that Plaintiffs did not commence any bonafide trademark use of their MANHATTAN PREP name prior to MEP's use of its trademark MANHATTAN ELITE PREP. As a result, Plaintiffs cannot proceed with their infringement claims against Defendants and all of Plaintiffs' claims should be dismissed in their entirety.

## IV. PLAINTIFFS' FALSE ADVERTISING CLAIM SHOULD BE DISMISSED AS PLAINTIFFS HAVE NOT ALLEGED THAT DEFENDANTS MADE MATERIAL MISREPRESENTATIONS ABOUT THE TEST PREPARATION SERVICES OF EITHER PLAINTIFFS OR DEFENDANTS

Plaintiffs fail to set forth a sufficient claim for false advertising and, as such, the claim must be dismissed. False advertising under the Lanham Act requires:(1) a material misrepresentations about the nature, characteristics or geographic origin of either defendant's or plaintiff's goods; (2) false or misleading misrepresentations in commerce; (3) made in the context of commercial advertising or promotion; and (4) damage by the representations. *See General Cigar Co. v. GDM Inc.,* 988 F. Supp. 647, 665 (S.D.N.Y. 1997); *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 209 (E.D.N.Y. 2007) (dismissing defendant's false advertising claim where Plaintiff's act did not constitute a false or misleading fact about the

19

nature, characteristics, or qualities of goods or services). *See also Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) (dismissing false advertising claim).

Plaintiffs have failed to set forth any factual allegations in their amended complaint that Defendants have made statements that are material misrepresentations about the nature, characteristics or geographic origin of the test preparation services of either Plaintiffs or MEP.[9] To the contrary, Plaintiffs only allege that MEP's use of its trademark MANHATTAN ELITE PREP infringes upon Plaintiffs' MANHATTAN PREP name. *See* Amended Complaint, Docket No. 30. The false advertising claim is merely a repetition of Plaintiffs' trademark infringement claims. Accordingly, Plaintiffs' false advertising claim must be dismissed.

## V.    **PLAINTIFFS' CYBERSQUATTING CLAIM SHOULD BE DISMISSED**

Plaintiffs' cause of action for cybersquatting does not set forth the requisite elements for such a claim. Under a cybersquatting claim pursuant to 15 U.S.C. § 1125(d) of the Lanham Act, "plaintiff must be the owner of a 'famous mark' and show: (1) that a domain name 'is identical and confusingly similar to, or dilutive of' the owner's mark; and (2) that the defendant registered the domain name with a 'bad faith intent to profit' from the name." *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 580 (S.D.N.Y. 2009), *affirmed*, 2009 U.S. App. LEXIS 26629 (2d Cir. 2009) (granting motion to dismiss cybersquatting claim as plaintiff's allegations were insufficient to establish that defendants' use was for profit). *See also 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) (dismissing cybersquatting claim because no evidence of bad faith intent to profit and defendant's website

---

[9] Regarding the purported confusion related to Groupon and Gilt vouchers, MEP has no control over the presentation of such vouchers since Groupon and others design the template and control the email campaign without the clients' involvement. Furthermore, MEP always correctly identifies itself on the phone as Manhattan Elite Prep. In addition, Defendants' and Plaintiffs' logos accentuate their differences. *See* Exhibits A and J.

added the word "club" to its name making it less similar); *Kitty Walk Systems, Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306, 310 (E.D.N.Y. 2006) (dismissing cybersquatting claim because defendants were not diluting a famous mark).

Here, Plaintiffs do not allege, nor can they allege, that the phrase MANHATTAN PREP is famous. "[C]ourts generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." *Heller Inc. v. Design Within Reach, Inc.*, 2009 U.S. Dist. LEXIS 71991 at *8 (S.D.N.Y. 2009). Clearly, it is not alleged by Plaintiffs that MANHATTAN PREP falls within these categories.

Furthermore, Plaintiffs set forth nothing but a conclusory allegation that MEP registered its "manhattaneliteprep.com" domain name with a bad faith intent to profit. *See* Amended Complaint at ¶¶ 88, Docket No. 8 ("Defendants registered the domain name with the bad faith intent to profit from the invaluable goodwill Plaintiffs have developed in the MANHATTAN PREP Mark."). This conclusory allegation is insufficient to defeat Defendants' motion to dismiss Plaintiffs' cybersquatting claim. *See Karmilowicz v. Hartford Financial Services Group*, 2011 U.S. Dist. LEXIS 77481 at *25 (S.D.N.Y. 2011) ("[C]onclusory allegation – unsupported by the allegation of a single fact tending to show bad faith – is not enough to save Plaintiff's complaint from dismissal."); *Stoner v. Walsh*, 772 F. Supp. 790, 806 (S.D.N.Y. 1991) ("[S]imply adding the words 'bad faith,' or a synonym, to a complaint is not sufficient to withstand a motion to dismiss – even under the liberal requirements of Rule 8(a)."). Accordingly, Plaintiffs' cybersquatting claim should be dismissed.

## VI. **PLAINTIFFS' TRADEMARK DILUTION CLAIM SHOULD BE DISMISSED**

Plaintiffs' cause of action for trademark dilution under New York General Business Law § 360-l fails as a matter of law and must be dismissed. "New York state dilution requires (1) a distinctive mark and (2) a likelihood of dilution." *GreenPoint Financial Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 413 (S.D.N.Y. 2000). A mark must be extremely strong or truly distinctive to merit protection under this claim. *Id.* (the distinctiveness of the "Greenpoint" mark was not strong enough to merit protection as it is neither unique nor has it achieved secondary meaning throughout New York State). *See also Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 301 (S.D.N.Y. 2003) (plaintiff cannot maintain a dilution claim where it has not come forward with any proof that the mark has obtained secondary meaning).

Here, as discussed in the above sections, MANHATTAN PREP is not protectable and, at the very least, it had not acquired secondary meaning at the time that MEP commenced use of the MANHATTAN ELITE PREP mark. Furthermore, Plaintiffs have not sufficiently alleged the second element of a trademark dilution claim under state law – "a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Brockmeyer*, 248 F. Supp. 2d at 300. "Blurring is the process that may occur where the defendant uses or modifies *the plaintiff's trademark* to identify *the defendant's goods and services,* raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* at 301 (quotations omitted) (emphasis in original). "Tarnishment exists when the plaintiff's mark is linked to products of shoddy quality or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Id.* (quotations omitted). *See also Sly Magazine, L.L.C. v. Weider Publs. L.L.C.*, 529 F. Supp. 2d 425, 444 (S.D.N.Y. 2007) (dismissing claims).

Here, Plaintiffs have not sufficiently alleged either dilution by blurring or dilution by tarnishment. Plaintiffs do not allege in their amended complaint how their mark will lose its ability to serve as a unique identifier of Plaintiffs' services. *See* Amended Complaint, Docket No. 30. Likewise, Plaintiffs do not allege that MEP's services are of a shoddy quality.[10] *Id.*

Accordingly, Plaintiffs' trademark dilution claim must be dismissed.

## VII.  PLAINTIFFS' DECEPTIVE ACTS AND PRACTICES CLAIM SHOULD BE DISMISSED

Plaintiffs' cause of action for deceptive acts and practices fails to state a valid claim. To prove deceptive trade practices under New York General Business Law § 349, the focus of the complaint must be consumer injury or harm to the public interest. "Consumer confusion as to the source of the product does not create a cause of action under this statute." *Gross v. Bare Escentuals Beauty, Inc.*, 632 F. Supp. 2d 293, 299 (S.D.N.Y. 2008). *See also Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, 2010 U.S. Dist. LEXIS 52795 at *20 (E.D.N.Y. 2010); *Karam Prasad, LLC v. Cache, Inc.*, 2007 U.S. Dist. LEXIS 63052 at *4-5 (S.D.N.Y. 2007).

Plaintiffs do not assert any harm to the public interest in their amended complaint, which is required for a claim under General Business Law § 349. Plaintiffs state only that "Defendants' . . . have caused irreparable injury to Manhattan Prep . . . ." Amended Complaint at ¶ 140, Docket No. 30. Moreover, the only harm is consumer confusion, which is insufficient. *Id.* at ¶¶ 41-58, 138. Accordingly, Plaintiffs' deceptive acts and practices claim must be dismissed.

---

[10] Ms. Yun personally took the same exams years ago and scored in the 99th percentile on various standardized tests including the GMAT. She earned her MBA degree from Columbia Business School in 1998 before she started to work in the test preparation industry nearly 10 years ago. Defendants' test prep businesses have had thousands of satisfied students, many of whom posted glowing feedback on Google. Defendants have also been featured in Business Week and many other prominent publications.

## VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS TO ALLEGE PLAINTIFFS CONFERRED A BENEFIT TO DEFENDANTS THAT DEFENDANTS UNJUSTLY RETAINED

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (indirect benefit from loan does not establish specific and direct benefit necessary to support unjust enrichment). *See also Prime Mover Capital Ptnrs L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 696 (S.D.N.Y. 2012). Plaintiff must have bestowed a direct benefit on defendant. *See Prime Mover Capital Partners*, 898 F. Supp. 2d at 697. Plaintiffs fail to allege that they conferred a benefit to Defendants that Defendants unjustly retained, which is required for a claim of unjust enrichment. It is not sufficient for defendant to receive some indirect benefit -- the benefit received must be specific and direct to support unjust enrichment. *See Icebox-Scoops, Inc. v. Disney Enters.*, 2013 U.S. App. LEXIS 5704 at *2 (2d Cir. 2013) ("Icebox has not plausibly asserted that it had conferred a benefit to Disney that Disney unjustly retained."); *Prime Mover Capital Partners*, 898 F. Supp. 2d at 697 (An "indirect benefit is insufficient to sustain an unjust enrichment claim.").

Here, Plaintiffs cannot have, nor have they alleged, an unjust enrichment claim. Plaintiffs do not allege any transaction between Plaintiffs and Defendants which resulted in Plaintiffs conveying a benefit onto Defendants. Instead, the unjust enrichment claim repeats Plaintiffs' trademark infringement claims and must be dismissed. Amended Complaint at ¶ 143.

## IX. PLAINTIFFS' SECOND CAUSE OF ACTION SHOULD BE DISMISSED AS IT IS REPETITIVE OF PLAINTIFFS' FIRST CAUSE OF ACTION

Plaintiffs' second cause of action is repetitive of their first cause of action. Where two claims are redundant – arise from the same conduct and involve no distinct damages – one of the

claims must be dismissed. *See Harleysville Worcester Ins. Co. v. Hurwitz*, 2005 U.S. Dist. LEXIS 5721 at *15-16 (S.D.N.Y. 2005) (dismissing a subrogation claim as it is duplicative of a legal malpractice claim). Both Plaintiffs' first and second causes of action assert a claim of unfair competition under federal law, and are based on the same alleged conduct and seek the same damages. *See* Amended Complaint at ¶¶ 94-103, Docket No. 30. Accordingly, Plaintiffs' second, duplicative cause of action for unfair competition should be dismissed.

**CONCLUSION**

For all the above stated reasons, Defendants respectfully request that the Court grant: (i) dismissal of all of the claims in Plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (ii) in the alternative, summary judgment against Plaintiffs, pursuant to Rules 12(b)(d) and 56 of the Federal Rules of Civil Procedure; and (iii) such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
October 4, 2013

Respectfully submitted,

RIVKIN RADLER LLP

/s/ *Celeste M. Butera*
Celeste M. Butera (CMB-5659)
Jason B. Gurdus (JG-3293)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Attorneys for Defendants
TRACY YUN and MANHATTAN ENTERPRISE
GROUP LLC d/b/a MANHATTAN ELITE PREP

2854105 v2

25