# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KAPLAN, INC. and MG PREP, INC. d/b/a MANHATTAN PREP and MANHATTAN GMAT, | : : : | |
| Plaintiffs, | : | No. 13-cv-1147-JGK-HP |
| v. | : : | **ECF CASE** |
| TRACY YUN and MANHATTAN ENTERPRISE GROUP LLC d/b/a MANHATTAN ELITE PREP, | : : | |
| Defendants. | : : : : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS

Michelle Mancino Marsh (MM 1494)
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone:    (212) 425-7200
Facsimile:    (212) 425-5288

Mimi K. Rupp (MR 0007)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304
Telephone:    (650) 384-4700
Facsimile:    (650) 384-4701

*Attorneys for Plaintiffs*
*Kaplan, Inc. and MG Prep, Inc.*
*d/b/a Manhattan Prep*
*and Manhattan GMAT*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

RELEVANT FACTS ............................................................................................................... 4

ARGUMENT .......................................................................................................................... 7

I.  PLAINTIFFS' CLAIM FOR TRADEMARK INFRINGEMENT, UNFAIR
    COMPETITION, FALSE REPRESENTATION, AND FALSE
    DESIGNATION OF ORIGIN IS PROPERLY PLED (COUNTS I-II) ........................... 9

    A.  Acquired Distinctiveness is a Matter of Fact ..................................................... 9

    B.  Defendants Overlook Their Own Allegations that the MEP Mark is
        Distinctive ......................................................................................................... 10

    C.  Plaintiffs Have Properly Pled Standing to Assert Their Manhattan GMAT
        Claims ................................................................................................................ 12

        1.  Even If the 2004 Letter Were Considered, It Has Been Novated By
            Subsequent Conduct .............................................................................. 14

        2.  Even if the Court Considered the 2004 Letter, As A Licensee,
            Plaintiffs Have Standing to Assert Their Rights in and to The
            MANHATTAN GMAT Mark ................................................................ 15

    D.  Determining When the MANHATTAN Marks Were First Used in
        Commerce is a Question of Fact ....................................................................... 16

II.  PLAINTIFFS' CLAIM FOR DECEPTIVE ACTS AND PRACTICES IS
     PROPERLY PLED (COUNT VII) ............................................................................... 18

III. PLAINTIFFS' FALSE ADVERTISING CLAIM IS PROPERLY PLED
     (COUNT III) ................................................................................................................ 19

IV.  PLAINTIFFS' FEDERAL CYBERSQUATTING CLAIM IS PROPERLY PLED
     (COUNT IV) ................................................................................................................ 19

V.   PLAINTIFFS' NEW YORK STATE LAW DILUTION CLAIM IS PROPERLY
     PLED (COUNT V) ....................................................................................................... 21

VI.  PLAINTIFFS HAVE PROPERLY PLED THEIR CLAIMS FOR UNJUST
     ENRICHMENT (COUNT VIII) ................................................................................... 21

VII. THE COURT SHOULD EXCLUDE MEP'S PROFFERED EVIDENCE
     RATHER THAN CONVERT THIS MOTION TO DISMISS

CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................ 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 7

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993)................................................................................... 14

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992)................................................................................. 10

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................................................................... 14, 15, 26

*Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 7

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989)....................................................................................... 15

*Counihan v. Allstate Ins. Co.*,
194 F.3d 357 (2d Cir. 1999)................................................................................... 24

*McGrath v. Hilding*,
363 N.E.2d 328 (N.Y. 1977)................................................................................... 24

*Cowan v. Ernest Codelia, P.C.*,
149 F. Supp. 2d 67 (S.D.N.Y. 2001)...................................................................... 14

*Deere & Co. v. MTD Prods., Inc.*,
41 F.3d 39 (2d Cir. 1994)....................................................................................... 23

*Dillenberg v. Thott*,
229 S.E.2d 866 (Va. 1976)..................................................................................... 16

*Fragrancenet.com, Inc. v. Les Parfums, Inc.*,
72 F. Supp. 2d 328 (E.D.N.Y. 2009) ..................................................................... 10

*Global Network Comm'n, Inc. v. New York*,
458 F.3d 150 (2d Cir. 2006).............................................................................. 25, 26

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)................................................................................. 15

*GTFM, Inc. v. Solid Clothing Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002) ............................................................... 11, 13

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)..................................................................................... 8

*Hartzog v. Reebok Int'l Ltd.,*
    77 F. Supp. 2d 478 (S.D.N.Y. 1999)........................................................... 8

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,*
    253 F. Supp. 2d 262 (D. Conn. 2003)......................................................... 8

*Kirch v. Liberty Media Corp.,*
    449 F. 3d 388 (2d Cir. 2006)........................................................................ 9

*Kraft, General Foods, Inc. v. Allied Old English, Inc.,*
    831 F. Supp. 133 (S.D.N.Y 1993) ............................................................ 23

*Kuklachev v. Gelfman,*
    600 F. Supp. 2d 437 (E.D.N.Y. 2009) ...................................................... 21

*Liebowitz v. Elsevier Science Ltd.,*
    927 F. Supp. 688 (S.D.N.Y. 1996) ........................................................... 17

*Linens of Europe, Inc. v. Best Mfg., Inc.,* No. 03 Civ. 9612 (GEL),
    2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 15, 2004)........................... 8

*McCarthy v. Dun & Bradstreet Corp.,*
    48 F.3d 184 (2d Cir. 1996).......................................................................... 9

*Mirage Resorts, Inc. v. Trump,* No.
    97 Civ. 6693 (DAB), 1998 U.S. Dist. LEXIS 19896 (S.D.N.Y. Dec. 18, 1998)....................... 8

*N.Y.C. Triathlon, L.L.C. v. N. Y. C. Triathlon Club, Inc.,*
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)....................................................... 23

*Nachman v. Chatham-Phenix Nat'l Bank & Trust,*
    171 S.E. 676 (Va. 1933).............................................................................. 17

*Pocono Int'l Raceway, Inc. v. Pocono Mountain Speedway, Inc.,*
    171 F. Supp. 2d 427 (M.D. Pa. 2001) ...................................................... 11

*Prof'l Sound Services, Inc. v. Guzzi,*
    2003 U.S. Dist. LEXIS 15820 (S.D.N.Y. 2003)........................................ 21

*Radio Today, Inc. v. Westwood One, Inc.,*
    684 F. Supp. 68 (S.D.N.Y. 1988) .............................................................. 22

*Reno Air Racing, Inc. v. McCord,* No.
    CV-N-02-0474, 2004 U.S. Dist. LEXIS 28977 (D. Nev. Mar. 9, 2004) .............. 11

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974)......................................................................................... 7

*Simon & Schuster v. Dove Audio, Inc.,*
    970 F. Supp. 279 (S.D.N.Y. 1997) .................................................................. 11

*Strobl v. N.Y. Mercantile Exch.,*
    561 F. Supp. 379 (S.D.N.Y. 1983) .................................................................. 8

*Thompson Med. Co. v. Pfizer, Inc.,*
    753 F.2d 208 (2d Cir. 1985) ........................................................................... 11

*Tri-Star Pictures, Inc. v. Unger,*
    14 F. Supp. 2d 339 (S.D.N.Y. 1998)........................................................... 11, 12

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992)....................................................................................... 13

*Virgin Enters. v. Nawab,*
    335 F.3d 141 (2d Cir. 2003)........................................................................... 13

*Vogster Entm't L.L.C. v. Mostovoy,*
    No. 09-CV-1036 (RRM), 2009 WL 691215 (E.D.N.Y. Mar. 16, 2009) ................. 22

*Wheeler v. Wardell,*
    173 Va. 168 (Va. 1939).................................................................................. 16

*Zip Int'l Grp., LLC v. Trilini Imports, Inc.,*
    09-CV-2437 JG VVP, 2010 WL 648696 (E.D.N.Y. Feb. 22, 2010)...................... 18

Plaintiffs Kaplan, Inc. and MG Prep, Inc. d/b/a Manhattan Prep and Manhattan GMAT (collectively, "Manhattan Prep" or "Plaintiffs"), by their attorneys, respectfully submit this Memorandum of Law in Opposition to Defendants Tracy Yun and Manhattan Enterprise Group d/b/a Manhattan Elite Prep's (collectively, "Defendants" or "MEP") motion to dismiss (the "Motion") Plaintiffs' claims (the "Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As explained in more detail below, Plaintiffs have sufficiently pled all claims (Counts I-VIII) and have standing to assert their rights in and to their MANHATTAN GMAT mark.

## PRELIMINARY STATEMENT

This motion to dismiss is not based on an assertion that Plaintiffs can prove no set of facts in support of their claims. To the contrary, MEP's motion is merely an invitation to test the merits of this action before Plaintiffs have had an opportunity to take discovery.

First, MEP argues that Plaintiffs have no rights in and to the MANHATTAN PREP mark because it is allegedly descriptive and, therefore, Plaintiffs must show evidence that the MANHATTAN PREP mark has acquired distinctiveness, which is a question of fact, to survive a motion to dismiss. Second, MEP claims that Plaintiffs have no standing to allege any rights in and to their MANHATTAN GMAT mark. Both issues are questions of fact which may not be adjudicated at this nascent stage in the litigation. In short, MEP argues that because Plaintiffs have not provided sufficient evidence to support their allegations, they should be summarily denied the opportunity to provide such evidence. Such circular reasoning turns Rule 12(b)(6) jurisprudence on its head.

Second, MEP's motion to dismiss requests that the Court improperly test the veracity of Plaintiffs' allegations by considering documents outside of the pleadings. Even if the Court

wishes to reach the merits of the claims at this early stage, the documents to which MEP cites actually support Plaintiffs' claims that (1) the MANHATTAN PREP mark has acquired distinctiveness and (2) they have rights in and to the MANHATTAN GMAT mark.

MEP points to the now expressly overruled office actions from the United States Patent and Trademark Office (the "PTO") that initially refused registration of the MANHATTAN PREP mark as evidence that the mark is merely descriptive. These office actions are now moot because on October 9, 2013, the PTO ruled that Plaintiffs had sufficiently demonstrated that their MANHATTAN PREP mark had acquired distinctiveness and, thus, deserves protection under federal law.[1] The PTO reversed its initial position as set forth in its prior office actions and subsequently agreed with Plaintiffs, ruling that consumers recognize the MANHATTAN PREP mark as a source-identifying mark. Thus, Defendants' improper request to test whether Plaintiffs can provide sufficient evidence to counter the PTO's initial refusal to register the mark is not only inappropriate at this stage, it is also mooted by the PTO's recent determination.

Setting aside the PTO's recent determination that the MANHATTAN PREP mark has acquired distinctiveness, whether a mark has consumer recognition is a question of fact, not law. Determining whether a mark has acquired distinctiveness is a fact-intensive inquiry that turns on numerous non-exclusive factors. Indeed, all the cases that MEP relies on to support the proposition that Plaintiffs cannot prove secondary meaning as a matter of law are fully adjudicated motions for summary judgment or judgment notwithstanding the verdict.

Lastly, MEP references a 2004 letter agreement from the Graduate Management Admission Council ("GMAC") to Manhattan GMAT Prep as evidence that Plaintiffs have no

---

[1]     In light of the PTO's October 9, 2013 ruling, Defendants' reliance on now expressly overruled office actions from the PTO to justify the extraordinarily harsh result of dismissing Plaintiffs' well-pled claims is particularly unavailing. MEP's Memorandum of Law in Support of Motion to Dismiss ("Memo", p. 6).

rights in and to the MANHATTAN GMAT mark. Based on the terms of this letter agreement, GMAC expressly licenses the MANHATTAN GMAT mark to Plaintiffs: "GMAC acknowledges that Manhattan GMAT Prep may continue to do business under the name "Manhattan GMAT Prep" and allows the "continued use of the phrase 'Manhattan GMAT' in its publications, CDs, catalogs, brochures, testing material, website pages, emails to prospective clients and students, and other printed or promotional materials . . . ."[2] As a result, even if the Court considered the 2004 letter agreement, as a licensee, Plaintiffs still have standing to assert their rights in and to the MANHATTAN GMAT mark.

MEP's Motion does nothing more than raise contested fact issues that require discovery before this Court may properly consider them. As will be demonstrated below, MEP's arguments are without merit, and presently solely for the purpose of avoiding discovery of their unlawful acts and deceptive practices.

## RELEVANT FACTS

Plaintiffs are the owners of the MANHATTAN PREP and MANHATTAN GMAT marks (the "MANHATTAN Marks") for use in connection with test preparation courses and materials for the GMAT, the GRE, and the LSAT. (Complaint, ¶ 1). Through significant consumer recognition, unrivaled sales success, considerable advertising expenditures, and due to Plaintiffs' emphasis on providing courses and materials of an unmatched quality, Manhattan Prep has become one of the most popular and well-respected providers of test preparation courses and materials. (*Id.*, ¶¶ 1-4). For over thirteen years, prospective applicants to highly competitive graduate programs and professional schools have trusted that Plaintiffs' courses and materials are of an exceptional quality. (*Id.*). In July 2011, Manhattan Prep changed its umbrella brand from

---

[2]    (Butera Decl., Exh. H)

Manhattan GMAT to Manhattan Prep to better reflect that it offered more than GMAT courses and materials. (*Id.*, ¶ 4).

Since rebranding in July 2011, Plaintiffs have invested substantial time, effort and resources in connection with the creation, marketing and promotion of the goods and services under the MANHATTAN Marks. (*Id.*). Through their widespread and exclusive use of the MANHATTAN Marks, and hard work to ensure the unrivalled quality of their test preparation materials and services, Plaintiffs have established substantial goodwill nationally in their MANHATTAN Marks. (*Id.*). Currently, Plaintiffs are the leading provider of GMAT courses in the U.S. based on revenue. (*Id.*, ¶ 1).

On or about December 2011, a mere six months after Plaintiffs' rebranding as Manhattan Prep, Defendant Yun abandoned her former company to launch a new company offering test preparation courses and associated services for standardized tests including the GRE, the GMAT and the LSAT. (*Id.*, ¶ 5). Recognizing the incalculable brand equity in Plaintiffs' MANHATTAN PREP Mark, Ms. Yun cannily selected the nearly identical MANHATTAN ELITE PREP name (the "Infringing Name") for her new venture, attempting to leverage the benefits of Plaintiffs' advertising dollars, hard-earned reputation and goodwill. (*Id.*).

The consequence of Defendants' use of the MANHATTAN ELITE PREP name for test preparation courses and materials has been rampant documented student confusion. (*Id.*, ¶¶ 41-58). Making matters worse, Defendants have promoted and fostered this confusion by, among other things, adopting copycat marketing campaigns and answering phone inquiries in a manner designed to mislead students about the relationship between the parties. (*Id.*, ¶¶ 6-7).

5

On August 1, 2012, Manhattan Prep warned Defendants that their use of the Infringing Name had already caused documented instances of actual confusion. (*Id.*, Ex. J). On August 8, 2012, Defendants informed Manhattan Prep that they had superior rights to the mark because they had been using the name Manhattan Elite Prep since February 2012 and "we know for certain that [Manhattan Prep's first use date] was no earlier than May 4, 2012." (*Id.*, Ex. K). In fact, Plaintiffs' first use of the MANHATTAN PREP mark was in July, 2011. (*Id.*, ¶ 4).

This is not the first time that Ms. Yun has wrongfully used Plaintiffs' valuable brands. In 2005, five years after Plaintiffs had established Manhattan GMAT as a leading provider of GMAT test prep courses and materials, Ms. Yun and her then business partner, Joern Meissner, started a company called Manhattan Review ("MR"), which is now defunct, to compete with Manhattan GMAT, the predecessor name to Manhattan Prep and the continuing name of Manhattan Prep's GMAT prep courses. (*Id.*, ¶ 14). To attract prospective students to their then newly-formed enterprise, in or about 2005, Ms. Yun, as the Chief Executive Officer of MR, registered and used domain names that blatantly incorporated the MANHATTAN GMAT trademark and trade name: <www.manhattengmat.com> and <www.manhattan-gmat.com>. (*Id.*, ¶ 15). Despite the egregiousness of her conduct, Ms. Yun refused to stop using the blatantly infringing domain names until Manhattan GMAT filed a federal action against her company in 2006. *MG Prep, Inc. v. Manhattan Review LLC*, No. 06 CV 0462 (SAS) (S.D.N.Y. June 21, 2006). (*Id.*).

In light of the continuing injury to students and young professionals caused by Defendants' unchecked deceptive practices,[3] once again, Plaintiffs are compelled to continue the

---

[3] As a prospective student, who mistakenly purchased a Gilt City course from Defendants, wrote:

> I was definitely planning to take the course with you guys, so when I saw
> this promotion I didn't even hesitate to purchase it since I associate it

timely prosecution of this action to stop Defendants from wrongfully capitalizing on Plaintiffs' marketing efforts, invaluable goodwill and hard-earned reputation. Defendants' unlawful activities are precisely the types of actions against which the trademark, unfair competition, and most importantly, consumer protection laws were designed to protect.

## ARGUMENT

It is well-settled that the party moving for dismissal under Rule 12(b)(6) has the burden of proving that no claim has been stated. 2 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12:34 (3d ed. 2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but instead asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* On a Rule 12(b)(6) dismissal motion, the issue is not whether a plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and this standard "contains a powerful presumption against rejecting pleading for failure to state a claim." *Hartzog v. Reebok Int'l Ltd.*, 77 F. Supp. 2d 478,

---

with you right away and the pricing is the same. Unfortunately I'm not sure if Gilt will give a refund. If not then I think I won't be able to afford the summer course with Manhattan Prep. Below you can find all the information that I could find from my end. If there's anything I can help with please let me know.

(*Id.*, ¶ 13).

479 (S.D.N.Y. 1999); *see also Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262, 278 (D. Conn. 2003) (stating that "a motion to dismiss for insufficiency should rarely be granted, especially where the proof . . . lies in the hands of the [defendant]" and that a plaintiff "should be allowed a reasonable opportunity to develop the facts through discovery"); *Mirage Resorts, Inc. v. Trump*, No. 97 Civ. 6693 (DAB), 1998 U.S. Dist. LEXIS 19896 (S.D.N.Y. Dec. 18, 1998); *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 15, 2004); *Strobl v. N.Y. Mercantile Exch.*, 561 F. Supp. 379, 383 (S.D.N.Y. 1983).[4] Furthermore, when deciding a motion for failure to state a claim under FED. R. CIV. P. 12(b)(6), all allegations of material fact are acceptable as true and should be construed in the light most favorable to the plaintiff. *See, e.g., Kirch v. Liberty Media Corp.*, 449 F. 3d 388, 392 (2d Cir. 2006); *McCarthy v. Dun & Bradstreet Corp.*, 48 F.3d 184, 191 (2d Cir. 1996).

Contrary to MEP's assertions, Plaintiffs' claims are not required on a dismissal motion to withstand the scrutiny of what is essentially a summary judgment motion. As MEP well knows, a complaint is merely required to provide notice to the adverse party of the nature of the claims against it. MEP's Motion ignores the minimal requirement of notice pleading and instead asks this Court to decide the merits of Plaintiffs' claims on the pleadings, rather than to determine whether Plaintiffs have adequately pled their claims for relief under Rule 12(b)(6). The Court should reject MEP's invitation to ignore the Federal Rules.

---

[4]     Four of Plaintiffs' claims are governed by New York substantive law. The Court must, however, apply federal procedure and "may not impose a heightened pleading standard – under any circumstances – unless that heightened standard is embodied in the Rules or enacted by Congress." *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).

**I.**    **Plaintiffs' Claim for Trademark Infringement, Unfair
Competition, False Representation, and False
Designation of Origin is Properly Pled (Counts I-II)**

**A.    Acquired Distinctiveness is a Matter of Fact**

Setting aside the inconvenient fact that the PTO recently ruled that the MANHATTAN

PREP mark has acquired distinctiveness (*i.e.*, consumers recognize the mark as a source

indicator),[5] whether a mark has acquired distinctiveness is a question of fact, not law. *Bristol-*

*Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992);

*Fragrancenet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333-34 (E.D.N.Y. 2009)

(denying motion to dismiss because whether a mark is distinctive is a question of fact).

Because determining whether a mark has acquired secondary meaning is a fact-intensive

inquiry depending on numerous factors, there is no support for the proposition that Plaintiffs

have not adequately pled that the relevant consumers recognize the MANHATTAN Marks as

trademarks.  Indeed, all the cases that Defendants cite for the proposition that Plaintiffs could not

have established secondary meaning in its MANHATTAN PREP mark as a matter of law are

fully adjudicated motions for summary judgment or judgment notwithstanding the verdict.[6]

To determine whether a mark has acquired distinctiveness, a fact finder must evaluate the

following non-exclusive factors:  (1) ad expenditures; (2) consumers studies linking the mark to

a source; (3) unsolicited media coverage; (4) sales success; (5) attempts to plagiarize the mark;

and (6) length and exclusivity of use. *Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 217

---

[5]    In the event that the Court considers Defendants' Exhibits A-G (documents from the PTO website) in
deciding this Motion, Plaintiffs respectfully request that the Court also consider additional official documents from
the PTO website, attached hereto as Exhibits A-D and authenticated by the Rupp Declaration.  ("Rupp Decl.").

[6]    *Saratoga Vichy Spring Co. v. Lehman*, 625 F. 2d 1037 (2d Cir. 1980) (motion for summary judgment);
*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N. J.*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012) (motion
for summary judgment); *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220 (S.D.N.Y. 1996) (motion for
summary judgment); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992) (motion for judgment
notwithstanding the verdict); *Sports Traveler v. Advance Magazine Publishers Inc.*, 25 F. Supp. 2d 154 (S.D.N.Y.
1998) (motion for summary judgment); *Fraga v. Smithhaven MRI*, 1996 U.S. Dist. LEXIS 22016 at *4 (E.D.N.Y.
1996) (motion for summary judgment).

(2d Cir. 1985); *Simon & Schuster v. Dove Audio, Inc.,* 970 F. Supp. 279, 295 (S.D.N.Y. 1997) ("[N]o single factor among the six is determinative, and every element need not be proven." (citations omitted)); *see also GTFM, Inc. v. Solid Clothing Inc.,* 215 F. Supp. 2d 273, 294 (S.D.N.Y. 2002) ("[s]econdary meaning exists where the public is moved to any degree to buy an article because of its source." (citations omitted)); *Reno Air Racing, Inc. v. McCord,* No. CV-N-02-0474, 2004 U.S. Dist. LEXIS 28977, at *11-14 (D. Nev. Mar. 9, 2004) (holding that "Reno Air Races," used in connection with an air racing event, had acquired secondary meaning); *Pocono Int'l Raceway, Inc. v. Pocono Mountain Speedway, Inc.,* 171 F. Supp. 2d 427, 439-40 (M.D. Pa. 2001) (finding secondary meaning for "Pocono Raceway" and "Pocono" was used in connection with an auto racing event and raceway). Moreover, Defendants' willful appropriation of the MANHATTAN Marks provides further evidence of its secondary meaning. *See Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 351 (S.D.N.Y. 1998) ("[A]ttempts to plagiarize a mark is the most persuasive, if not conclusive, factor in favor of finding secondary meaning.").

Setting aside Defendants' theft of the MANHATTAN Marks and other ample evidence of secondary meaning, which are all questions of fact, it is improper to answer such a material fact-intensive query on a motion to dismiss. At this point, it is sufficient that Plaintiffs have adequately pled that the MANHATTAN Marks are inherently distinctive, and through their continuous and extensive use, have acquired secondary meaning (Complaint, ¶¶ 33, 35-37, 39).

### B. Defendants Overlook Their Own Allegations that the MEP Mark is Distinctive

Not only do Defendants overlook Plaintiffs' allegations that the MANHATTAN Marks are inherently distinctive, they have selectively failed to address their own allegations about their

conspicuously similar MANHATTAN ELITE PREP mark. Defendants claim, their MANHATTAN ELITE PREP mark "is distinctive and entitled to protection." (*Id.*, ¶ 89, Exh. M). Defendants now take a contrary position. As of October 4, 2013, Defendants now claim that the MANHATTAN PREP mark is not distinctive and, thus, not entitled to protection. Based on this inconsistent position, Defendants cannot agree even amongst themselves whether the marks at issue are descriptive or distinctive.

Accordingly, whether the MANHATTAN Marks are inherently distinctive or have obtained acquired distinctiveness is not an issue that should be resolved on a motion to dismiss. Plaintiffs have properly pled their Section 43(a) claims because they have alleged that the MANHATTAN Marks are entitled to protection.[7]

Section 43(a) of the Lanham Act expressly prohibits the use in commerce of any word, term, name, symbol, or device (or any false designation of origin) that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person . . . " 15 U.S.C. §§ 1125 *et seq*. To state a claim under Section 43(a), a plaintiff must merely allege that it has a valid trademark entitled to protection and that defendant's mark is likely to cause confusion in the marketplace. *See Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Defendants' motion to dismiss the Section

---

[7]    Section 43(a) protects both registered and unregistered marks. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks.")

43(a) claims must therefore be denied because Plaintiffs have adequately pled both factors, and Defendants cannot claim otherwise. (Complaint, ¶¶ 1, 4, 17, 32, 33-39, 41-58, 72, 81).[8]

## C.     Plaintiffs Have Properly Pled Standing to Assert Their Manhattan GMAT Claims

MEP cites to a document that purports to be a copy of a letter dated October 22, 2004 from the Graduate Management Admission Council's ("GMAC") legal counsel to Plaintiffs (the "2004 Letter") (Butera Decl., Exh. H).  The 2004 Letter serves as the solitary basis to warrant the harsh result of summarily dismissing Plaintiffs' rights in and to its MANHATTAN GMAT mark.  To justify MEP's improper introduction of the 2004 Letter, which is not a matter of public record, MEP states that "on a 12(b)(6) motion, a court may consider the complaint as well as any exhibits attached to the complaint and any statement or documents incorporated by reference." (Memo, p. 5).  As an initial matter, MEP fails to even allege that the 2004 Letter is attached to the Complaint or incorporated by reference.

There is no legal support that a plaintiff's mere possession and knowledge of documents militates that such documents may be considered by a court.  *See, e.g., Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 70 (S.D.N.Y. 2001); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  Indeed, *Cowan, Chambers,* and *Brass* explicitly state that the touchstone is whether a plaintiff relies upon the document at issue in order to state upon relief which can be granted.  The Second Circuit stated that "[b]ecause this standard has been misinterpreted upon occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a

---

[8]     Since the elements of Plaintiffs' New York common law trademark infringement and unfair competition claim (Count VI) mirror those of the Lanham Act, Plaintiffs have also sufficiently pled these claims. *GTFM, Inc.*, 215 F. Supp. 2d at 300.

necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice is not enough." *Chambers*, 282 F.3d at 153. Even if MEP had alleged that Plaintiffs knew of and were in possession of the 2004 Letter, which it did not, such an allegation would not permit the Court to consider the agreement on a dismissal motion. *Id.*

As noted above, MEP does not and cannot allege that Plaintiffs either referenced or attached the 2004 Letter in the Complaint. In *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985), the Second Circuit held that it was improper for the trial court to consider documents that neither had not been attached to the Complaint as exhibits, nor incorporated by reference into the complaint. ("The documents here were to some extent quoted, but limited quotation does not constitute incorporation by reference. It was, therefore, improper for the court to consider these documents unless it converted the motion into one pursuant to Rule 56 and gave plaintiff the opportunity to submit affidavits or other materials permitted by that Rule." *Id.* at 1066.)

Therefore, at minimum, MEP must show that Plaintiffs rely heavily upon the terms and effect of the 2004 Letter in order to state the claims relating to the MANHATTAN GMAT mark set forth in the Complaint. In *Chambers*, the Second Circuit ruled that when a document is not incorporated in the complaint by reference, the court may only consider the document "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." 282 F.3d at 153; *but see Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ("On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference"; holding that it was error for lower court to consider documents which were only briefly excerpted in the complaint).

Irrespective of MEP's failure to even allege that Plaintiffs relied heavily on the 2004 Letter, Plaintiffs' claims relating to their MANHATTAN GMAT mark as set forth in the Complaint do not rely, let alone rely heavily, on the 2004 Letter. For the purpose of the Motion, the Court must take all facts alleged in the Complaint as true. It follows that it is highly improper at this juncture to test the veracity of Plaintiffs' allegations, namely, that they do not have an ownership interest in the MANHATTAN GMAT mark. If this Court were to consider the 2004 Letter, it would not be accepting Plaintiffs' allegations as true. Any consideration of the 2004 Letter constitutes testing the merits of Plaintiffs' allegations, which is improper in determining a dismissal motion. The Court should therefore deny MEP's request to summarily dismiss Plaintiffs' MANHATTAN GMAT claims because it may not consider the 2004 Letter in determining whether the Complaint states facts upon which relief may be granted.

### 1.     Even If the 2004 Letter Were Considered, It Has Been Novated By Subsequent Conduct

Assuming, *arguendo*, that the 2004 Letter, a trademark license from GMAC to Plaintiffs, were considered by the Court, it has been novated by the subsequent conduct of the parties. Under Virginia law which governs the 2004 Letter, even written agreements which only allow for written modification of their provision may still be novated by oral agreements or conduct, that is, the substitute of a new obligation for an existing one. *Wheeler v. Wardell*, 173 Va. 168, 176 (Va. 1939) ("Novation is a contract, consisting of two stipulations, -- one to extinguish an existing obligation; the other to substitute a new one in its place."). Courts may also take into consideration the conduct of the parties in determining whether an agreement was novated. *Dillenberg v. Thott*, 229 S.E.2d 866, 868 (Va. 1976) ("While it is true there is no direct testimony that there was a definite agreement to effect a novation, the acts and conduct of the

parties show that was their intent."); *Nachman v. Chatham-Phenix Nat'l Bank & Trust*, 171 S.E. 676, 677 (Va. 1933) ("[W]hether the transaction amounts to a novation is a question of intention, to be derived from all the circumstances of the case, although nothing positive be expressed.")

First, for well over a decade, Plaintiffs have exercised control with respect to the nature and quality of goods and services sold under and in connection with the MANHATTAN GMAT mark, from textbooks to courses. (Complaint, ¶ 2, 17, 31). In contrast, GMAC has played no role in the exercise of control over the quality of the MANHATTAN GMAT goods or services. Plaintiffs' long-standing and continuous exercise of quality control over the MANHATTAN GMAT mark is inconsistent with the 2004 Letter and evidences a new agreement between the parties. This court has ruled explicitly that whoever controls the quality of goods or services marketed under a trademark owns that trademark. *Liebowitz v. Elsevier Science Ltd.*, 927 F. Supp. 688, 696 (S.D.N.Y. 1996). As a result of Plaintiffs' solitary exercise of quality control, at minimum, it has a significant ownership interest in and to the MANHATTAN GMAT mark. *Id.*; (Complaint, ¶ 2, 17, 31).

### 2. Even if the Court Considered the 2004 Letter, As A Licensee, Plaintiffs Have Standing to Assert Their Rights in and to The MANHATTAN GMAT Mark

Based on the terms of the 2004 Letter, GMAC expressly licenses the MANHATTAN GMAT mark to Plaintiffs: "GMAC acknowledges that Manhattan GMAT Prep may continue to do business under the name "Manhattan GMAT Prep" and allows the "continued use of the phrase 'Manhattan GMAT' in its publications, CDs, catalogs, brochures, testing material, website pages, emails to prospective clients and students, and other printed or promotional materials . . . ."[9] As a result, even if the Court considered the 2004 Letter, Plaintiffs still have

---

[9] (Butera Decl., Exh. H)

standing to assert their rights in and to the MANHATTAN GMAT mark because Plaintiffs are licensees of the MANHATTAN GMAT Mark.

Section 43(a) of the Lanham Act gives standing to "any person who believes that he or she is likely to be damaged" (15 U.S.C. § 1125(a)). This Court has held that even a nonexclusive licensee has standing. *Zip Int'l Grp., LLC v. Trilini Imports, Inc.*, 09-CV-2437 JG VVP, 2010 WL 648696, at *3 (E.D.N.Y. Feb. 22, 2010) (ruling that a nonexclusive licensee has standing to bring cause of action for unfair competition and false advertising under Section 43(a) of Lanham Act).

**D.  Determining When the MANHATTAN Marks Were First Used in Commerce is a Question of Fact**

Defendants boldly posit that they are the senior user of the marks at issue because Plaintiffs filed a U.S. trademark application for MANHATTAN PREP on May 4, 2012. That argument, however, runs afoul of a central tenet of the U.S. trademark law. Under the Lanham Act, ownership and priority go to the party who is the first to use the mark in commerce. 2 J. THOMAS MCCARTHY, *McCarthy on Trademarks and Unfair Competition* § 16:1 (4th ed. 2013) ("[I]t is not registration, but only actual use of a designation as a mark that creates rights and priority over others."). In view of Plaintiffs' prior use of the mark, dating back to July 2011, Defendants' allegation that their use was at least three months prior to Plaintiffs' use is plainly incorrect. An owner of an intent-to-use application can introduce evidence of earlier use in a proceeding. *Id.* § 20:28 ("An ITU [intent-to-use] applicant whose priority is challenged by an opposer's evidence of actual use prior to the ITU filing can 'leapfrog' over the opposer's use to prove an earlier use in order to establish priority.")

Defendants' farcical accusation that by signing a declaration in connection with an "intent-to-use" application somehow Plaintiffs falsely represented that they were not using the mark in commerce is wrong. It is accepted PTO practice that a federal trademark application is commonly filed under section 1(b) (an "intent-to use" application) rather than section 1(a) even when the mark is already being used, because filing under section 1(b) gives more flexibility later in the application process. For example, an "intent-to-use" application may be filed for a mark that is actually already in use, *e.g.*, where the date of first use has not been determined. As the PTO's Trademark Manual of Examining Procedure explicitly provides:

> An applicant filing under §1(b) is not required to state dates of use in the original application, but must include dates of use in an allegation of use under §1(c) or §1(d).
>
> **A §1(b) applicant may assert dates of use that are earlier than the filing date of the application** in an amendment to allege use or statement of use.

TMEP § 903. (emphasis supplied); (Rupp Decl., Exh. A).

Accordingly, pursuant to TMEP § 903, on October 11, 2013, Plaintiffs filed an Amendment to Allege Use with the PTO, allegedly that the date of first use of the MANHATTAN PREP mark was at least as early as July, 2011. On October 16, 2012, the PTO accepted Plaintiffs' Amendment to Allege Use. (Rupp Decl., Exh. D). Therefore, Defendants' argument that Plaintiffs have failed to provide any evidence to support their alleged first use date of July, 2011 for their MANHATTAN PREP mark is now moot. Moreover, this argument is still irrelevant for the purposes of this Motion, because it is sufficient that Plaintiffs have alleged in the Complaint that they have used both the MANHATTAN PREP and the MANHATTAN GMAT marks well before Defendants' first alleged use date of February, 2012. (Complaint, ¶¶ 2-5, 31-39).

## II. Plaintiffs' Claim For Deceptive Acts and Practices Is Properly Pled (Count VII)

Defendants seek to dismiss Plaintiffs' Claim for Deceptive Acts and Practices under New York General Business Law § 349 because "Plaintiff[s] do[es] not assert any harm to the public interest." To the contrary, Plaintiffs' Complaint alleges numerous documented instances of specific injury to prospective students. (Complaint, ¶¶ 2, 6-13, 43-58). For example, "Defendants have promoted and exacerbated student confusion by, among other things, adopting copycat marketing campaigns ... and answering phone calls in a manner designed to mislead students . . ." and "[t]he continuing harm to students cannot be easily quantified. In large part, a student's academic and professional future will be determined by his GRE, GMAT or LSAT score . . . . [A] top GRE, GMAT, or LSAT score can mean the difference between a financially remunerative career and lost decades of underemployment." (*Id.*, ¶¶ 7-8, 10). As a prospective student, who mistakenly purchased a Gilt City course from Defendants, wrote:

> I was definitely planning to take the course with you guys, so when I saw this promotion I didn't even hesitate to purchase it since I associate it with you right away and the pricing is the same. Unfortunately I'm not sure if Gilt will give a refund. If not then I think I won't be able to afford the summer course with Manhattan Prep. Below you can find all the information that I could find from my end. If there's anything I can help with please let me know.

(*Id.*, ¶ 13).

Contrary to Defendants' assertions, Plaintiffs have adequately pled that Defendants' deceptive acts have caused and continue to cause certain consumer injury to New York students. *See Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (denying motion to dismiss because "[p]laintiffs have alleged consumer injury claiming that dissatisfied audience members demanded their money back," thus satisfying the pleading standard for the N.Y. GEN. BUS. L. § 349 claim).

Accordingly, Plaintiffs' deceptive acts and practices claim is sufficiently pled, and Defendants' motion to dismiss should be denied.

### III. Plaintiffs' False Advertising Claim is Properly Pled (Count III)

Defendants seek to dismiss Plaintiffs' False Advertising Claim because Plaintiffs purportedly fail to allege that Defendants made any material misrepresentations about the respective parties' goods or services. Once again, Defendants selectively overlook Plaintiffs' allegations that Defendants' employees fielded inquiries in such a deliberately confusing manner to convince unsuspecting students who had mistakenly called Defendants that they had reached the Plaintiffs. (Complaint, ¶ 57). These allegations of deceptive conduct go well beyond mere trademark infringement claims. To constitute commercial advertising and promotion, "a statement must be (1) commercial speech; (2) made by a defendant who is a competitor of the plaintiff; (3) to influence consumer to buy defendant's goods or services and (4) are disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion." *Prof'l Sound Services, Inc. v. Guzzi*, 2003 U.S. Dist. LEXIS 15820, *5 (S.D.N.Y. 2003); *see Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 74 (S.D.N.Y. 1988) ("The Lanham Act does not apply merely to false advertising through traditional media channels, but to a broad range of deceptive statements made in connection with the sale of goods and services.") In view of Plaintiffs' allegations that Defendants, direct competitors of Plaintiffs, made deceptive statements to numerous prospective students for the purpose of influencing these students to purchase Defendants' courses, Plaintiffs have sufficiently pled their false advertising claim.

### IV. Plaintiffs' Federal Cybersquatting Claim is Properly Pled (Count IV)

Defendants' invitation to test the veracity of Plaintiffs' federal cybersquatting claim should likewise be rejected. To assert a claim under the Anticybersquatting Consumer Protection Act (the "ACPA"), a plaintiff must allege that: (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain name is identical to or confusingly similar to plaintiff's mark; and (3) that the defendant has a bad faith intent to profit from that mark. *See* 15 U.S.C. § 1125(d)(1); *see also Vogster Entm't L.L.C. v. Mostovoy*, No. 09-CV-1036 (RRM), 2009 WL 691215, at *4 (E.D.N.Y. Mar. 16, 2009) (defendant held liable for cybersquatting plaintiff's "Vogster" mark by registering domain names "with the mere addition of the words "award," "awards," or "game" (*e.g.*, "vogsterawards.com" etc.)").

The federal cybersquatting claim is sufficiently pled because Plaintiffs have alleged that (1) the MANHATTAN PREP mark is distinctive and had acquired secondary meaning by December, 2011 when Defendants registered the confusingly similar manhattaneliteprep.com domain name (Complaint, ¶ 113) and (2) Defendants have attempted to divert consumers from Plaintiffs' website to Defendants' directly competitive website for profit (*Id.*, ¶¶ 115-16). *See N.Y.C. Triathlon, L.L.C. v. N. Y. C. Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 323-24 (S.D.N.Y. 2010) (holding that plaintiff had shown a likelihood of success on its cybersquatting claim against defendant's registration and use of the nearly identical nyctriclub.com domain name because (i) plaintiff provided sufficient evidence that its NEW YORK CITY TRIATHLON mark had obtained secondary meaning and (ii) defendant's use of the domain name was in bad faith based on its commercial use of plaintiff's mark). Defendants' claim that Plaintiffs have not sufficiently pled Defendants' registration and use of the manhattaneliteprep.com domain name was in bad faith willfully ignores the above allegations.

## V.  Plaintiffs' New York State Law Dilution Claim is Properly Pled (Count V)

As Defendants concede, N.Y. GEN. BUS. L. § 360-1 does not require an allegation that the MANHATTAN Marks are famous. Instead, a plaintiff must only allege that its mark is either inherently distinctive or has acquired distinctiveness. *See Kraft General Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. at 133-34 (S.D.N.Y. 1993). As noted above, Plaintiffs have alleged their MANHATTAN Marks are distinctive and have acquired distinctiveness. Moreover, to allege the likelihood of dilution under New York state law, a plaintiff need only allege that a defendant's use of the mark is likely to either blur or tarnish a plaintiff's mark. *See Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-43 (2d Cir. 1994). Plaintiffs have sufficiently pled that Defendants' use of the Manhattan Elite Prep mark is likely to cause dilution by blurring because they have alleged that Defendants intended to create an association with their MANHATTAN Marks and documented instances of this false association have occurred. (Complaint, ¶¶ 41-58, 126-31). Furthermore, Plaintiffs have adequately pled that Defendants' use of the mark is likely to cause dilution by tarnishment, *i.e.*, an association that harms the reputation of the MANHATTAN Marks. Plaintiffs allege that Defendants' use likely to cause tarnishment because of Defendants' reputation of unlawful business practices and shoddy customer service. (*Id.*, ¶¶ 11, 13, 16, 55, 57, 79). Accordingly, Plaintiffs have sufficiently pled that their MANHATTAN Marks will suffer a negative association through Defendants' use of the Manhattan Elite Prep mark.

## VI.  Plaintiffs Have Properly Pled Their Claims for Unjust Enrichment (Count VIII)

The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another. Unjust enrichment results when a person

retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain. *See, e.g., Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999); *McGrath v. Hilding*, 363 N.E.2d 328, 331 (N.Y. 1977).

As discussed previously, Plaintiffs have alleged that "Defendants' employees have a regular practice of answering telephone inquiries from prospective students in such an intentionally deceptive and confusing manner that callers have the false impression that they have contacted the *bona fide* Manhattan Prep." (Complaint, ¶ 55). It follows that because, as Plaintiffs have alleged, such deceptive acts were successful, these suspect sales of MEP's materials and courses should have gone to Plaintiffs. (*Id.*, ¶ 144) ("Defendants have palmed its products and services as Manhattan Prep's products and services by Defendants' misrepresentations to the public . . . .").

## VII. The Court Should Exclude MEP's Proffered Evidence Rather Than Convert this Motion to Dismiss

As discussed above, in ruling on a Rule 12(b)(6) motion, a district court generally may not consider any material beyond the pleadings.

When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6). In such case, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Global Network Comm'n, Inc. v. New York*, 458 F.3d 150, 154-55 (2d Cir. 2006), *quoting* FED. R. CIV. P. 12(b)(6). In turn, Rule 56(f) requires a court to refuse summary judgment where the nonmoving party has not had the opportunity to discover information which is essential to its opposition. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 257 (1986).

When matters outside the pleading are presented to a court on a Rule 12(b)(6) motion, a court must either exclude the evidence or convert the motion to one for summary judgment. *See Global*, 458 F.3d at 154, *quoting* FED. R. CIV. P. 12(b)(6). In that case, a court must allow an "opportunity to conduct appropriate discovery" so that all parties may present all material made pertinent by Rule 56. *Chambers*, 282 F.3d at 154. Given the facts and procedural posture of this case, exclusion is the far more appropriate recourse.

Since discovery has not yet begun, converting this dismissal motion into one for summary judgment would deprive Plaintiffs of the "reasonable opportunity to complete discovery and to present necessary factual support for [its] complaint allegations." *Id.* Thus, Plaintiffs respectfully submit that conversion to a summary judgment motion is premature, and that the better alternative is to simply exclude the materials outside the pleadings. In the alternative, should the Court so convert the instant motion, Plaintiffs respectfully requests notice and an opportunity to take discovery for purposes of responding with evidence (an opportunity not afforded by the present motion). *See id.*; FED. R. CIV. 56(f).

## CONCLUSION

MEP's attempts to cloud its own dismissal motion with extraneous evidence and misstatements of law and fact must yield to the only issue properly before the Court: whether Plaintiffs have stated a claim upon which relief can be granted. For the foregoing reasons, Plaintiffs respectfully request the Court to find that Plaintiffs have so stated their claims, and thus DENY MEP's motion to dismiss

KENYON & KENYON LLP

Dated: October 18, 2013

_[signature]_

Michelle Mancino Marsh (MM 1494)
One Broadway
New York, New York 10004
Telephone:     (212) 425-7200
Facsimile:      (212) 425-5288

Mimi K. Rupp (MR 0007)
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304
Telephone:     (650) 384-4700
Facsimile:      (650) 384-4701

*Attorneys for Plaintiffs*
*Kaplan, Inc. and MG Prep, Inc.*
*d/b/a Manhattan Prep*
*and Manhattan GMAT*