**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

Kaplan, Inc. ET AL.,
                    **Plaintiffs,**

                                        **13 Civ. 1147 (JGK)**

            - v.-
                                        <u>OPINION AND ORDER</u>

Tracy Yun, ET AL.,
                    **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Kaplan, Inc. and MG Prep, Inc., bring this action against defendants Tracy Yun and Manhattan Enterprise Group, LLC ("MEP"), alleging that the defendants infringed and misappropriated the plaintiffs' trademarks, "Manhattan Prep" and "Manhattan GMAT" (collectively, the "Manhattan marks") by running a competing business under the name "Manhattan Elite Prep." The plaintiffs allege various causes of action under the Lanham Act and the Anticybersquatting Consumer Protection Act (ACPA), as well as several causes of actions under New York State law.

    This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 1338(b) over the federal law claims and supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims. The defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(6), or, in the alternative, to convert the motion to a summary judgment motion pursuant to Rules 12(d) and 56 of the Federal Rules of Civil

Procedure.  However, because the parties have not engaged in discovery and the plaintiffs have not had the opportunity to gather and present evidence and argument in opposition to a summary judgment motion, the Court declines to convert the motion into one for summary judgment.  See Fargas v. Cincinnati Mach., LLC, --- F. Supp. 2d ---, No. 13 Civ. 4443, 2013 WL 6508863, at *1 (S.D.N.Y. Dec. 12, 2013).

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Grp. LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  <u>Id.</u>

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).  In particular, the Court may take judicial notice of official records of the United States Patent and Trademark Office (PTO).  <u>Telebrands Corp. v. Del Labs., Inc.</u>, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010).


**II.**

The Court accepts the allegations in the Amended Complaint as true for purposes of this motion.  The plaintiffs and the defendants run competing preparation courses for various standardized tests including the Graduate Management Admission Test ("GMAT"), Graduate Record Examinations ("GRE"), and the Law School Admission Test ("LSAT").  (<u>See</u> Am. Compl. ¶¶ 1, 5.)  The

3

plaintiffs have previously offered courses under the brand "Manhattan GMAT." (Am. Compl. ¶ 3.) Allegedly in July 2011, the plaintiffs adopted a new umbrella brand, "Manhattan Prep," because they offered preparation courses for exams other than GMAT; the plaintiffs continued to offer GMAT courses under the brand "Manhattan GMAT." (Am. Compl. ¶¶ 3-4.)

Around December 2011, defendant Yun launched a business offering GMAT, GRE, and LSAT preparation courses and registered the domain name "manhattaneliteprep.com"; the defendants first used the mark "Manhattan Elite Prep" in commerce in February 2012. (Am. Compl. ¶¶ 5, 88, 111.) Consumers were allegedly confused between the two brands. (See generally Am. Compl. ¶¶ 41-58.) The plaintiffs specifically allege circumstances in which potential students mistook "Manhattan Elite Prep" courses for "Manhattan Prep" courses while purchasing the courses on internet shopping websites such as Groupon or Gilt City. (E.g. Am. Compl. ¶¶ 44, 48, 52.)

The plaintiffs applied for registration of the trademark "Manhattan Prep" with the PTO on May 4, 2012 in an "intent-to-use" application under § 1(b) of the Lanham Act, 15 U.S.C. § 1051(b). (Butera Decl. Ex. A ("Application") at 5.) The PTO initially denied registration of the "Manhattan Prep" mark in September 2012 because the mark was "primarily geographically descriptive of the origin of [the plaintiffs'] services."

4

(Butera Decl. Ex. B at 2.)  On March 14, 2013, the PTO further found that the mark had not acquired secondary meaning.  (Butera Decl. Ex. C at 2.)  However, the PTO subsequently reversed its decision and approved the mark for publication on October 9, 2013.

On August 1, 2012, about three months after filing the application with the PTO, the plaintiffs sent the defendants a letter demanding that the defendants cease and desist from infringing upon the Manhattan marks and that the defendants hand over the infringing internet domain name. (Am. Compl. ¶ 86; Am. Compl. Ex. J. at 4-5.)  The defendants responded on August 8, 2012, claiming trademark rights superior to the plaintiffs' marks, as well as invalidity of the "Manhattan Prep" mark.  (Am. Compl. ¶ 87, Ex. K.)  The plaintiffs replied on August 29, 2012, claiming superior rights based on the plaintiffs' alleged use of the "Manhattan Prep" mark starting from July 2011.  (Am. Compl. ¶ 88, Ex. L.)  Following unsuccessful settlement discussions between the parties, the present action was commenced on February 20, 2013.  (Am. Compl. ¶ 90.)

In addition to the alleged infringement of the Manhattan marks by Manhattan Elite Prep, the plaintiffs further allege that defendant Yun previously infringed the "Manhattan GMAT" mark in conducting a similar preparation-course business named "Manhattan Review," (Am. Compl. ¶¶ 59-63), and that Yun

subsequently had a trademark dispute with her former business partner at Manhattan Review, (Am. Compl. ¶¶ 74-79).

### III.

To state a claim for trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must show that it has a valid mark entitled to protection and that "the defendant's use of its mark is likely to cause an appreciable number of ordinarily prudent purchasers confusion as to the origin, sponsorship, or approval of the defendant's product." Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc., 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (citations and internal quotation marks omitted).  In their opening papers, the defendants have not argued that the Amended Complaint failed to plead consumer confusion sufficiently, but have instead focused their arguments on the validity of the plaintiffs' trademarks and the plaintiffs' standing to sue.

A mark must be "distinctive" and not "generic" in order to qualify as a protectable trademark.  Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 216 (2d Cir. 2012) (citation omitted).  For trademark purposes, terms or phrases are usually classified as (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful.  Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976).

"Generic terms are never entitled to protection.  Suggestive, arbitrary and fanciful terms, on the other hand, are inherently distinctive and generally entitled to protection.  Descriptive terms are not inherently distinctive, but are nonetheless entitled to protection if they acquire secondary meaning in the marketplace."  Paco Sport, Ltd. v. Paco Rabanne Parfums, 86 F. Supp. 2d 305, 310 (S.D.N.Y. 2000); see also Abercrombie & Fitch, 537 F.2d at 9-11.  Thus, "[t]o qualify for trademark protection, an owner of a descriptive mark must demonstrate that the mark had acquired secondary meaning before its competitor commenced use of the mark."  PaperCutter, Inc. v. Fay's Drug Co., Inc., 900 F.2d 558, 564 (2d Cir. 1990).

On this motion, there is no dispute that the term "Manhattan Prep" is not inherently distinctive, because the plaintiffs do not contend that the term "Manhattan Prep" is suggestive, fanciful, or arbitrary.  Accordingly, the plaintiffs' term "Manhattan Prep" is protectable as a trademark only if it had acquired secondary meaning before the defendants commenced their use of the allegedly infringing mark in February 2012.

The defendants first rely on the PTO's initial determination in March 2013 that the "Manhattan Prep" mark had not acquired secondary meaning.  (Butera Decl. Ex. C at 2.) However, as the plaintiffs correctly point out, that

7

determination was reversed and is entitled to no deference.  See
Lebewohl v. Heart Attack Grill LLC, 890 F. Supp. 2d 278, 292
(S.D.N.Y. 2012).  Thus, the PTO's initial determination carries
no weight on this motion to dismiss.

The defendants next argue that the allegations regarding
the plaintiffs' commercial use prior to February 2012 are
insufficient.  The plaintiffs allege that they adopted the
"Manhattan Prep" brand in July 2011 and have "extensively
advertised, promoted[,] and marketed" their courses and
materials under the brand since that time.  (Am. Compl. ¶¶ 4,
34, 68, 88.)  The defendants argue that these allegations are
insufficient to establish commercial use before the defendants'
commercial use of their mark, because such allegations do not
specify which portion of the sales or advertisement expenditure
occurred prior to February 2012.  However, the defendants
essentially raise a dispute of fact.  The Court cannot resolve
such a factual dispute on a motion to dismiss but must take the
plaintiffs' allegations as true.  With all inferences drawn in
favor of the plaintiffs, these allegations are sufficient to
plead extensive commercial use by the plaintiffs since July 2011
and prior to February 2012.

The defendants also rely on the plaintiffs' trademark
application and assert that the application conclusively
establishes the lack of commercial use of the "Manhattan Prep"

mark by the plaintiffs as of May 2012, when the application was
filed.  However, nowhere in the application did the plaintiffs
state affirmatively that they had not yet started to use the
"Manhattan Prep" mark, and the only reference to the use of the
mark was in the status page of the PTO website and was in regard
to the basis of the application as a § 1(b) "intent-to-use"
application.  (Butera Decl. Ex. A at 3.)  It is well-established
that a party is not prohibited from filing an intent-to-use
application for a mark that the party has actually used in the
past, Stoller v. Sutech U.S.A., Inc., 199 F. App'x 954, 957
(Fed. Cir. 2006) (per curiam) (collecting cases); nor is an
intent-to-use applicant precluded from relying upon actual use
prior to the intent-to-use application in establishing priority.
Corporate Document Servs. Inc. v. I.C.E.D. Mgmt. Inc., 48
U.S.P.Q.2d 1477, 1998 WL 766713, at *3 (TTAB 1998).  Thus, the
fact that the plaintiffs filed an intent-to-use application in
May 2012 does not show that the plaintiffs were not actually
using the mark in commerce until after May 2012.

Even if the plaintiffs had taken a different position
before the PTO, to the extent that the defendants argue that the
plaintiffs are prevented from taking an inconsistent position in
this case, no estoppel applies here.  Although statements made
to administrative bodies including the PTO may create judicial
estoppel, see BeautyBank, Inc. v. Harvey Prince LLP, 811 F.

Supp. 2d 949, 958 (S.D.N.Y. 2011), "in general, courts do not bind parties to their statements made or positions taken in ex parte [trademark] application proceedings in front of the PTO." Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 534-35 (S.D.N.Y. 2012).  Moreover, judicial estoppel is applicable only if the prior inconsistent position is "adopted" by the tribunal in some way.  DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010).  No records from the PTO show that the PTO adopted the proposition that the plaintiffs did not use the "Manhattan Prep" mark prior to May 2012.  Accordingly, the plaintiffs are not estoped from making the assertion that they started using the "Manhattan Prep" mark before the defendants' allegedly infringing activity.

Finally, the defendants argue that, even assuming that the plaintiffs started using the "Manhattan Prep" mark in July 2011, the plaintiffs cannot establish secondary meaning as a matter of law because the mark would be in use for only seven months by the time the defendants began using the "Manhattan Elite Prep" mark in commerce.  However, whether secondary meaning has been established is a question of fact.  Each of the cases cited by the defendants was decided not on a motion to dismiss, but on a motion for summary judgment or after trial based on a complete factual record.  See Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1043 (2d Cir. 1980); Rockland Exposition, Inc. v.

10

Alliance of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 297 (S.D.N.Y. 2012), as amended (Sept. 19, 2012); Black & Decker Corp. v. Dunsford, 944 F. Supp. 220, 227-28 (S.D.N.Y. 1996); Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 826 (Fed. Cir. 1992); Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., 25 F. Supp. 2d 154, 166 (S.D.N.Y. 1998); Fraga v. Smithaven MRI, No. 94 Civ. 0030, 1996 U.S. Dist LEXIS 22016, at *4 (E.D.N.Y. 1996).

The defendants argue that a seven-month period is too short to establish secondary meaning as a matter of law even at the motion-to-dismiss stage. There is no support for that proposition. To the contrary, "there is no magic time span that confers secondary meaning." Rockland Exposition, 894 F. Supp. 2d at 322 (citation omitted). It is not implausible for a mark to acquire secondary meaning within months in certain peculiar and extraordinary factual circumstances. See Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 541, 544 (2d Cir. 1956) (secondary meaning within eleven months); Noma Lites v. Lawn Spray, 222 F.2d 716, 717 (2d Cir. 1955) (secondary meaning possible within a short time due to seasonal nature of the business); cf. L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1130 (Fed. Cir. 1993) (finding secondary meaning for trade dress within six months). Commercial use for only seven months may well weigh heavily against finding secondary meaning on

11

summary judgment or at trial absent extraordinary circumstances.
See, e.g., Saratoga Vichy Spring, 625 F.2d at 1043; Sports
Traveler, 25 F. Supp. 2d at 166; Co-Rect Products, Inc. v.
Marvy! Adver. Photography, Inc., 780 F.2d 1324, 1332 (8th Cir.
1985) ("[W]e feel that in these circumstances ten months is
simply not sufficient time to establish secondary meaning in the
market place."). However, these cases do not support dismissal
at this stage without discovery on the plaintiffs' purported use
of the "Manhattan Prep" mark during the seven-month period
before the defendants began using their mark. Accordingly, the
plaintiffs' claim based on the "Manhattan Prep" mark cannot be
dismissed on this ground.

       With respect to the "Manhattan GMAT" mark, the defendants
argue that the plaintiffs have no standing to enforce the mark.
The defendants produced a letter agreement between the Graduate
Management Admission Council ("GMAC") and the plaintiffs.
(Butera Decl. Ex. H.)  The defendants argue that, because the
letter agreement shows that GMAC owns the GMAT mark and that the
plaintiffs had no trademark rights in "Manhattan GMAT," the
plaintiffs have no standing to assert claims on the basis of the
"Manhattan GMAT" mark.

       "In adjudicating a motion to dismiss, a court may consider
only the complaint, any written instrument attached to the
complaint as an exhibit, any statements or documents

incorporated in it by reference, . . . any document upon which the complaint heavily relies," and any judicially noticeable matters.  In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).  Moreover, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  Chambers, 282 F.3d at 153.

The letter agreement in this case is not a document on which the plaintiffs rely--let alone "heavily" rely--in the Amended Complaint.  Therefore, without converting the present motion into one for summary judgment, which the Court has declined to do, the Court cannot consider the letter agreement in adjudicating this motion to dismiss.  See Allen v. Chanel Inc., No. 12 Civ. 6758, 2013 WL 2413068, at *6 (S.D.N.Y. June 4, 2013); Maloney v. CSX Transp., Inc., No. 09 Civ. 1074, 2010 WL 681332, at *3 (N.D.N.Y. Feb. 24, 2010).

The defendants next argue that the Amended Complaint fails to allege how the defendants infringed the "Manhattan GMAT" mark.  Indeed, the allegations regarding actual consumer confusion caused by the defendants are all directed at the "Manhattan Prep" mark, not the "Manhattan GMAT" mark.  (See Am. Compl. ¶¶ 6, 13, 44-58.)  However, likelihood of confusion, rather than actual confusion, is the requirement for a claim of

trademark infringement.  Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986); accord U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013).  The plaintiffs do allege that they have made substantial expenditure on promoting the "Manhattan GMAT" mark.  (Am. Compl. ¶¶ 31-33, 35-36.)  The plaintiffs also allege that the use of Manhattan Elite Prep infringes both "Manhattan" marks.  (Am. Compl. ¶¶ 80-84, 95-100, 102-03.)  The Court cannot dismiss these allegations on a motion to dismiss.  Therefore, the defendants' motion to dismiss the claims for trademark infringement and false representation and unfair competition (Claims I and II) is **denied.**

## IV.

The plaintiffs also bring a claim for false advertising in violation of § 43(a)(1)(B) of the Lanham Act, which provides a cause of action against anyone who, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).  To state a claim for false advertising under the Lanham Act, the plaintiffs must allege either that "the challenged advertisement is literally false" or

14

that "the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." Turbon Int'l, Inc. v. Hewlett-Packard Co., 769 F. Supp. 2d 262, 268 (S.D.N.Y. 2011) (citation and internal quotation marks omitted).

The defendants argue that the plaintiffs' false advertising claim does not allege material misrepresentations about the nature, characteristics, qualities, or geographic origin of the services and is a mere repetition of the trademark infringement claims.  This argument is without merit.  The plaintiffs allege instances of internet promotion as well as deliberate misrepresentations by the defendants to prospective students in promoting the defendants' services.  (Am. Compl. ¶¶ 42-57.)  As the Second Circuit Court of Appeals has explained, the defendants' improper marketing by creating the false impression of association between their services and those of the plaintiffs is a false claim about the defendants' services and is "actionable as false advertising." Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 277 F.3d 253, 260 (2d Cir. 2002).  Hence, the plaintiffs have sufficiently alleged a plausible claim that the defendants' use of the "Manhattan Elite Prep" mark in their advertisement is capable of confusing or misleading the consumers. See Alzheimer's Disease Research Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., --- F. Supp. 2d ---, No. 13 Civ. 3288, 2013 WL 5960748, at

15

*5 (E.D.N.Y. Nov. 8, 2013).  Accordingly, the defendants' motion to dismiss the Lanham Act false advertising claim is **denied**.


                              **V.**

     The plaintiffs also bring a claim for cybersquatting under the ACPA, 15 U.S.C. § 1125(d).  To state a claim under the ACPA, a plaintiff must allege that "(1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark."  Gioconda Law Grp. PLLC v. Kenzie, 941 F. Supp. 2d 424, 430 (S.D.N.Y. 2013).

     On a motion to dismiss, the Court should discount any conclusory allegations.  See Iqbal, 556 U.S. at 678.  The plaintiffs have proffered only conclusory allegations in support of the ACPA claim.  The plaintiffs have pointed to only three lines of conclusory allegations that the defendants registered a "confusingly similar" domain name "with the bad faith intent to profit" and "with full knowledge of Plaintiffs' exclusive rights in the MANHATTAN PREP mark."  (Pls.' Mem. at 20; Am. Compl. ¶¶ 113, 115, 116.)  No other allegations in the Amended Complaint give rise to an inference of "bad faith intent to profit" specifically from the infringing domain name.  The allegation that the defendants infringed the plaintiffs'

                              16

trademark in registering and using a confusingly similar domain
name, in and of itself, is insufficient to establish the "bad
faith intent to profit" under the ACPA.  As another court in
this District has explained, "[t]he ACPA is not an all-purpose
tool designed to allow the holders of distinctive marks the
opportunity to acquire any domain name confusingly similar to
their marks." Gioconda Law Grp., 941 F. Supp. 2d at 437
(citation omitted).

Therefore, the plaintiffs' cybersquatting claim must be
dismissed, because the allegations in the Complaint regarding
the defendants' use of the domain name simply show another
aspect of the alleged trademark infringement, rather than an
attempt to profit specifically from "squatting" on the domain
name with bad faith.  These allegations do not suggest that
defendants "perpetrated the core activities that threaten to
result in the paradigmatic harm that the ACPA was enacted to
eradicate," that is, "the proliferation of cybersquatting--the
Internet version of a land grab." See Lewittes v. Cohen, No. 03
Civ. 189, 2004 WL 1171261, at *8 (S.D.N.Y. May 26, 2004)
(citation and internal quotation marks omitted) (dismissing
cybersquatting claim).  Accordingly, the defendants' motion to
dismiss the cybersquatting claim (Claim IV) is **granted**.

VI.

The plaintiffs also bring claims for trademark infringement, unfair competition, and trademark dilution under New York State law.  "The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims."  ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (citations omitted).  The defendants' argument for dismissal of the common-law trademark infringement and unfair competition claim mirrors the arguments for dismissal of the parallel Lanham Act claims, namely, that the plaintiffs' mark had not acquired secondary meaning at the time the defendants adopted their mark. The Court has already rejected this argument.

The defendants also argue that the plaintiffs have not sufficiently alleged bad faith, as required for a common law unfair competition claim.  See Pearson Educ., Inc. v. Kumar, 721 F. Supp. 2d 166, 191 (S.D.N.Y. 2010).  The plaintiffs have alleged that the defendants adopted a highly similar mark with full knowledge of the plaintiffs' mark and with the intention to profit from the goodwill of the plaintiffs' mark. (Am. Compl. ¶¶ 5, 129).  The plaintiffs have also alleged that the defendants, in answering telephone inquiries from prospective students, deliberately confused the callers and attempted to

18

mislead potential customers into believing that they contacted the plaintiffs.  (Am. Compl. ¶ 57.)  These allegations are sufficient to support an inference of bad faith at this stage of the litigation.  See Peek & Cloppenburg KG v. Revue, LLC, No. 11 Civ. 5967, 2012 WL 4470556, at *6 (S.D.N.Y. Sept. 19, 2012); Pearson Educ., Inc., 721 F. Supp. 2d at 191, 193.  Therefore, the defendants' motion to dismiss the common-law claims for trademark infringement and unfair competition (Claim VI) is **denied.**

The plaintiffs' trademark dilution claim is brought under Section 360-*l* of the New York General Business Law (GBL).  To prevail on a claim for trademark dilution under New York law, the plaintiffs must show "(1) that it possesses a strong mark— one which has a distinctive quality or has acquired a secondary meaning . . . and (2) a likelihood of dilution by either blurring or tarnishment."  Fireman's Ass'n of State of N.Y. v. French Am. Sch. of N.Y., 839 N.Y.S.2d 238, 242 (App. Div. 2007).  "Unlike federal trademark dilution law, . . . New York's trademark dilution law does not require a mark to be 'famous' for protection against dilution to apply."  Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009).

The defendants argue that the plaintiffs' mark is not distinctive and has not acquired secondary meaning.  However, as noted above, it is premature to draw such a conclusion at this

stage of the proceeding.  The defendants next argue that the
plaintiffs have failed to plead likelihood of dilution in the
form of either blurring or tarnishment.  However, the plaintiffs
allege that a large number of students came to associate the
defendants' services with the plaintiffs', (Am. Compl. ¶¶ 42-
57), and that the defendants' services are of a different
quality than the plaintiffs', (Am. Compl. ¶¶ 11-12).  These
allegations are sufficient to "rais[e] the possibility that the
[plaintiffs'] mark will lose its ability to serve as a unique
identifier of [the plaintiffs' services]," and are therefore
sufficient to state a claim under GBL § 360-*l*.  Fireman's Ass'n,
839 N.Y.S.2d at 242; see also The Name LLC v. Arias, No. 10 Civ.
3212, 2010 WL 4642456, at *8 (S.D.N.Y. Nov. 16, 2010);
CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp.
Co., 809 F. Supp. 2d 33, 39 (N.D.N.Y. 2011).  Accordingly, the
defendants' motion to dismiss the trademark dilution claim
(Claim V) is **denied**.


### VII.

The plaintiffs also bring a claim under GBL §§ 349 and 350.
Section 349 prohibits "[d]eceptive acts or practices in the
conduct of any business, trade or commerce or in the furnishing
of any service in this state."  N.Y. Gen. Bus. Law § 349(a).
Section 350 prohibits "[f]alse advertising in the conduct of any

business, trade or commerce or in the furnishing of any service in this state." Id. § 350. Claims under Section 349 and Section 350 are similar: in order to state a claim under either provision, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675 (N.Y. 2012) (citation and internal quotation marks omitted).

However, as the defendants have argued correctly, courts in New York have routinely dismissed trademark claims brought under Sections 349 and 350 as being outside the scope of the statutes, because ordinary trademark disputes do not "pose a significant risk of harm to the public health or interest" and are therefore not the type of deceptive conduct that the statutes were designed to address. DePinto v. Ashley Scott, Inc., 635 N.Y.S.2d 215, 217 (App. Div. 1995); accord Perfect Pearl, 887 F. Supp. 2d at 542; DO Denim, LLC v. Fried Denim, Inc., 634 F. Supp. 2d 403, 409 (S.D.N.Y. 2009); Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 413 n.2 (S.D.N.Y. 2002) ("[T]he majority [of courts] have held that trademark cases are outside the scope of this general consumer protection statute."). The alleged "deceptive acts of practices" of the defendants in this case are precisely the acts that constitute

the alleged trademark infringement, (Am. Compl. ¶¶ 137-38),
which are outside the scope of the statutes.  Accordingly, the
Section 349 and 350 claims fail as a matter of law, and the
defendants' motion to dismiss Claim VII is **granted**.


## VIII.

Finally, the plaintiffs bring a claim under New York State
law for unjust enrichment, alleging that the defendants are
unjustly enriched by, among other things, the infringing use of
the trademark.  Under New York law, in order to state a claim
for unjust enrichment, the plaintiffs must demonstrate that they
themselves conferred a direct benefit on the defendants.  Segal
v. Cooper, 944 N.Y.S.2d 65, 67 (App. Div. 2012); Prime Mover
Capital Partners L.P. v. Elixir Gaming Technologies, Inc., 898
F. Supp. 2d 673, 697 (S.D.N.Y. 2012).  In this case, there are
no such allegations: the defendants were enriched only
indirectly from the plaintiffs' prior activities of promoting
their marks.  Accordingly, the plaintiffs have failed to state a
claim for unjust enrichment under New York State law.

However, under the Lanham Act, 15 U.S.C. § 1117(a),
"[u]njust enrichment warranting an accounting [of profits]
exists when the defendant's sales were attributable to its
infringing use of plaintiff's trademark."  Burndy Corp. v.
Teledyne Indus., Inc., 748 F.2d 767, 772 (2d Cir. 1984)

(citation and internal quotation marks omitted); accord Ptak Bros. Jewelry, Inc. v. Ptak, No. 06 Civ. 13732, 2009 WL 1514469, *2 (S.D.N.Y. June 1, 2009).  To prevail on an unjust enrichment claim, the plaintiffs must demonstrate that the enrichment is "the fruit of willful deception."  George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1538 (2d Cir. 1992).  In this case, the plaintiffs have alleged that the defendants' infringement was willful in that the defendants answer telephone inquiries from prospective students in "an intentionally confusing and deceptive manner that callers have the false impression that they have contacted . . . Manhattan Prep."  (Am. Compl. ¶ 57.)  The plaintiffs have alleged that the defendants committed their acts of trademark infringement "willfully." (Am. Compl. ¶ 98.)  Hence, the plaintiffs would be able to recover for unjust enrichment under the Lanham Act allegations, if they are able to prove them, but the plaintiffs have not stated a claim under the New York State law for unjust enrichment.  Accordingly, the defendants' motion to dismiss the state law claim of unjust enrichment (Claim VIII) is **granted.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss is **granted in part** and **denied in part**.  **The Clerk is directed to close Docket No. 32.**

SO ORDERED.

Dated:     New York, New York
           April 30, 2014
                                    _____
                                    /s/
                                     John G. Koeltl
                              United States District Judge