E4MDDKAPC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   KAPLAN, INC. and MG PREP, INC.
3  d/b/a MANHATTAN PREP

4  and MANHATTAN GMAT,

5

                Plaintiffs,
6
           v.                        13 CV 1147 (JGK)-(HP)
7
   TRACY YUN and MANHATTAN
8  ENTERPRISE GROUP, LLC
   d/b/a MANHATTAN ELITE PREP,
9
                Defendants.
10
   ------------------------------x
11                                   New York, N.Y.
                                     April 22, 2014
12                                   3:50 P.M.

13 Before:

14                   HON. JOHN G. KOELTL,

15                                       District Judge

16                        APPEARANCES

17 KENYON & KENYON
        Attorneys for Plaintiffs
18 BY:  MIMI RUPP
        HOWARD J. SHIRE
19
   GERTNER MANDEL & PESLAK LLC
20      Attorneys for Defendants
   BY:  ARTHUR M. PESLAK
21

22

23

24

25

1           (Case called)

2           MS. RUPP:  Your Honor, Mimi Rupp and Howard Shire of

3    Kenyon & Kenyon for the plaintiffs, Kaplan and Manhattan Prep.

4           MR. PESLAK:  Good afternoon.  Arthur Peslak, Gertner

5    Mandel & Peslak for the defendants.

6           THE COURT:  All right.  This is a motion to dismiss,

7    so I'm familiar with the papers.

8           I will listen to argument.  How much time do you want?

9           MR. PESLAK:  Ten minutes, your Honor.

10          THE COURT:  Ten minutes?

11          MR. PESLAK:  Yes.

12          THE COURT:  Okay.

13          MR. PESLAK:  Your Honor, there's sort of one update

14   that I wanted to give the Court about plaintiffs' trademark

15   application for Manhattan Prep.  There's a lot of briefing that

16   went on back and forth on that.

17          My clients, through other counsel last week, filed an

18   opposition proceeding in the Trademark Trial and Appeal Board.

19   And I understand from counsel that the parties agreed to

20   suspend the TTAB proceedings pending the resolution of this

21   case.  So, all the issues are before the Court at this time.

22          THE COURT:  The prior decision of the office was

23   reversed, right?

24          MR. PESLAK:  Nothing was reversed, Judge.  It was

25   published for opposition, the mark, and we now filed an

1    opposition.  I mean the examiner --

2         THE COURT:  But the examiner originally rejected the

3    mark, right?

4         MR. PESLAK:  Oh, yes, you're correct.

5         THE COURT:  And you had originally relied on what the

6    examiner had done, and then that washed out?

7         MR. PESLAK:  Essentially, correct.  They converted

8    their application to a 2(f) application, which is acquired

9    distinctiveness, not inherently distinctive, and they allege

10   that they continuously used the mark for whatever period of

11   time.  And that's what the examiner reversed the initial

12   rejection on.

13        THE COURT:  Okay.

14        MR. PESLAK:  I understand that we're here on a motion

15   to dismiss, and I think there is a narrow issue here upon which

16   the Court can dismiss the case on a Rule 12(b)(6) motion.

17        As we know, <u>Iqbal</u> says that the plaintiffs have to

18   plead a plausible cause of action.

19        They're alleging infringement of a mark, "Manhattan

20   Prep," that's geographically descriptive, and upon which they

21   have to prove it acquired secondary meaning prior to the time

22   when my client adopted the mark.  And we have a very, very

23   short time period here.

24        THE COURT:  About seven months.

25        MR. PESLAK:  Right.  They claim date of first use is

1  July 2011.  My client's first use in commerce is February 2012,

2  although we did adopt the mark and registered the domain name

3  manhattaneliteprep.com in December 2011.

4  And I think that distinction for those couple of

5  months applies to the cybersquatting claim, because that gives

6  that claim an even narrower frame of reference for acquiring

7  secondary meaning.

8  The only allegations in the complaint on secondary

9  meaning are in paragraphs 32 to 40 of the amended complaint.

10  And most of those allegations are either legal conclusions,

11  which we know from Ashcroft v. Iqbal that the Court is not

12  required to accept as true, or they're not directed

13  specifically to the relevant time frame, which is July 2011 to

14  February 2012.

15  And there are a series of factors that both sides

16  cited from cases in their brief that the Court needs to

17  consider, advertising expenditures for the claimed mark

18  "Manhattan Prep," consumer surveys linking the mark to a

19  source, unsolicited media coverage of the mark "Manhattan

20  Prep," sales success, attempts to plagiarize the mark, and the

21  lengthened exclusivity of use of "Manhattan Prep" by the

22  plaintiffs.

23  When we go through what's alleged in the complaint in

24  those few paragraphs, there is no reference to consumer

25  surveys.

1    THE COURT:  But why does the plaintiff have to allege

2  all of the evidence that it would introduce to establish that

3  the mark had obtained secondary meaning?

4    MR. PESLAK:  I don't think they have to allege all the

5  evidence, your Honor, but I think what they have alleged does

6  not make for a plausible claim.

7    THE COURT:  As I understood your papers, you argue as

8  a matter of law that the time that existed between the time

9  when the plaintiff adopts the mark and the time that you used

10  the mark was insufficient as a matter of law for them to have

11  obtained secondary meaning.

12    MR. PESLAK:  That's correct.

13    THE COURT:  But that argument is a very different

14  argument from, gee, they didn't allege the specific amounts of

15  the advertising revenue that they expended in that period of

16  time, and therefore their allegations are insufficient under

17  Iqbal and Twombly to show that they actually obtained secondary

18  meaning.

19    They allege that they did various things and that they

20  obtained secondary meaning for their mark.  And you say in your

21  brief that that's insufficient because there's no case out

22  there that says seven months is enough to obtain secondary

23  meaning.

24    That's a different argument from an argument that

25  says, okay, as a matter of law, Judge, here is the minimum that

1   they have to allege under _Iqbal_ and _Twombly_ to show that

2   they've obtained secondary meaning, even though they've alleged

3   secondary meaning, they have to allege what their advertising

4   revenues were -- what else do you think that they have to

5   establish?

6           MR. PESLAK:  Well, I think my -- maybe you

7   misunderstood -- unfortunately, I didn't write the briefs,

8   okay, and I want to make sure what I'm saying to your Honor is

9   clear.

10          The argument in the briefs was, as a matter of law,

11  that period is insufficient.  And based on all these other

12  cases, there's not a single case --

13          THE COURT:  You think that's right?

14          MR. PESLAK:  I do believe that's right because --

15          THE COURT:  But just because there's no case, and I

16  may disagree with that, but just because there's no other case

17  that says, gee, in this case the plaintiffs' mark obtained

18  secondary meaning in seven months, does it necessarily follow

19  that the plaintiffs cannot, as a matter of law, establish that

20  their mark obtained secondary meaning because the length of

21  time was only seven months?  That can't --

22          MR. PESLAK:  I understand your --

23          THE COURT:  -- that can't be, right?

24          MR. PESLAK:  Right.  What I was saying was, if you

25  take the short period of time and the other things that they

allege, because the cases do say, your Honor has to consider
the factors, okay, and Iqbal also says the Court has to use its
commonsense and figure out what's going on here; but my point
was when I look at what's alleged in the complaint there is
really nothing else that fits into that time period, that short
time period, of specific sales figures, advertisements,
revenue, that sort of thing, okay.

Is there a case out there that says, just because it's
only seven months the Court has to dismiss it?  There is not
that case out there.  But the cases where secondary meaning is
found are a much longer period of time.

There's even a case cited by the plaintiffs, which I
think if the Court looked at the facts of that case, that was
the New York City Triathlon case, and that was a case, a
geographically descriptive mark, and it was a 10-year time
period to obtain secondary meaning.  And the other cases that
we cite are much longer periods of time.

And the argument is that seven months just isn't
plausible, when the Court looks at the other allegations that
are there for secondary meaning.

Without secondary meaning, they don't have a valid
mark, and the federal trademark infringement claim has to be
dismissed.  The long list, the state law claims, which also
require some distinctiveness or secondary meaning in the mark,
the federal cybersquatting claim has an even shorter time

1  window.  And in that particular time frame, just when one looks

2  at Iqbal, that says there has to be facts alleged to state a

3  plausible claim, and before you get to any other trademark

4  issues they have to have a valid trademark, and they could only

5  get that with proof of secondary meaning, and they just don't

6  have the allegations in there, your Honor.

7         THE COURT:  Okay.

8         MR. PESLAK:  Thank you.

9         MS. RUPP:  Thank you, your Honor.

10        I'd like to clear up some discrepancies in the factual

11  record.

12        As your Honor noted, the Trademark Office did overrule

13  their initial rejection of the Manhattan Prep application and a

14  notice of publication issued on November 27, 2013.

15        And we would have a registration certificate in hand,

16  but for defendants' notice of opposition that they filed rather

17  recently.

18        And to distinguish the cases, defendants didn't allege

19  any cases where a court has granted a motion to dismiss based

20  on, quote-unquote, a nonplausible amount of time where a

21  trademark owner used the mark.  The closest they came was a

22  motion to dismiss case that's an unreported decision, and that

23  was the Urban Group, and that's very distinguishable.  Because

24  in that case we were dealing with trade dress, and whether a

25  trampoline that was red and black, whether they had adequately

1    pled secondary meaning.  They did not have a trademark

2    application.  And, more unlike us, they did not have obviously

3    a trademark application that was approved for publication where

4    the Trademark Office has specifically ruled that we have

5    acquired distinctiveness in the "Manhattan Prep" mark.

6          And I'd like to point out that defendants have

7    completely ignored paragraph 33 where we have alleged that we

8    have inherent DM, the "Manhattan Prep" mark is inherently

9    distinctive.  So they've completely ignored that allegation.

10         Secondly, they've ignored the allegation in paragraph

11   113 where we have alleged acquired distinctiveness as of

12   December 12th.

13         And I'd like to point out, Ms. Yun's former partner in

14   the failed or, I guess, abandoned Manhattan Review business

15   that's currently being litigated in the state action, she pled

16   in her counterclaim argument where she brought a

17   cybersquatting claim based on the manhattanreview.com domain

18   name, she said that it was in violation of the federal

19   cybersquatting Act, because the Manhattan -- I'm quoting from

20   her counterclaim, paragraph 77, which is Exhibit L to the

21   amended complaint, "Manhattan Elite Prep is an inherently

22   distinctive mark and entitled to protection."

23         So, I find it incredibly hypocritical that she

24   basically says our claims should be dismissed on a motion to

25   dismiss, where she has alleged in a court of law that Manhattan

1    Elite Prep is inherently distinctive and she is bringing a very

2    similar cybersquatting claim against her former partner based

3    on his ownership of the Manhattan Review domain.

4            And there are cases where courts have found on a

5    motion for summary judgment where secondary meaning was

6    established in six months.

7            In this court, <u>De Beers LV v. De Beers</u>, and that's 440

8    F.Supp.2d 249 (S.D.N.Y. 2006), there, secondary meaning was

9    established in six months because the trademark owner had

10   demonstrated or alleged, as it were, $5 million in sales from

11   two small retail stores in Manhattan.

12           As your Honor mentioned, the factors that go into the

13   calculus of whether secondary meaning are nonexclusive, not one

14   factor is more determinative than the other.

15           And this Court has said, attempts to plagiarize is the

16   most important, if not conclusive.  And here we have evidence,

17   we have alleged, that basically as soon as we re-branded as

18   Manhattan Prep, Tracy Yun, six months later, basically renamed

19   her business with stolen assets allegedly from her partner as

20   Manhattan Elite Prep, and she did that with a calculus to cause

21   confusion.

22           And there's no dispute that her use of the infringing

23   mark has caused quite a great amount of injury to students.

24   And that's one of our claims, deceptive business practice.  And

25   we dispute their allegation that it isn't in the public

 1   interest to protect students in this District.

 2               THE COURT:  All right.

 3               MS. RUPP:  And I would just like to summarize, your

 4   Honor, Rule 12(b)(6) is an improper vehicle to determine

 5   whether a trademark protection has been sufficiently alleged.

 6               All plaintiffs have to do at this stage, as you know,

 7   is to allege a plausible basis to trademark protection.

 8               There are courts who have dismissed trademark

 9   infringement actions at this stage.  However, that's only been

10   where they don't meet the liberal standard of a plausible

11   allegation.

12               And I would direct your Honor to, I think, the <u>Toho</u>

13   case in the Ninth Circuit, 1981, it's incredibly instructive.

14   And there they ruled as a matter of law in that case, that was

15   <u>Bagzilla</u> for garbage bags, and the movie studio that owned

16   rights to the famous Godzilla character --

17               THE COURT:  What was the date?

18               MS. RUPP:  That was 1981, your Honor.

19               THE COURT:  Long before <u>Iqbal</u> and <u>Twombly</u>.

20               MS. RUPP:  Yes, your Honor.

21               But the result, I submit, would have been largely the

22   same, just because in that case the goods and services were so

23   different from a Godzilla character versus <u>Bagzilla</u> for trash

24   bags.

25               And another case, more recent would be the

1   <u>Mercedes-Benz</u> case, that was 2011, in the Northern District of

2   California.  There, the plaintiff failed to even allege use of

3   the allegedly infringing mark in the U.S.

4           So even on the face of the complaint, in that instance

5   the motion to dismiss was well-founded.  And here, we've met

6   that standard, the very liberal standard of a plausible basis

7   for trademark protection.

8           We also have alleged infringement of the "Manhattan

9   GMAT" mark, and that's not something that the defendant

10  addressed today.  And we've been using that mark for GMAT

11  products and services since 2000.

12          This year, I believe Manhattan GMAT is the largest

13  provider of GMAT preparatory materials and courses.

14          And that's the thing, when you have that kind of

15  market dominance, when you launch a new mark that basically

16  bears allegiance to the mark that people are well familiar

17  with, Manhattan Prep, and you already have those distribution

18  channels, for example, we're the provider of GMAT preparatory

19  services to Goldman Sachs, Deloitte, Google, and we already

20  have those corporate relationships, so it was quite easy for us

21  to establish secondary meaning in the "Manhattan Prep" mark.

22          THE COURT:  Yes.  You may well get over the motion to

23  dismiss, but your ability to use the "Manhattan GMAT" mark may

24  well be called into question based upon what your relationship

25  to the GMAT people is, and whether you really have the right to

1  use that name, something which goes beyond the motion to

2  dismiss, because it's plain that that correspondence was hardly

3  part of your complaint.  But, we shall see.

4          MS. RUPP:  Understood, your Honor.

5          THE COURT:  What is the real basis that you think you

6  can use the GMAT name?

7          MS. RUPP:  Your Honor, we were before you in <u>Osbourne</u>

8  <u>v. Iommi</u>.

9          In that case, Sharon Osbourne and Ozzy Osbourne

10  basically had exclusive control over the goods and services

11  that they offered under the "BLACK SABBATH" mark.

12          Tony Iommi, who is a guitarist in Black Sabbath, had

13  registered the "BLACK SABBATH" name in the USPTO.  And as part

14  of their motion to dismiss, they attached as an exhibit a

15  19- --

16          THE COURT:  No, I am --

17          MS. RUPP:  Oh, sure.

18          THE COURT:  I said, it goes beyond the motion to

19  dismiss, I realize that.

20          I was just asking how you expect to get over that

21  eventually.

22          MS. RUPP:  Oh, sure.  I was getting to that, and I

23  apologize.

24          In that case, we were able to adequately plead, as

25  here, that we have exercised exclusive control over the goods

1    that are under the "Manhattan GMAT" mark.

2         And likewise, we are the only ones who have exercised

3    control over the quality of the goods and services that --

4         THE COURT:  What does GMAT say about the use of their

5    name as part of your name?

6         MS. RUPP:  Under the 2004 letter, which again is

7    beyond the scope of today's pleadings, we have a license to use

8    Manhattan GMAT for certain products and services based on the

9    plain language of that letter agreement.

10        THE COURT:  And do they still think that's right?

11        MS. RUPP:  Your Honor, I'll double-check with my

12   client, but I haven't heard anything different.

13        THE COURT:  No, that's all right.  It goes beyond the

14   scope of what I can consider on a motion to dismiss.  Okay.

15        MS. RUPP:  Thank you, your Honor.

16        THE COURT:  All right.  I'm prepared to decide the

17   motion.

18        The plaintiffs Kaplan, Inc. and MG Prep, Inc. bring

19   this action against defendants Tracy Yun and Manhattan

20   Enterprise Group, LLC ("MEP"), alleging that the defendants

21   infringed and misappropriated the plaintiffs' trademarks,

22   "Manhattan Prep" and "Manhattan GMAT" (collectively the

23   "Manhattan marks") by running a competing business under the

24   name "Manhattan Elite Prep."  The plaintiffs allege various

25   causes of action under the Lanham Act and the

1   Anticybersquatting Consumer Protection Act, the (ACPA), as well

2   as several causes of action under New York State law.

3           This Court has federal question jurisdiction under 28

4   U.S.C. Sections 1331, 1338(a), and 1338(b) over the federal law

5   claims, and supplemental jurisdiction under 28 U.S.C. Section

6   1367 under the state law claims.

7           The defendants now move to dismiss the amended

8   complaint pursuant to Rule 12(b)(6), or, in the alternative, to

9   convert the motion to a summary judgment motion pursuant to

10  Rules 12(d) and 56 of the Federal Rules of Civil Procedure.

11  However, because the parties have not engaged in discovery and

12  the plaintiffs have not had the opportunity to gather and

13  present evidence and argument in opposition to a summary

14  judgment motion, the Court declines to convert the motion into

15  one for summary judgment.  See Fargas v. Cincinnati Mach., LLC,

16  No. 13 Civ. 4443, 2013 WL 6508863, at 1, (S.D.N.Y. December 12,

17  2013).

18          In deciding a motion to dismiss pursuant to Rule

19  12(b)(6), the allegations in the complaint are accepted as

20  true, and all reasonable inferences must be drawn in the

21  plaintiffs' favor.  McCarthy v. Dun & Bradstreet Corp., 482

22  F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group

23  LLC, 532 F.Supp.2d 556, 566, (S.D.N.Y. 2007).  The Court's

24  function on a motion to dismiss is "not to weigh the evidence

25  that might be presented at trial but merely to determine

1   whether the complaint itself is legally sufficient." <u>Goldman</u>

2   <u>v. Belden</u>, 754 F.2d 1059, 1067, (2d Cir. 1985).  The Court

3   should not dismiss the complaint if the plaintiff has stated

4   "enough facts to state a claim to relief that is plausible on

5   its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570

6   (2007).  "A claim has facial plausibility when the plaintiff

7   pleads factual content that allows the court to draw the

8   reasonable inference that the defendant is liable for the

9   misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

10  (2009).  While the Court should construe the factual

11  allegations in the light most favorable to the plaintiff, "the

12  tenet that a court must accept as true all of the allegations

13  contained in a complaint is inapplicable to legal conclusions."

14         When presented with a motion to dismiss pursuant to

15  Rule 12(b)(6), the Court may consider documents that are

16  referenced in the complaint, documents that the plaintiff

17  relied on in bringing suit and that are either in the

18  plaintiff's possession or that the plaintiff knew of when

19  bringing suit, or matters of which judicial notice may be

20  taken.  <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153

21  (2d Cir. 2002).  In particular, the Court may take judicial

22  notice of official records of the United States Patent and

23  Trademark Office (PTO).  <u>Telebrands Corp. v. Del Labs</u>, 719

24  F.Supp.2d 283, 287 n.3 (S.D.N.Y. 2010).

25         The Court accepts the allegations in the amended

complaint as true for purposes of this motion.  The plaintiffs
and the defendants run competing brands of preparation courses
for various standardized tests, including the Graduate
Management Admission Test ("GMAT"), Graduate Record
Examinations ("GRE"), and the Law School Admission Test
("LSAT").  The plaintiffs have previously offered courses under
the brand "Manhattan GMAT".  Allegedly in July 2011, the
plaintiffs adopted a new umbrella brand, "Manhattan Prep,"
because they offered preparation courses for exams other than
GMAT; the plaintiffs continued to offer GMAT courses under the
brand "Manhattan GMAT."

Around December 2011, defendant Yun launched a
business offering GMAT, GRE, and LSAT preparation courses and
registered the domain name "manhattaneliteprep.com"; the
defendants first used the mark "Manhattan Elite Prep" in
commerce in February 2012.  Consumers were already confused
between the two brands. (See generally Am. Comp. at paragraphs
41 to 58).  The plaintiffs specifically alleged circumstances
in which potential students mistook "Manhattan Elite Prep"
courses for "Manhattan Prep," while purchasing the courses on
Internet shopping websites such as Groupon or Gilt City.

The plaintiffs applied for registration of the
trademark "Manhattan Prep" with the PTO on May 4, 2012 in an
"intent-to-use" application under Section 1(b) of the Lanham
Act, 15 U.S.C. Section 1051(b).  The PTO initially denied

registration of the "Manhattan Prep" mark in September 2012

because the mark was "primarily geographically descriptive of

the origin of the plaintiffs' services."  On March 14, 2013,

the PTO further found that the mark had not acquired secondary

meaning.  However, the PTO subsequently reversed its decision

and approved the mark for publication on October 9, 2013.

On August 1, 2012, about three months after filing the

application with the PTO, the plaintiffs sent the defendants a

letter demanding that the defendants cease and desist from

infringing upon the "Manhattan" marks and that the defendants

hand over the infringing Internet domain name.  The defendants

responded on August 8, 2012, claiming trademark rights superior

to the plaintiffs' marks, as well as invalidity of the

"Manhattan Prep" mark.  The plaintiffs replied on August 29,

2012, claiming superior rights based on the claims, plaintiffs'

alleged use of the "Manhattan Prep" mark starting from

July 2011.  The present action was commenced on February 20,

2013, following unsuccessful settlement discussions between the

parties.

In addition to the alleged infringement of the

"Manhattan" marks by Manhattan Elite Prep, the plaintiffs

further allege that defendant Yun had previously infringed the

"Manhattan GMAT" mark in conducting a similar

preparation-course business named Manhattan Review, and that

Yun had subsequently had a trademark dispute with her former

1    business partner at Manhattan Review.

2            To state a claim for trademark infringement under

3    Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), a

4    plaintiff must show that it has a valid mark entitled to

5    protection and that "the defendant's use of its mark is likely

6    to cause an appreciable number of ordinarily prudent purchasers

7    confusion as to the origin, sponsorship, or approval of the

8    defendant's product.  Louis Vuitton Malletier S.A. v. Warner

9    Bros. Entertainment Inc., 868 F.Supp.2d 172, 177 (S.D.N.Y.

10   2012).  In their opening papers, the defendants have not argued

11   that the amended complaint failed to plead consumer confusion

12   sufficiently, but have instead focused their arguments on the

13   validity of the plaintiffs' trademarks and the plaintiffs'

14   standing to sue.  A mark must be "distinctive" and not

15   "generic" in order to qualify as a protectable trademark.

16   Christian Louboutin S.A. v. Yves Saint Laurent American

17   Holdings, Inc., 696 F.3d 206, 216 (2d Cir. 2012).  For

18   trademark purposes, terms or phrases are usually classified as,

19   (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary

20   or fanciful.  In Abercrombie & Fitch Co. v. Hunting World,

21   Inc., 537 F.2d 4, 9 (2d Cir. 1976).

22           "Generic terms are never entitled to protection.

23   Suggestive, arbitrary and fanciful terms, on the other hand,

24   are inherently distinctive and generally entitled to

25   protection.  Descriptive terms are not inherently distinctive,

but are nonetheless entitled to protection if they acquire

secondary meaning in the marketplace." Paco Sport, Ltd. v.

Paco Rabanne Parfums, 86 F.Supp.2d 305, 310 (S.D.N.Y. 2000);

see also Abercrombie & Fitch, 537 F.2d at 9-11.  Thus, "to

qualify for trademark protection, an owner of a descriptive

mark must demonstrate that the mark had acquired secondary

meaning before its competitor commenced use of the mark."

PaperCutter, Inc. v. Fay's Drug Co., Inc., 900 F.2d 558, 564,

(2d Cir. 1990).

On this motion, there is no dispute that the term

"Manhattan Prep" is not inherently distinctive, because the

plaintiffs do not contend that the term "Manhattan Prep" is

suggestive, fanciful, or arbitrary.  Accordingly, the

plaintiffs' term "Manhattan Prep" is protectable as a trademark

only if it had acquired secondary meaning before the defendants

commenced their use of the allegedly infringing mark in

February 2012.

The defendants first rely on the PTO's initial

determination in March 2013 that the mark had not acquired

secondary meaning.  However, as the plaintiffs correctly point

out, that determination is now overruled and is entitled to no

deference.  See Lebewohl v. Heart Attack Grill, LLC, 890

F.Supp.2d 278, 292 (S.D.N.Y. 2012).  Thus, the PTO's initial

determination carries no weight on this motion to dismiss.

The defendants next argue that the allegations

regarding the plaintiffs' commercial use prior to February 2012

are insufficient.  The plaintiffs allege that they adopted the

"Manhattan Prep" mark in July 2011, and have "extensively

advertised, promoted, and marketed" their courses and materials

under the brand since that time.  (Am. Compl. paragraphs 4, 34,

68, 88).  The defendants argue that these allegations are

insufficient to establish commercial use before the defendants'

commercial use of their mark, because such allegations do not

specify which portion of the sales or advertisement expenditure

occurred prior to February 2012.  However, the defendants

essentially raise a dispute of fact, and the Court cannot

resolve a factual dispute on a motion to dismiss but must take

the plaintiffs' allegations as true.  With all inferences drawn

in favor of the plaintiffs, these allegations are sufficient to

plead extensive commercial use by the plaintiffs since

July 2011 and prior to February 2012.

　　　　　The defendants also rely on the plaintiffs' trademark

application and assert that the application conclusively

establishes the lack of commercial use of the "Manhattan Prep"

mark by the plaintiffs as of May 2012, when the application was

filed.  However, nowhere in the application did the plaintiffs

state affirmatively that they had not yet started to use the

"Manhattan Prep" mark, and the only reference to the use of the

mark was in the status page of the PTO website and was in

regard to the basis of the application as a Section 1(b)

1    intent-to-use application.  It is well-established that a party

2    is not prohibited from filing an intent-to-use application for

3    a mark that the party has actually used in the past, Stoller v.

4    Sutech U.S.A., Inc., 199 F. App'x 954, 957, (Fed. Cir. 2006)

5    (per curiam) (collecting cases); nor is an intent-to-use

6    application precluded from relying upon actual use prior to the

7    intent-to-use application in establishing priority.  Corporate

8    Document Services, Inc. v. I.C.E.D. Management, Inc., 48

9    U.S.P.Q.2d 1477, 1998 WL 766713, at 3 (TTAB 1998).  Thus, the

10   fact that the plaintiffs filed an intent-to-use application in

11   May 2012 does not show that the plaintiffs were not actually

12   using the mark in commerce until after May 2012.

13          Even if the plaintiffs had taken a different position

14   before the PTO, to the extent that the defendants argue that

15   the plaintiffs are prevented from taking an inconsistent

16   position in this case, no estoppel applies here.  Although

17   statements made to administrative bodies including the PTO may

18   create judicial estoppel, see BeautyBank, Inc. v. Harvey Prince

19   LLP, 811 F.Supp.2d 949, 958 (S.D.N.Y. 2011), "in general courts

20   do not bind parties to their statements made or positions taken

21   in ex parte trademark application proceedings in front of the

22   PTO."  Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.,

23   887 F.Supp.2d 519, 534 to 535 (S.D.N.Y. 2012).  Moreover,

24   judicial estoppel is applicable only if the prior inconsistent

25   position is "adopted" by the tribunal in some way.  DeRosa v.

E4MDDKAPC

National Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010).  No

records from the PTO show that the PTO adopted the proposition

that the plaintiffs did not use the "Manhattan Prep" mark prior

to May 2012.  Accordingly, the plaintiffs are not estopped from

making the assertion that they started using the "Manhattan

Prep" mark before the defendants' allegedly infringing

activities.

          Finally, the defendants argue that, even assuming that

the plaintiffs started using the "Manhattan Prep" mark in

July 2011, the plaintiffs cannot establish secondary meaning as

a matter of law because the mark would be in use for only seven

months by the time the defendants began using the "Manhattan

Elite Prep" mark in commerce.  However, whether secondary

meaning has been established is a question of fact.  Each of

the cases cited by the defendants was decided not on the motion

to dismiss, but on a motion for summary judgment or after trial

based on complete factual record.  See Saratoga Vichy Spring

Co., Inc. v. Lehman, 625 F.2d 1037, 1043 (2d Cir. 1980);

Rockland Exposition, Inc. v. Alliance of Auto Service Providers

of New Jersey, 894 F.Supp.2d 288, 297 (S.D.N.Y. 2012), as

amended (September 19, 2012); Black & Decker Corp. v. Dunsford,

944 F.Supp.220, 227-28 (S.D.N.Y. 1996).  Braun, Inc. v.

Dynamics Corp. of America, 975 F.2d 815, 826 (Fed. Cir. 1992);

Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., 25

F.Supp.2d 154, 166 (S.D.N.Y. 1998); Fraga v. Smithaven MRI, No.

1    94 Civ. 0030, 1996 U.S. Dist LEXIS 22016, at 4 (E.D.N.Y. 1996).

2           The defendants argue that a seven-month period is too

3    short to establish secondary meaning as a matter of law even at

4    the motion-to-dismiss stage.  There is no support for that

5    proposition.  To the contrary, "there is no magic time span

6    that confers secondary meaning."  Rockland Exposition, 894

7    F.Supp.2d at 322 (citation omitted).  It is not implausible for

8    a mark to acquire secondary meaning within months in certain

9    peculiar and extraordinary factual circumstances.  See

10   Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 541, 544

11   (2d Cir. 1956) (secondary meaning within 11 months); Norma

12   Lites v. Lawn Spray, 222 F.2d 716, 717 (2d Cir. 1955)

13   (secondary meaning possible within a short time due to seasonal

14   nature of the business); cf. L.A. Gear v. Thom McAn Shoe Co.,

15   988 F.2d, 1117, 1130, (Fed. Cir. 1993) (finding secondary

16   meaning for trade dress within six months).  Commercial use for

17   only seven months may well weigh heavily against finding

18   secondary meaning on summary judgment or at trial absent

19   extraordinary circumstances.  See, e.g., Saratoga Vichy Spring,

20   625 F.2d at 1043; Sports Traveler, 25 F.Supp.2d at 166; Co-Rect

21   Products, Inc. v. Marvy! Advertising Photography, Inc., 780

22   F.2d 1324, 1332, (8th Cir. 1985) ("We feel that in these

23   circumstances 10 months is simply not sufficient time to

24   establish secondary meaning in the marketplace.").  However,

25   these cases do not support dismissal at this stage without

discovery on the plaintiffs' purported use of the "Manhattan Prep" mark during the seven-month period.  Accordingly, the plaintiffs' claim based on the "Manhattan Prep" mark cannot be dismissed on this ground.

With respect to the "Manhattan GMAT" mark, the defendants argue that the plaintiffs have no standing to enforce the mark.  The defendants produced a letter agreement between the Graduate Management Admission Council ("GMAC") and the plaintiffs.  The defendants argue that, because the letter agreement shows that GMAC owns the "GMAT" mark and that the plaintiffs had no trademark rights in "Manhattan GMAT," the plaintiffs have no standing to assert claims on the basis of the "Manhattan GMAT" mark.

"In adjudicating a motion to dismiss, a Court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents or documents incorporated in it by reference, . . . any document upon which the complaint heavily relies," and any judicially noticeable matters.  In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).  Moreover, "a plaintiffs' reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a motion; mere notice or possession is not enough." Chambers, 282 F.3d at 153.

The letter agreement in this case is not a document on

E4MDDKAPC

which the plaintiffs rely, let alone "heavily" rely, in the
amended complaint.  Therefore, without converting the present
motion into one for summary judgment, which the Court has
declined to do, the court cannot consider the letter agreement
in adjudicating this motion to dismiss.  See Allen v. Chanel,
Inc., No. 12 Civ. 6758, 2013 WL 2413068, at 6 (S.D.N.Y. June 4,
2013); Maloney v. CSX Transportation, Inc., No. 09 Civ 1074,
2010 WL 681332, at 3, (N.D.N.Y. February 24, 2010).

          The defendants next argue that the amended complaint
fails to allege how the defendants infringed the "Manhattan
GMAT" mark.  Indeed, the allegations regarding actual consumer
confusion caused by the defendants are all directed at the
"Manhattan Prep" mark, not the "Manhattan GMAT" mark.  However,
likelihood of confusion, rather than actual confusion, is the
requirement for a claim of trademark infringement.  Lois
Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867,
875 (2d Cir. 1986); accord U.S. Polo Association, Inc. v. PRL
USA Holdings, Inc., 800 F.Supp.2d 515, 531 (S.D.N.Y. 2011),
aff'd, 511 F. App'x 81 (2d Cir. 2013).  The plaintiffs do
allege that they have made substantial expenditures on
promoting the "Manhattan GMAT" mark.  (Am. Compl. paragraphs
31-33, 35-36)  The plaintiffs also allege that the use of
Manhattan Elite Prep infringes both "Manhattan" marks.  (Am.
Compl. paragraphs 80-84, 95-100, 102-03.)  The court cannot
dismiss these allegations on a motion to dismiss.  Therefore,

E4MDDKAPC

1    the defendants' motion to dismiss the claims for trademark

2    infringement and false representation and unfair competition

3    (Claims I and II) is denied.

4         The plaintiffs also bring a claim for false

5    advertising in violation of Section 43(a)(1)(B) of the Lanham

6    Act, which provides a cause of action against anyone who "in

7    commercial advertising or promotion, misrepresents the nature,

8    characteristics, qualities or geographic origin of his or her

9    or another person's goods, services or commercial activities."

10   15 U.S.C. Section 1125(a)(1)(B).  To state a claim for false

11   advertising under the Lanham Act, the plaintiffs must allege

12   either that "the challenged advertisement is literally false"

13   or that "the advertisement, while not literally false, is

14   nevertheless likely to mislead or confuse consumers."  Turbine

15   International, Inc. v. Hewlett-Packard Co., 769 F.Supp.2d 262,

16   268 (S.D.N.Y. 2011).

17        The defendants argue that the plaintiffs' false

18   advertising claim does not allege material misrepresentations

19   about the nature, characteristic, qualities or geographic

20   origin of the services and is a mere repetition of the

21   trademark infringement claims.  This argument is without merit.

22   The plaintiffs allege instances of Internet promotion as well

23   as deliberate misrepresentations by the defendants to

24   prospective students in promoting the defendants' services.

25   (Am. Compl. paragraphs 42-57).  As the Second Circuit Court of

Appeals has explained, the defendants' improper marketing by

creating the false impression of association between their

services and those of the plaintiffs' is a false claim about

the defendants' services and is "actionable as false

advertising." Twentieth Century Fox v. Marvel Enterprises,

Inc., 277 F.3d 253, 260 (2d Cir. 2002). Hence, plaintiffs have

sufficiently alleged a plausible claim that the defendants' use

of the "Manhattan Elite" mark in their advertisements is

capable of confusing or misleading consumers. See Alzheimer's

Disease Research Center, Inc. v. Alzheimer's Disease & Related

Disorders Association, Inc., No. 13 Civ. 2013 3288, 2013 WL

5960748, at 5 (E.D.N.Y. November 8, 2013). Accordingly, the

defendants' motion to dismiss the Lanham Act false advertising

claim is denied.

The plaintiffs also bring a claim for

cybersquatting under the ACPA, 15 USA Section 1125(d). To

state a claim under the ACPA, a plaintiff must allege that "(1)

its marks were distinctive at the time the domain name was

registered; (2), the infringing domain names complained of are

identical to or confusingly similar to plaintiffs' mark; and

(3), the infringer has a bad faith intent to profit from that

mark." Gioconda Law Group PLLC v. Kenzie, 941 F.Supp.2d 424,

430 (S.D.N.Y. 2013).

On a motion to dismiss, the Court should discount any

conclusory allegations. See Iqbal, 556 U.S. at 678. The

plaintiffs have proffered only conclusory allegations in

support of the ACPA claim.  The plaintiffs have pointed to only

three lines of conclusory allegations that the defendants

registered a "confusingly similar" domain name "with the bad

faith intent to profit" and "with full knowledge of plaintiffs'

exclusive rights in the MANHATTAN PREP mark."  (Pls.' Mem. at

20; Am. Compl. paragraphs 113, 115, 116).  No other allegations

in the amended complaint give rise to an inference of "bad

faith intent to profit" specifically from the infringing domain

name.  The allegation that the defendants infringed the

plaintiffs' trademark in registering and using a confusingly

similar domain name, in and of itself, is insufficient to

establish the "bad faith intent to profit" under the ACPA.  As

another court in this district has explained, "the ACPA is not

an all-purpose tool designed to allow the holders of

distinctive marks the opportunity to acquire any domain name

confusingly similar to their marks.  <u>Gioconda Law Group</u>, 941

F.Supp.2d at 437 (citation ommitted).

Therefore, the plaintiffs' cybersquatting claim must

be dismissed, because the allegations in the complaint

regarding the defendants' use of the domain name simply show

another aspect of the alleged trademark infringement, rather

than an attempt to profit specifically from "squatting" the

domain name with bad faith.  These allegations do not suggest

that defendants "perpetrated the core activities that threaten

to result in the paradigmatic harm that the ACPA was enacted to

eradicate," that is, "the proliferation of cybersquatting – the

Internet version of a land grab." See Lewittes v. Cohen, No.

03 Civ. 189, 2004 WL 1171261, at 8 (S.D.N.Y. May 26, 2004)

(citation and internal quotation marks omitted) (dismissing

cybersquatting claim).  Accordingly, the defendants' motion to

dismiss the cybersquatting claim (Claim IV) is granted.

The plaintiffs also bring claims for trademark

infringement, unfair competition, and trademark dilution under

New York State law.  "The elements necessary to prevail on

causes of action for trademark infringement and unfair

competition under New York common law mirror the Lanham Act

claims."  ESPN, Inc. v. Quiksilver, Inc., 586 F.Supp.2d 219,

230 (S.D.N.Y. 2008) (citations omitted).  The defendants'

argument for dismissal of the common law trademark infringement

and unfair competition claim mirror the arguments for dismissal

of the parallel Lanham Act claims, namely, that the plaintiffs'

mark had not acquired secondary meaning at the time the

defendants adopted their mark.  The Court has already rejected

this argument.

The defendants also argue that the plaintiffs have not

sufficiently alleged bad faith, as required for a common law

unfair competition claim.  See Pearson Education, Inc. v.

Kumar, 721 F.Supp.2d 166, 191 (S.D.N.Y. 2010).  The plaintiffs

have alleged that the defendants adopted a highly similar mark

1  with full knowledge of the plaintiffs' mark and with the

2  intention to profit from the goodwill of the plaintiffs' mark.

3  (Am. Compl. paragraphs 5, 129).  The plaintiffs have also

4  alleged that the defendants, in answering telephone inquiries

5  from prospective students, deliberately confused the callers

6  and attempted to mislead potential customers into believing

7  that they contacted the plaintiffs.  (Am. Compl. paragraph 57).

8  These allegations are sufficient to support an inference of bad

9  faith at this stage of the litigation.  See Peek & Cloppenburg

10 KG v. Revue, LLC, No. 11 Civ. 5967, 2012 WL 4470556, at 6

11 (S.D.N.Y., September 19, 2012).  Pearson Education, Inc., 721

12 F.Supp.2d at 191, 193.  Therefore, the defendants' motion to

13 dismiss the common law claims for trademark infringement and

14 unfair competition  (Claim VI) is denied.

15      The plaintiffs' trademark dilution claim is brought

16 under Section 360-l of the New York General Business Law (GBL).

17 To prevail on a claim for trademark dilution under New York

18 law, the plaintiffs must show "(1), that it possesses a strong

19 mark, one which has a distinctive quality or has acquired a

20 secondary meaning . . . and, (2) a likelihood of dilution by

21 either blurring or tarnishment."  Fireman's Association of the

22 State of New York v. French America School of New York, 839

23 N.Y.S.2d 238, 242, (App. Div. 2007).  "Unlike federal trademark

24 dilution law, . . . New York's trademark dilution law does not

25 require a mark to be 'famous' for protection against dilution

1   to apply."  Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,

2   588 F.3d 97, 114 (2d Cir. 2009).

3          The defendants argue that the plaintiffs' mark is not

4   distinctive and has not acquired secondary meaning.  However,

5   as noted above, it is premature to draw such a conclusion at

6   this stage of the proceeding.  The defendants next argue that

7   the plaintiffs have failed to plead likelihood of dilution in

8   the form of either blurring or tarnishment.  However, the

9   plaintiffs allege that a large number of students came to

10  associate the defendants' services with the plaintiffs', (Am.

11  Compl. paragraphs 42-57), and that the defendants' services are

12  of a different quality than the plaintiffs', (Am. Compl.

13  paragraphs 11-12).  These allegations are sufficient to "raise

14  the possibility that the plaintiffs' mark will lose its ability

15  to serve as a unique identifier of plaintiffs' services," and

16  are therefore sufficient to state a claim under GBL Section

17  360-l.  Fireman's Association, 839 N.Y.S.2d at 242; see also

18  The Name LLC v. Arias, No. 10 Civ. 3212, 2010 WL 4642456, at 8

19  (S.D.N.Y. November 16, 2010); CommScope, Inc. of North Carolina

20  v. Commscope (U.S.A.) International Group Co., 809 F.Supp.2d

21  33, 39 (N.D.N.Y. 2011).  Accordingly, the defendants' motion to

22  dismiss the trademark dilution claim (Claim V) is denied.

23         The plaintiffs also bring a claim under GBL Sections

24  349 and 350.  Section 349 prohibits "deceptive acts or

25  practices in the conduct of any business, trade or commerce or

1  in the furnishing of any service in this state."  N.Y. Gen.

2  Bus. Law Section 349(a).  Section 350 prohibits "false

3  advertising in the conduct of any business, trade or commerce

4  or in furnishing of any service in this state."  Id. Section

5  350.  Claims under Section 349 and Section 350 are similar: in

6  order to state a claim under either provision "a plaintiff must

7  allege that a defendant has engaged in (1) consumer-oriented

8  conduct, that is (2) materially misleading and that (3)

9  plaintiff suffered injury as a result of the allegedly

10  deceptive act or practice."  Koch v. Acker, Merrall & Condit

11  Co., 967 N.E.2d 675 (N.Y. 2012) (citation and internal

12  quotation marks omitted).

13          However, as the defendants have argued correctly,

14  courts in New York have routinely dismissed trademark claims

15  brought under Sections 349 and 350 as being outside the scope

16  of the statutes, because ordinary trademark disputes do not

17  "pose a significant risk of harm to the public health or

18  interest" and are therefore not the type of deceptive conduct

19  that the statutes were designed to address.  DePinto v. Ashley

20  Scott, Inc., 635 N.Y.S.2d 215, 217 (App. Div. 1995); accord

21  Perfect Pearl, 887 F.Supp.2d at 542; DO Denim, LLC v. Fried

22  Denim, Inc., 634 F.Supp.2d 403, 409 (S.D.N.Y. 2009); Tommy

23  Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F.Supp.2d

24  410, 413, n.2 (S.D.N.Y. 2002) ("The majority of courts have

25  held that trademark cases are outside the scope of this general

consumer protection statute.").  The alleged "deceptive acts or

practices" of the defendants in this case are precisely the

acts that constitute the alleged trademark infringement, (Am.

Compl. paragraphs 137-38), which are outside the scope of the

statutes.  Accordingly, the Sections 349 and 350 claims fail as

a matter of law, and the defendants' motion to dismiss (Claim

VII) is granted.

Finally, the plaintiffs bring a claim under New York

State law for unjust enrichment, alleging that the defendants

are unjustly enriched by, among other things, the infringing

use of the trademark.  Under New York law, in order to state a

claim for unjust enrichment, the plaintiffs must demonstrate

that they themselves conferred a direct benefit on the

defendants.  Segal v. Cooper, 944 N.Y.S.2d 65, 67 (App. Div.

2012); Prime Mover Capital Partners L.P. v. Elixir Gaming

Technologies, Inc., 898 F.Supp.2d 673, 697 (S.D.N.Y. 2012).  In

this case, there are no such allegations: the defendants were

enriched only indirectly from the plaintiffs' prior activities

of promoting their marks.  Accordingly, the plaintiffs have

failed to state a claim for unjust enrichment under New York

State law.

However, under the Lanham Act, 15 Section 1117(a),

"unjust enrichment, warranting an accounting of profits exists

when the defendant's sales were attributable to its infringing

use of the plaintiffs' trademark."  Burndy Corp. v. Teledyne

Industries, Inc., 748 F.2d 767, 772 (2d Cir. 1984) (citation

and internal quotation marks omitted); accord Ptak Bros.

Jewelry, Inc. v. Ptak, No. 06 Civ. 13732, 2009 WL 1514469, at 2

(S.D.N.Y. June 1, 2009).  To prevail on unjust enrichment

claim, the plaintiffs must demonstrate that the enrichment is

"the fruit of willful deception."  George Basch Co., Inc. v.

Blue Coral, Inc., 968 F.2d 1532, 1538 (2d Cir. 1992).  In this

case, the plaintiffs have alleged that the defendants'

infringement was willful in that the defendants answer

telephone inquiries from prospective students in "an

intentionally confusing and deceptive manner that callers have

a false impression that they have contacted Manhattan Prep."

(Am. Compl paragraph 57).  The plaintiffs have alleged that the

defendants committed their acts of trademark infringement

"willfully."  (Am. Compl. paragraph 98.)  Hence, the plaintiffs

would be able to recover for unjust enrichment under the Lanham

Act allegations, if they're able to prove them, but the

plaintiffs have not stated a claim under New York State law for

unjust enrichment.  Accordingly, the defendants' motion to

dismiss the state law claim of unjust enrichment (Claim VIII)

is granted.

        The court has considered all of the arguments raised

by the parties.  To the extent not specifically addressed, the

arguments are either moot or without merit.  For the foregoing

reasons, the defendants' motion to dismiss is granted in part

E4MDDKAPC

1    and denied in part.  The clerk is directed to close Docket No.

2    32.

3            So ordered.

4            All right.  How much time for discovery?

5            MS. RUPP:  Three or four months, your Honor.

6            MR. PESLAK:  Your Honor, if plaintiffs intend to offer

7    a survey expert or something like that, we may need more time

8    than three or four months.

9            THE COURT:  Well, I would think that you would want to

10   begin to engage your survey expert promptly, and I don't see

11   why the survey expert should take four months to design a

12   survey, take a survey, do a report, and give a deposition.

13           MR. PESLAK:  I think we would get a rebuttal expert is

14   what I've indicated.

15           THE COURT:  Are the plaintiffs going to get a survey

16   expert?

17           MS. RUPP:  We need to confer with our client first,

18   your Honor.

19           THE COURT:  Okay.  There has been no answer yet,

20   right?

21           MS. RUPP:  That's correct, your Honor.

22           MR. PESLAK:  Correct.

23           THE COURT:  The defendants shall answer by May 2.  All

24   discovery, including expert discovery, to be completed by

25   October 3.  And you should get your expert interrogatories out,

1 and talk to each other about scheduling any expert discovery,

2 because October 3 is the conclusion of all discovery, including

3 expert discovery.

4     No additional parties or causes of action after --

5 there aren't going to be any more parties or causes of action?

6     MS. RUPP:  No, there are not, your Honor.

7     THE COURT:  So I'll put in May 16.

8     No additional defenses after May 30.  Dispositive

9 motions, if any, by October 24.  Joint pretrial order by

10 November 14.

11     Jury trial?

12     MS. RUPP:  Yes, your Honor.

13     THE COURT:  It sounds like about four days.  Ready for

14 trial on 48 hours' notice on and after December 1.

15     Would the parties agree to try the case before the

16 magistrate judge?

17     MS. RUPP:  I would need to confer with my client

18 first, your Honor, but we would be able to submit a joint

19 letter within the next day.

20     THE COURT:  Well, sure, I'll give you more time.

21 May 2.

22     The parties can just send me a letter by May 2,

23 whether they agree to trial before the magistrate judge and

24 whether the assistance of the magistrate judge for purposes of

25 settlement would be useful.

1        Okay.  Anything else?

2        MS. RUPP:  No, your Honor.  Thank you.

3        MR. PESLAK:  No, your Honor.  Thank you.

4        THE COURT:  Thank you, all.

5        (Adjourned)