# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAPLAN, INC. and MG PREP, INC. d/b/a MANHATTAN PREP AND MANHATTAN GMAT | : Case No. 1:13-cv-1147 |
| | : (JGK) (HP) |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : **DEFENDANTS TRACY** |
| v. | : **YUN AND MANHATTAN** |
| | : **ENTERPRISE GROUP** |
| | : **LLC'S MEMORANDUM** |
| TRACY YUN and MANHATTAN | : **OF LAW IN** |
| ENTERPRISE GROUP LLC d/b/a | : **OPPOSITION TO** |
| MANHATTAN ELITE PREP, | : **PLAINTIFFS' MOTION** |
| | : **TO DISMISS** |
| Defendants. | : **COUNTERCLAIMS** |
| | : |
| | : |
| | : |

**Arthur M. Peslak (AP-5213)**
**Gertner, Mandel & Peslak, LLC**
**PO Box 499**
**Lakewood, NJ 08701**
**Phone: 732-363-3333**
**Fax: 732-363-3345**

**Attorneys for**
**Defendants/Counterclaimants**
**Tracy Yun and**
**Manhattan Enterprise Group LLC**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT AND PROCEDURAL HISTORY ........................................... 1

STATEMENT OF FACTS ............................................................................................ 6

I.   **Plaintiffs Lack Standing to Sue on the Unregistered Manhattan GMAT Mark** .............. 6

II.  **Product Disparagement/Trade Libel Claim** .................................................... 7

LEGAL ARGUMENT .................................................................................................. 9

      **POINT I**

      **THE STANDARD FOR A MOTION TO DISMISS** ..................................................... 9

      **POINT II**

      **COUNT I STATES A CLAIM FOR DECLARATORY RELIEF THAT**

      **PLAINTIFFS LACK STANDING TO SUE ON THE UNREGISTERED**

      **MANHATTAN GMAT MARK** ...................................................................... 10

      **POINT III**

      **COUNT II PLEADS A PLAUSIBLE CLAIM OF TRADE LIBEL** .......................... 12

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Andrews v Steinberg,
  122 Misc. 2d 468, 471 N.Y.S. 2d 764 (Sup Ct. N.Y. County (1983) ......................................13

Ashcroft v Iqbal,
  556 U.S. 662 (2008) ......................................................................................................................9

Country Vanlines Inc. v. Experian Info. Solutions, Inc.,
  317 F. Supp 383 (S.D. N.Y. 2004) ........................................................................................16

Global Merch.,Inc. v. Lombard & Co.,
  234 A.D.2d 98,  650 N.Y.S.2d 724 (1st Dep't 1996) .............................................................12

Goldman v. Belden,
  754 F.2d 1059 (2d Cir. 1985)..................................................................................................10

Grasso v. Matthew,
  164 A.D.2d 476 (1991) ...........................................................................................................13

Johnson & Johnson v. Carter-Wallace, Inc.,
  631 F.2d 186 (2d Cir. 1980)....................................................................................................11

McCarthy v. Dun & Bradstreet Corp.,
  482 F.3d 184 (2d Cir. 2007)...............................................................................................9, 12

Online Phone Store, Inc. v. Better Business Bureau,
  2011 N.Y. Misc. LEXIS 5005  (Sup. Ct. N.Y. County 2011) .................................................16

Payrolls & Tabulating, Inc. v. Sperry Rand Corp.,
  22 A.D. 2d 595, 257 N.Y.S. 2d. 884.......................................................................................13

Pearson Educ. Inc. v. Ishayev,
  963 F. Supp 239 (S.D.N.Y. 2013) ..........................................................................................15

Waste Distillation Tech. Inc. v. Blasland & Bouck Eng, P.C., 136 A.D.2d N.Y.S.2d 875
  (2nd Dep't 1988)......................................................................................................................12

Zip Int'l Group, LLC v. Trilini Imports, Inc.,
  09-CV-2437 JG VVP, 2010 WL 648696 (E.D.N.Y. Feb. 22, 2010)......................................11

<u>**PRELIMINARY STATEMENT AND PROCEDURAL HISTORY**</u>

Defendants Tracy Yun and Manhattan Enterprise Group LLC, through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss Defendants' Counterclaims. Defendants filed their Answer with Counterclaims on May 2, 2014. ECF Doc. No. 62. The original Answer contained six Counterclaims as follows:

1) Fraud on the United States Patent and Trademark Office ("USPTO") with respect to Plaintiffs' Application to register the phrase "Manhattan Prep" as a trademark;

2) Declaratory Judgment that Plaintiffs lack standing to sue on the unregistered "Manhattan GMAT" mark;

3) Declaratory Judgment concerning the registrability of the "Manhattan Prep" mark and Defendants "Manhattan Elite Prep" mark;

4) Defamation;

5) Product Disparagement/Trade Libel;

6) Tortious Interference with Prospective Business Advantage.

On May 24, 2014, Plaintiff sought a pre-motion conference for the purpose of filing a Motion to Dismiss with respect to Counts 1, 3, 4, 5 & 6 only. ECF Doc. 68. Plaintiffs actually filed their Motion to Dismiss on May 23, 2014 prior to seeking the pre-motion conference on the same motion. In addition, such letter-motion was filed after the deadline of the underlying motion. ECF Doc. 67. Furthermore, Plaintiffs never indicated in their letter-motion, the motion to dismiss (ECF Doc. 67) or during the June 4, 2014 conference with the Court that they were seeking to dismiss Count 2 relating to their lack of standing to sue on the unregistered Manhattan GMAT mark.

As a result of the June 4, 2014 conference with the Court, Defendants field an Amended Answer with Counterclaims on June 13, 2014. ECF Doc. No. 75. In the Amended Answer,

Counts 1 and 3 were re-pled as defenses, while Defendants reserve the right to seek the requested affirmative relief before the USPTO at an appropriate stage or the conclusion of this case. Count 2 relating to Plaintiffs' lack of standing to sue on the unregistered Manhattan GMAT mark is now Count I. The state law counts 4, 5 and 6 have been consolidated to Count II for Product Disparagement/Trade Libel. Plaintiffs now seek dismissal of Count I for the first time in their motion along with Count II.

With respect to Count I, the Manhattan GMAT mark is not registered by Plaintiffs and there is no application to register pending before the USPTO. Since there is no jurisdiction in the USPTO to entertain further proceedings on this mark in the process of or at the conclusion of this case, Defendants have maintained this counterclaim to obtain a definitive pronouncement from the Court regarding Plaintiffs' lack of standing to sue on this mark. Defendants raised Plaintiffs' lack of standing in connection with their motion to dismiss Plaintiffs' Amended Complaint. In deciding that motion, the Court concluded that it could not adjudicate the issue of Plaintiffs' lack of standing at that time. ECF Doc. 60 at p. 13. As explained below, Defendants have stated a plausible claim for the requested declaratory relief that Plaintiffs lack standing based upon Defendants' allegations and a Letter Agreement between Plaintiffs and GMAC, the owner of the GMAT mark.

With respect to Count II, Plaintiffs have engaged in a bad faith scheme to damage and disparage Defendants and their business in order to maintain Plaintiffs' market share, limit consumers' study choices, and destroy Defendants' business under the guise of a bad faith and meritless yet expensive and distracting trademark lawsuit.

Firstly, Plaintiffs' scheme includes fraud on the USPTO in which Plaintiffs knowingly made untrue statements about their use of the "Manhattan Prep" mark on all of MG Prep's

identified services from July of 2011 to the date of such statements, the associated sales figures and advertising spending, as well as unsolicited media coverage, in order to induce a registration from the USPTO after it rejected Plaintiffs' application twice.

Secondly, Plaintiffs filed their Complaint in bad faith against Defendants on February 19, 2013, five months after the USPTO's initial rejection of Plaintiffs' Intent-to-Use application in September 2012, based on the geographically descriptive nature of the Manhattan Prep mark. In particular, Plaintiffs made only a passing mention of their trademark application in their original and Amended Complaint. Plaintiffs' conclusory allegations in their Complaint relating to their alleged first use of Manhattan Prep clearly contradict their prior admissions to the USPTO in their Intent-to-Use application, filed in May 2012, 10 months after Plaintiffs' purported first use date in July 2011. All of these inconsistencies corroborate further that Plaintiffs committed fraud on the USPTO in an overall scheme to destroy Defendants' business which started in December 2011.

Plaintiffs' Complaint is based on their claim of exclusive rights in "Manhattan Prep", a geographically descriptive mark. Plaintiffs have little hope of proving secondary meaning, prior to Defendants' first use, even when the claim is taken in the most favorable light.

In addition, Plaintiffs include entirely irrelevant, impertinent and scandalous material, solely to prejudice Defendants, concerning a lawsuit filed against Defendant Ms. Yun by an alleged former business partner in NY state court as well as a lawsuit filed by Plaintiffs eight years ago in 2006 against a business formerly owned by Ms. Yun. In that lawsuit, Plaintiffs made a payment and agreed to confidentiality and no admission of any wrongdoing in the settlement.

Furthermore, Ms. Yun never registered nor owned the two domains in the 2005-2006 dispute. Plaintiffs knew this fact since (i) any related domain records such as WHOIS and

Domaintools.com, throughout the existence of those two domains till the present, do not refer to Ms. Yun, (ii) any document relating to the registration and ownership of those two domains from that 2005-2006 lawsuit did not refer to Ms. Yun, and (iii) the lawsuit did not have Ms. Yun as a defendant. Yet, Plaintiffs made the scandalous allegations in bad faith.

Thirdly, Plaintiffs manufactured online material and concocted student confusion by creating Internet forum threads using fake student identities to divert potential customers from doing business with Defendants. All the examples and nearly all exhibits in Plaintiffs' Amended Complaint show the alleged student confusion began after May 2012. Therefore, any consumer confusion is a result of Plaintiffs' own willful and deliberate bad faith acts. Contrary to Plaintiffs' baseless accusations, Defendants' representatives do not misrepresent themselves in any way. All Defendants' phone representatives identify themselves as representatives of Manhattan Elite Prep upon answering the phone and/or emails.

Plaintiffs' scheme further includes placing toxic back links to Defendants' website which results in the renegade web pages created by Plaintiffs coming up higher in internet search results than the web pages truly relevant to Defendants' business and Ms. Yun. In addition, Plaintiffs created internet accounts and named them with Defendants' trademark Manhattan Elite Prep and directed internet traffic to the web pages where the Amended Complaint in this matter was republished, with its irrelevant, impertinent and scandalous matter. Plaintiffs unfairly hurt Defendants' business and Ms. Yun's reputation by using techniques designed to manipulate the order of search results on search engines such as Google and inserting manipulated court papers and the USPTO notice to Defendants into these search results, alongside Defendants' business and Ms. Yun's webpage listings or search results.

Plaintiffs' goals are to (i) destroy Defendants' business while students have rated it much higher than Plaintiffs' business, as set forth in Paragraphs 207 to 208 and 283 to 296 with Exhibits 8-18 and 20-21 of Defendants' Amended Answer and Counterclaims, (ii) ruin Ms. Yun's reputation both in her professional and personal lives, despite her top 1% test score on the GMAT and other tests, along with her impressive academic and professional achievements, as set forth in the Amended Answer and Counterclaims (Paragraphs 297 to 304 and Exhibits 28-33), and (iii) monopolize the test preparation industry by hurting competitors and limiting students' viable study choices.

Plaintiffs' response to Defendants' allegations and counterclaims in the form of the current motion to dismiss is a request that the Court make a factual finding that Plaintiffs did not engage in these activities. Such a request is improper on a motion to dismiss. In addition, any privileges applicable to a complaint do not apply to these impertinent and irrelevant allegations against Ms. Yun. In addition, any ill-intended republishing of these knowingly false, derogatory and scandalous allegations contained in a complaint filed in bad faith should not be privileged.

In fact, Plaintiffs do not even argue that the Counterclaim I fails to state a plausible cause of action. At this stage, the Court is required to grant all reasonable inference to Defendants. The result of dismissal of Counterclaim I would effectively grant exclusive rights to Plaintiffs to exclude anyone else from offering GMAT test preparation service in Manhattan. In conclusion, Plaintiffs' motion asks the Court not to accept the factual allegations in the Counterclaims as true but to find facts in their favor. As explained below, Defendants have pleaded valid claims and Plaintiffs' motion to dismiss must be denied.

## STATEMENT OF FACTS

### I.    Plaintiffs Lack Standing to Sue on the Unregistered Manhattan GMAT <u>Mark</u>

Among the allegations concerning Manhattan GMAT in the Defendants' Amended

Answer and Counterclaims are:

> 197.    Furthermore, Plaintiffs do not own the Manhattan GMAT mark since the GMAC is the owner of the GMAT mark.

> 198.    Plaintiffs have no right to sue to prevent others from using the GMAT mark, based on the GMAC's October 24, 2004 letter to Plaintiffs. See Exhibit 1. Plaintiffs wrongfully claim exclusive rights in the Manhattan GMAT mark. Any allegations of Defendants' infringing on Plaintiffs' Manhattan GMAT mark in 2005 and now are baseless and absurd.

> 214.    The GMAC issued a cease and desist letter to MG Prep for using GMAT as part of the Manhattan GMAT designation; as a result, the GMAC entered into an agreement with MG Prep on Oct 24, 2004, in which (i) MG Prep was required to remove the GMAT mark from all of its company names and (ii) the GMAC covenanted not to sue MG Prep for use only of "Manhattan GMAT Prep" as a DBA on its web site and in promotional materials, ***provided*** that such materials included the following disclaimer (bold in original): "**GMAT® is a registered trademark of the Graduate Management Admission Council®. The Graduate Management Admission Council® does not endorse, nor is it affiliated in any way with the owner of any content of this web site.**" Therefore, Plaintiffs have never had any lawful, exclusive rights in MANHATTAN GMAT as a trademark.

The Court is also referred to Paragraphs 255 to 257 of the Amended Counterclaims. The

letter agreement between GMAC and Plaintiff is attached as Exhibit 1 to the Amended Answer.

The letter agreement clearly states that GMAC is the owner of the GMAT mark. There is no

reference to GMAC granting a license to Plaintiffs to use GMAT but merely provides a covenant

not to sue for certain limited uses of Manhattan GMAT. Further, it grants no rights to Plaintiffs

to bring suit to enforce the GMAT mark.

## II.       Product Disparagement/Trade Libel Claim

Defendants have pleaded in detail the bad faith nature of the Complaint filed against

Defendants in Paragraphs 194 to 210 of the Counterclaims.  These allegations include

manufacturing a trademark infringement claim with no evidence that the geographically

descriptive mark Manhattan Prep could have acquired secondary meaning in the 6 months that

they claim to have used the mark prior to Defendants' first use of Manhattan Elite Prep

(Paragraph 196 and 202 to 204).  Further, Plaintiffs did not publicly use the Manhattan Prep

mark on their instructional books and their main website [www.manhattangmat.com](www.manhattangmat.com) until months

after Defendants' date of first use (Paragraphs 205 to 207).  Plaintiffs also never made a public

announcement of their purported rebranding to "Manhattan Prep" in a press release, blog or any

other noticeably public way before Defendants' first use of their "Manhattan Elite Prep" mark.

Plaintiffs' scheme to manufacture a cause of action includes committing fraud in the USPTO to

induce the trademark examiner to approve their application to register "Manhattan Prep."

(Twelfth Affirmative Defense).   Plaintiffs also include allegations and a cause of action for

infringement of a mark they do not own or have a license to, Manhattan GMAT (Paragraphs 197,

198, 214, and 255 to 257).

The Complaint also includes the irrelevant, impertinent and scandalous allegations

regarding the state lawsuit brought against Ms. Yun by her alleged former business partner as

well as a prior lawsuit filed by Plaintiffs eight years ago in 2006 against a business formerly

owned by Ms. Yun where Plaintiffs made a payment and agreed to confidentiality and no

admission of any wrongdoing clauses in settlement (Paragraph 201, 263 to 268).  The Amended

Counterclaims allege in Paragraph 268 that the purpose of these allegations as follows:

> Plaintiffs' sole intention is to use these immaterial and impertinent allegations to
> improperly prejudice Defendants in this action.  For example, when referring to the
> unrelated state court litigation, Plaintiffs state that "Ms. Yun's modus operandi has

been to build new test prep businesses by trademark infringement and other deceptive business practices", and "this is not the first time Ms. Yun has wrongfully used Plaintiffs' valuable brands to mislead unsuspecting students." First Amended Complaint at ¶¶ 14-16, 59, 61-63, 65-67, 69-71.

The Counterclaims allege that Plaintiffs manufactured a number of false web postings and web pages to create a basis for alleging actual confusion caused by Defendants which do not include republishing the Amended Complaint.  One of the fake web postings on www.beatthegmat.com was made on June 14, 2012, which stated: "the site of a company saying 'We're now Manhattan Elite Prep.' So MGMAT is now Manhattan Elite Prep?" The screenshot of this post was attached to Plaintiffs' cease and desist letter to Defendants as Exhibit B on August 1, 2012. The same screenshot was then attached as an exhibit to the Amended Complaint. (Paragraphs 274 to 278).

In fact, Defendants were not aware of such posts until receiving Plaintiffs' cease and desist letter. Defendants recall that there were additional reply posts to that fake post, including some from Plaintiffs. However, the entire discussion thread of all the relevant posts disappeared some time around August 7, 2012, after Defendants challenged the authenticity of the post. Defendants did not post the statement and did not send such an email claiming their business rebranding from Manhattan GMAT to Manhattan Elite Prep, as mentioned in the now vanished post. Therefore both the content of the post and the post itself were fabricated.

To their convenience, Plaintiffs only included the first post of the thread as an exhibit since that post appeared to be made by Defendants. However, Plaintiffs purposefully excluded additional replies to the fake post in their exhibit.

Another example of fake posts made by Plaintiffs is that they used the fake forum member ID "wrudy" on March 1, 2014 at www.thegradcafe.com to post comments regarding

Manhattan Elite Prep and wrote "I guess you are confusing Manhattan Prep and Manhattan Elite Prep. The latter…poses as Manhattan Prep quite often to confuse consumers."

In addition, Plaintiffs republished the Amended Complaint and USPTO's notice to Defendants on internet sites created using Defendants' trademark Manhattan Elite Prep. (Paragraphs 279 to 298; 308 to 312). Plaintiffs manipulated the file names and the web page's url names to increase the visibility of these web pages, when someone is searching for Manhattan Elite Prep, so as to appear next to the search result for Defendants' names in order to divert business from Defendants. Id.

Plaintiffs also engaged in a negative Search Engine Optimization ("SEO") campaign against Defendants by creating 1000's of toxic back links to Defendants' website resulting in reduced internet search ranking. (Paragraphs 299 to 307).

## LEGAL ARGUMENT

### POINT I

### THE STANDARD FOR A MOTION TO DISMISS

In order to survive a motion to dismiss under Rule 12(b)(6), the Counterclaims:

> must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully.
>
> Ashcroft v Iqbal, 556 U.S. 662, 678 (2008).

In evaluating whether the Counterclaims state a plausible claim, the Court must accept all of the allegations as true and draw all reasonable inferences in favor of Defendants. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine

whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).

In this case, both prongs of Plaintiffs' motion ask the Court to not accept the factual allegations in the Counterclaims as true but to find facts in their favor. In Count I, Plaintiffs request that the Court find they are a licensee of the GMAT mark. In contrast to Plaintiffs' request, the letter agreement makes no reference to the word license, does not grant affirmative rights to Plaintiffs but only covenants not to sue Plaintiffs for certain limited circumstances. Likewise, with respect to Count II, Plaintiffs request that, contrary to the allegations in the Counterclaims, the Court find that (i) they are not responsible for manufactured online material, the internet republishing using the Manhattan Elite Prep trademark, and SEO schemes alleged in the Complaint and (ii) they did not file their complaint in bad faith. As explained, both Counts state a plausible claim and the Court should deny the motion.

## POINT II

### COUNT I STATES A CLAIM FOR DECLARATORY RELIEF THAT PLAINTIFFS LACK STANDING TO SUE ON THE UNREGISTERED MANHATTAN GMAT MARK

Plaintiffs are not the owner of the GMAT trademark but seek to enforce the phrase Manhattan GMAT as their trademark in this case. Plaintiffs have not secured a registration for this mark nor have they apparently even applied for registration. The owner of the GMAT mark granted Plaintiffs a covenant not to sue for certain limited uses of the phrase Manhattan GMAT. As part of the covenant not to sue, Plaintiffs are required to include "a prominent disclaimer denying any sponsorship by, or affiliation with, Graduate Management Admissions Council." Plaintiffs request that the Court ignore the disclaimer and jump to a factual conclusion that they are affiliated with GMAC as a licensee of the mark. The Letter Agreement does not use the

word license and grants no affirmative rights to Plaintiff and certainly no rights to enforce the mark. Further, even if the Letter Agreement is a "license", Defendants are arguably not infringing on any of the limited uses for which GMAC granted to Plaintiffs the covenant not to sue.

Plaintiffs cite to <u>Zip Int'l Group, LLC v. Trilini Imports, Inc,</u> 09-CV-2437 JG VVP, 2010 WL 648696, 2010 U.S. Dist. Lexis 15368 (E.D.N.Y. Feb. 22, 2010) in support of their argument that they have standing. Pl MOL at p.5. Plaintiffs claim that the Court in <u>Zip</u> held that "even a non-exclusive licensee" has standing. <u>Id</u>. However, a close reading of the decision indicates that the plaintiff in <u>Zip</u> alleged it was an exclusive licensee and the defendant attempted to argue that the Plaintiff was a non-exclusive licensee. 2010 U.S. Dist. Lexis 15368 at *7-8. The court in <u>Zip</u> then held that "I disagree, and conclude that Zip's allegation[as an exclusive licensee] may not properly be rejected in deciding a motion to dismiss…" <u>Id</u>. Thus, <u>Zip</u> does not support Planitiffs' contention that they have standing as a non-exclusive licensee.

To have standing to sue under § 43(a) of the Lanham Act, a plaintiff must be able to show some injury or likely injury. "[S]omething more than a plaintiff's mere subjective belief that he is injured or likely to be damaged is required before he will be entitled even to injunctive relief." <u>Johnson & Johnson v. Carter-Wallace, Inc.,</u> 631 F.2d 186, 189 (2d Cir. 1980). Here, Plaintiffs do not address this standard but merely argue that they are a licensee so they have standing. However, the Letter Agreement does not grant any affirmative rights and Plaintiffs fail to explain how the covenant not to sue will result in affirmative enforcement rights from which they are likely to be damaged.

Plaintiffs request that the Court conclude from the Letter Agreement that it is a licensee, presumably a non-exclusive licensee, and dismiss Count I of the counterclaims. Plaintiffs do not

even argue that the Counterclaim fails to state a plausible cause of action. Rather, they argue for dismissal because the "counterclaim is undermined by its own exhibit." Pl. Mol at p. 5. This argument is mere sophistry since it is based on the Court finding that the Letter Agreement constitutes a non-exclusive license, without considering that the Court could conclude that the Letter Agreement is not a license and carries no rights of enforcement. At this stage, the Court is required to grant all reasonable inference to Defendants. In this case, the reasonable inference is that the Letter Agreement is not a license and does not confer standing. McCarthy v. Dun & Bradstreet Corp., 482 F.3d at 191. The result of dismissal of Count I would effectively grant exclusive rights to Plaintiffs to exclude anyone else from offering GMAT test preparation service in Manhattan. Thus, The Court must deny the motion to dismiss Count I.

## POINT III

## COUNT II PLEADS A PLAUSIBLE CLAIM OF TRADE LIBEL

Plaintiffs base their motion to dismiss Count II on two arguments. First, they argue that they are not responsible for the actions alleged in the Complaint. In essence, they ask the Court to disregard the allegations that Plaintiffs are responsible for these actions and improperly make a factual finding in their favor. Second, they argue that the legal requirements for a trade libel claim are not properly pleaded. Neither argument is a basis to dismiss Count II.

"The tort of trade libel or injurious falsehood consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." Waste Distillation Tech. Inc. v. Blasland & Bouck Eng, P.C. 136 A.D.2d 633, 634, 523 N.Y.S.2d 875 (2nd Dep't 1988); See also Global Merch.,Inc. v. Lombard & Co., 234 A.D.2d 98, 99, 650 N.Y.S.2d 724 (1st Dep't 1996) (trade libel … requires 'knowing publication of false matter

derogatory to the plaintiff's business.')   The elements of a claim of injurious falsehood or trade libel are (i) falsity of the alleged statements; (ii) publication to a third person; (iii) malice; and (iv) special damages.  E.Z Bowz, LLC v. Prof'l Prod Research Co., 2003 U.S. Dist Lexis 15364, *109  (S.D.N.Y. 2003)(citations omitted).   However, in certain instances like this case, special damages are not required for a claim of trade libel.  In Payrolls & Tabulating, Inc. v. Sperry Rand Corp., 22 A.D. 2d 595, 257 N.Y.S. 2d 884 (App. Div. 1st Dept. 1965) it was explained that:

> Generally speaking if the disparagement of goods or of their quality also directly impeaches the knowledge, skill, integrity, etc. of the owner of the goods as an individual or in respect to his business methods, it is actionable per se and no special damages need be shown.
> Id. 22 A.D. 2d at 598.

The Counterclaims are not limited to merely Plaintiffs' republication of the Amended Complaint as Plaintiffs assert in their motion but other allegations explained below of false publications on the internet not involving the republication of the Amended Complaint.  Even if the allegations related only to the republication of the Amended Complaint, that is not a sufficient basis to dismiss Count II of the Counterclaims as the litigation privilege is not absolute.  See  Andrews v Steinberg, 122 Misc. 2d 468, 471 N.Y.S. 2d 764 (Sup Ct. N.Y. County (1983).  The court in Andrews stated:

> Yet even under the standards applicable to defamation and injurious falsehood actions, words spoken during the course of a judicial proceeding and thus ordinarily privileged can become actionable under certain limited circumstances.  Thus, if the subject allegation is 'so obviously impertinent as not to admit of discussion and so needlessly defamatory as to warrant the inference of express malice' the statement is actionable.
> Id. 471 N.Y.S. 2d at 770-71, (citations omitted).

In fact, the cases cited by Plaintiffs in support of their argument that republishing a complaint outside the judicial proceeding is privileged only apply to a Complaint that is pleaded in good faith.  Grasso v. Matthew, 164 A.D.2d 476, 479 (1991).

Defendants have included factual allegations in the Counterclaim that in fact both the original Complaint and the Amended Complaint have been pleaded in bad faith. The basis for this claim of bad faith are the allegations that Plaintiff manufactured a trademark infringement claim with no evidence that the geographically descriptive mark Manhattan Prep could have acquired secondary meaning in the 6 months that they claim to have used the mark prior to Defendants' first use of Manhattan Elite Prep (Paragraph 196 and 202 to 204), fraud on the USTPO to induce the trademark examiner to approve their application to register "Manhattan Prep." (Twelfth Affirmative Defense), and allegations of infringement of a mark they do not own or have a license to, i.e., Manhattan GMAT (Paragraphs 197, 198, 214, and 255 to 257).

Finally, the Amended Complaint includes the entirely irrelevant, impertinent and scandalous allegations regarding the state lawsuit brought against Ms. Yun by her alleged former business partner as well as a prior lawsuit filed by Plaintiffs eight years ago in 2006 against a business formerly owned by Ms. Yun where Plaintiffs made a payment and agreed to confidentiality and no admission of any wrongdoing in the settlement. (Paragraph 201, 263 to 268). Incredibly, they claim that their settlement of a lawsuit by (i) paying Ms. Yun money, (ii) agreeing on Ms. Yun's former business to use www.gmatmanhattan.com, and (iii) consenting to no admissions of liability or wrongdoing by defendant, show that she, not the actual defendant, has engaged in a pattern of trademark infringement and other deceptive business practices. All of these allegations create a fact question as to whether the Complaint with its false allegations was pleaded in bad faith. If it is not pleaded in good faith, Grasso does not apply.

Plaintiffs' allegations regarding the State Court case against Ms. Yun as well as the prior lawsuit where Plaintiffs paid Ms. Yun in settlement are entirely impertinent and irrelevant to its manufactured claim of trademark infringement. Consequently, they fall outside the holding in

the case of <u>Pearson Educ. Inc. v. Ishayev</u>, 963 F. Supp 239 (S.D.N.Y. 2013) cited by Plaintiffs in

their Memorandum of Law.  In <u>Pearson</u>, the court stated that the privilege applies if statements in

the pleadings "by any view or under any circumstances, they are pertinent to the litigation." <u>Id.</u>

at 254.  However, Defendants have alleged the allegations about the current N.Y. State case

against Ms. Yun and the prior lawsuit by Plaintiffs against Ms. Yun's former business are in fact

entirely impertinent and irrelevant to the trademark infringement claims asserted by Plaintiffs

herein and in fact Plaintiffs do not explain or argue how those state court allegations and the

prior settlement in fact have any pertinence or relevance to their trademark infringement claims.

Therefore any privileges applicable to a complaint do not apply to these impertinent and

irrelevant allegations against Ms. Yun. Any purposeful republishing of these scandalous

allegations should not be privileged.

      The allegations of false and derogatory statements are not limited to only republishing the

Amended Complaint but making false statements on web postings and web pages accusing

Defendants of creating confusion in the marketplace to bolster the manufactured trademark

infringement claims.  The Court is referred to Paragraphs 309 and 327 of the Amended

Counterclaims for one such instance of a false statement made online that does not involve

republication of the Amended Complaint.  Plaintiffs' answer to these allegations is to ask the

Court to make a factual finding that Plaintiffs were not responsible for publishing these

statements.

      The other part of this scheme is that Plaintiffs have created false web accounts using

Defendants' trademark to republish the Amended Complaint so that customers and potential

customers searching for Manhattan Elite Prep will be sent to these false web accounts and

multiple web pages where the Amended Complaint is republished rather than the legitimate web

pages related to Defendants.  Plaintiffs have furthered this scheme by planting toxic back links to

Defendants' website in order to reduce the search engine ranking for Defendants website so that

the sites where the Amended Complaint and the USPTO notice to Defendants are republished

will come out higher in search engine results when a potential or an existing customer of

Manhattan Elite Prep or any of Ms. Yun's contact searches the Internet for Manhattan Elite Prep

or Ms. Yun.  Again, Plaintiffs' answer to these allegations is to ask the Court to make a factual

finding that they are not responsible for this scheme.

Plaintiffs claim this count must be dismissed because Defendants have not sufficiently

plead the malice element.  Plaintiffs cite to <u>Country Vanlines Inc. v. Experian Info. Solutions,</u>

<u>Inc.</u>, 317 F. Supp 383, 390 (S.D. N.Y. 2004) to argue that a pleading is insufficient if it only

labels the defamation malicious.  However, <u>Country Vanlines</u> involved a motion for summary

judgment after discovery not a motion to dismiss pursuant to Rule 12(b)(6) and does not support

Plaintiff's argument for dismissal.  However, even if that case were applied here, there are

sufficient allegations that Plaintiffs at least recklessly disregarded the truth when they made up

web postings and web pages alleging customer confusion and accused Ms. Yun of deceptive

business practices based on prior lawsuits.

With respect to the issue of special damages, Defendants have identified a specific

number of potential customers diverted from Defendants by Plaintiffs' activities in Paragraph

329 of the Amended Counterclaims.  The specific identification satisfies the pleading of special

damages.  <u>See</u>, <u>e.g.</u> <u>Online Phone Store, Inc. v. Better Business Bureau</u>,  2011 N.Y. Misc.

LEXIS 5005 at *6 (Sup. Ct. N.Y. County 2011).  However, pursuant to <u>Payrolls Tabulating</u> 22

A.D. 2d at 598 pleading of special damages is most likely not required as Plaintiffs have directed

their false and derogatory publications to Defendant Ms. Yun personally.  See Counterclaims Paragraph 268.

The allegations are that Plaintiffs engaged is a scheme involving publishing false and derogatory statements about Defendants, including Ms. Yun, involving (i) republishing the Amended Complaint and the USPTO's notice to Defendants and (ii) other statements on the web not involving the republication of the Amended Complaint.  The scheme includes creating accounts using Defendants' trademark to make it appear that Defendants published the materials and thus divert traffic from Defendants' website.  Defendants have alleged certain customers that were diverted to satisfy the pleading requirement for special damages in the event that the Court does not agree that Special Damages need not be pleaded pursuant to Payrolls Tabulating 22 A.D. 2d at 598.

## CONCLUSION

For all the foregoing reasons and authorities, Defendants request that the Court deny

Plaintiffs' Motion to Dismiss the Counterclaims.

Dated: July 7, 2014          **GERTNER, MANDEL & PESLAK, LLC**
       New York, New York


                              By:  _____/s/ Arthur M. Peslak_____

                              Arthur M. Peslak (AP-5213)
                              *Attorneys for Defendants Tracy Yun and*
                              *Manhattan Enterprise Group, LLC*
                              PO Box 499
                              Lakewood, NJ 08701
                              (732) 363-3333
                              apeslak@gmplaw.net